**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JURTREAU VILLEGAS, PATRICK SCHIANO
and WILLIAM GILBERT GARVIN, individually
and on behalf of all others similarly situated,

        Plaintiffs,

        vs.

CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION, CABLEVISION SYSTEMS
CORPORATION, CSC HOLDINGS, LLC,
ALTICE USA, INC., and ALTICE TECHNICAL
SERVICES US CORP.,

        Defendants.

Civil Action No.: 17-cv-5824

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT FOR DAMAGES,**
**RESTITUTION AND INJUNCTIVE**
**RELIEF**

**JURY TRIAL DEMANDED**

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys,

The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.　　This is a class action brought by Lead and Putative Class Representative Plaintiffs

Jurtreau Villegas, Patrick Schiano, and William G. Garvin (together, the "Representative

Plaintiffs" or "Lead Plaintiffs") and all Opt-in Plaintiffs (collectively, "Plaintiffs"), on their own

behalf and on behalf of the Putative Collective and Class identified below.  Lead Plaintiffs and

the Putative Collective and Class members were or are employed by Defendants Cablevision

Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC,

(the "Cablevision Defendants"), Altice USA Inc., and Altice Technical Services US Corp.,  (the

"Altice Defendants," together with the Cablevision Defendants, the "Altice-Cablevision

Defendants" or "Defendants") as non-exempt hourly Outside Plant Technicians and/or Network

Technicians (hereinafter "Outside Plant Technicians," "OSP" or "Technicians") and were denied "gap time" compensation and overtime premium compensation by requiring Outside Plant Technicians to work "off-the-clock" during their unpaid half-hour meal breaks and failing to properly calculate their regular rate of pay. Defendants also failed to provide Plaintiffs and the Putative Collective and Class with accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).

2.  The Putative Collective and Class of employees are similarly situated to the Lead Plaintiffs under Federal Rule of Civil Procedure ("FRCP") 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

3.  Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all others similarly situated who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' facilities or depots ("Facilities") located in Brooklyn at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay overtime premiums for all hours worked over 40 in a given workweek, and failing to keep accurate records of hours Plaintiffs' actually worked. Plaintiffs and all such other similarly-situated persons are jointly referred to herein as the "Collective" or the "Putative Collective."

4.  Plaintiffs' claims under the NYLL are brought as a class action pursuant to FRCP 23 on behalf of themselves and all other similarly-situated persons who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' Facilities located in Brooklyn within the period of six years prior to the filing date of this Complaint (the "Class

Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay Plaintiffs gap time compensation and overtime premiums for all hours worked over 40 in a given workweek, Defendants' unlawful practice of failing to keep accurate records of hours Plaintiffs actually worked, and Defendants' unlawful practice of failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime hours worked.  Plaintiffs and all other such similarly-situated persons are jointly referred to herein as the "Class" or the "Putative Class."

5.      Plaintiffs seek relief for the Putative Collective and Putative Class pursuant to the applicable provisions of the FLSA and NYLL to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

**PARTIES**

6.      Lead and Representative Plaintiff Jurtreau Villegas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  She began working at Defendants' Brooklyn facilities as an Outside Plant Technician in 2000, and has been with the Company since 1999.  At all relevant times, Ms. Villegas was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Ms. Villegas will be filed with the Court.

7.      Lead and Representative Plaintiff Patrick Schiano is an Outside Plant Technician, and presently and at all relevant times residing in Bethpage, Nassau County, New York.  He began his employment with Defendants in 1993, in the Defendants' Brooklyn facilities as an audit tech. He became a Field Service Technician in the early 2000s and became an Outside Plant Technician over ten years ago.  At all relevant times, Mr. Schiano was an "employee"

within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Schiano will be filed with the Court.

8.      Lead and Representative Plaintiff William Gilbert Garvin is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, New York.  He began his employment with Defendants in 2002, in the Defendants' Brooklyn facilities as Field Service Technician.  He became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities, in 2014.  At all relevant times, Mr. Garvin was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Garvin will be filed with the Court.

9.      Opt-in Plaintiff Dion Pemberton is an Outside Plant Technician for Defendants and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He began his employment with Defendants in 1999, in Defendants' Brooklyn facilities as a Field Service Technician, and in 2011 became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities.  At all relevant times, Mr. Pemberton was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Pemberton will be filed with the Court.

10.      Opt-in Plaintiff Jamal Howell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2013, and has been with the Company since in or around 2009.  At all relevant times, Mr. Howell was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Howell will be filed with the Court.

11.     Opt-in Plaintiff Paul Hickson is an Outside Plant Technician, and presently and at all relevant times residing in Delaware County, Pennsylvania.  He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997.  At all relevant times, Mr. Hickson was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Hickson will be filed with the Court.

12.     Opt-in Plaintiff Errol Campbell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997.  At all relevant times, Mr. Campbell was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Campbell will be filed with the Court.

13.     Opt-in Plaintiff Dexter Charter is an Outside Plant Technician, and presently and at all relevant times residing in Lehigh County, Pennsylvania.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

14.     Opt-in Plaintiff Kester Charter is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an

"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

15.     Opt-in Plaintiff Rohan Drysdale is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Drysdale was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Drysdale will be filed with the Court.

16.     Opt-in Plaintiff Darryl De Freitas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. De Freitas was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. De Freitas will be filed with the Court.

17.     Opt-in Plaintiff Wayne Fairclough is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Fairclough was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Fairclough will be filed with the Court.

18.     Opt-in Plaintiff Earl Jonas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the

Company during the Collective and Class Period.  At all relevant times, Mr. Jonas was an

"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff

in this action executed by Mr. Jonas will be filed with the Court.

19.     Opt-in Plaintiff Paul Murray is an Outside Plant Technician, and presently and at

all relevant times residing in Bridgeport, Fairfield County, Connecticut.  He began working at

Defendants' Brooklyn facilities as an Outside Plant Technician in or around the year 2000.  At

all relevant times, Mr. Murray was an "employee" within the meaning of all applicable statutes.

A Consent to Participate as a Plaintiff in this action executed by Mr. Murray will be filed with

the Court.

20.     Opt-in Plaintiff Bernard Paez is an Outside Plant Technician, and presently and at

all relevant times residing in New Haven, New Haven County, Connecticut.  He began working

at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2005.  At all

relevant times, Mr. Paez was an "employee" within the meaning of all applicable statutes.  A

Consent to Participate as a Plaintiff in this action executed by Mr. Paez will be filed with the

Court.

21.     Opt-in Plaintiff Dwayne Scarlett is an Outside Plant Technician, and presently

and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at

Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2010.  At all

relevant times, Mr. Scarlett was an "employee" within the meaning of all applicable statutes.  A

Consent to Participate as a Plaintiff in this action executed by Mr. Scarlett will be filed with the

Court.

22.     Opt-in Plaintiff Guy O. St. Jean is an Outside Plant Technician, and presently and

at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works

at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. St. Jean was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. St. Jean will be filed with the Court.

23.     Opt-in Plaintiff Juan Valdez is an Outside Plant Technician, and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Valdez was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Valdez will be filed with the Court.

24.     Opt-in Plaintiff Luis Aruz is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Aruz was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Aruz will be filed with the Court.

25.     Opt-in Plaintiff Ian Blackman is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Blackman was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Blackman will be filed with the Court.

26.     Opt-in Plaintiff Felipe Fong is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Fong was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Fong will be filed with the Court.

27.     Opt-in Plaintiff Kevin Halls is an Outside Plant Technician, and presently and at all relevant times residing in Rosedale, Queens County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Halls was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Halls will be filed with the Court.

28.     Opt-in Plaintiff Jorge Minguela is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Minguela was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Minguela will be filed with the Court.

29.     Opt-in Plaintiff Jermaine Titus is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Titus was an

"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Titus will be filed with the Court.

30.     Lead and Representative Plaintiffs, Opt-in Plaintiffs and the Putative Collective and Putative Class are currently, or were previously, employed by all Defendants as a single employer.

**Corporate Defendants**

31.     Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation and CSC Holdings, LLC are Delaware corporations with principal places of business at 111 Stewart Avenue, Bethpage, Nassau County, New York.  At all relevant times herein, the Cablevision Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

32.     Defendant Altice USA, Inc. and Defendant Altice Technical Services US Corp. are both subsidiaries of Altice N.V., an Amsterdam-based telecommunications company. Defendant Altice USA and Defendant Altice Technical Services USA are Delaware corporations registered to conduct business in New York.  At all relevant times herein, the Altice Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

**Continuity of Operations Between the Cablevision Defendants and the Altice Defendants**

33.     Altice N.V. acquired Defendant Cablevision Systems Corporation following a merger which was completed in June 2016 and set up various domestic subsidiaries to conduct Altice N.V.'s business in the United States, including Defendant Altice USA and Defendant Altice Technical Services.

34.     Following the acquisition, as set forth below, Defendants have maintained a substantial continuity of business operations – Defendants Altice USA and/or Altice Technical Services utilize the same facilities in Brooklyn as the Cablevision Defendants, utilize substantially the same work force, substantially the same supervisory personnel, the same machinery, equipment, and methods of production and provide the same product/service.

35.     Following the acquisition, Defendants maintained an intentional unity of operations with respect to technical services provided to customers, including outside plant services, and centralized control of labor relations, common management, and common ownership and/or financial control.

36.     Immediately following the acquisition, Altice N.V. merged its newly acquired Cablevision operations with its pre-existing Suddenlink and Optimum branded markets and operations, and retired the Cablevision name.

37.     Defendant Altice USA was formed on or around June 21, 2016 from the operational merger of these markets.

38.     The creation of Defendant Altice USA was "effective immediately" according to a press release that named Defendant Altice USA's Executive Leadership Team.

39.     The Altice USA Executive Leadership Team includes Dexter Goei, named Chairman and Executive Officer of Defendant Altice USA.

40.     The Altice USA Executive Leadership Team also includes Hakim Boubazine ("Boubazine"), Co-President and Chief Operating Officer of Defendant Altice USA, who is also on the Altice Technical Services Transition Team.

41.     The Lead Plaintiffs and the Putative Collective and Class have been informed that they are affiliated with Defendant Altice USA by Altice USA corporate representatives, and they received information regarding their status under the merger in or around late 2016.

42.     Lead Plaintiffs and the Putative Collective and Class's health and other insurance benefits and 401K plans were transferred over to Defendant Altice USA in the month of December 2016.

43.     In the month of December 2016, the Lead Plaintiffs received notice from Defendant Altice USA that administration of their health insurance plans, 401k plan and other benefits was being transferred to Altice USA.

44.     Defendant Altice Technical Services US Corp. ("ATS") was formed as a subsidiary of Defendant Altice USA and will house all the US-based field service, construction & fiber, design, outside plant maintenance, inside plant and field-based employees serving commercial accounts.

45.     Defendant Altice USA's executives have made public statements indicating that Defendant ATS through an offer of cash incentives, plans to begin migrating the Altice USA/Cablevision Outside Plant Technician workforce who accept such cash incentives, to ATS.

46.     Altice USA/Cablevision Outside Plant Technicians who make the switch to ATS will retain the same Altice USA health and welfare benefits, seniority and vacation time once they switch to ATS.

47.     However, the Outside Plant Technicians' decision on whether to migrate will be the product of collective bargaining unit, and thus they remain with Defendant Altice USA for the time being.

48.     In December 2016, a video presentation was made to all Altice USA/Cablevision Outside Plant Technicians regarding the offer to migrate to ATS.  The presentation was done by Boubazine, among other presenters.

49.     The presentation explained that if an employee decided not to transition from ATS, they would remain an Altice USA employee.

50.     In the video presentation, it was announced that Barry Monopoli ("Monopoli") would be the head of operations for the new ATS organization.  Monopoli was previously the Regional Vice President of the New York City Market under the legacy Cablevision operation immediately prior to the merger, and formerly the business operations at the Brooklyn Facilities while the Lead Plaintiffs and the Putative Collective and Class Members were employed during the Collective and Class Period(s).

51.     As announced in the video, many of the former managers employed under the legacy Cablevision operation immediately prior to the merger, who previously had managerial or supervisory authority over the Putative Collective and Class Members during the Collective and Class Period(s), are now or will be, employed by Defendant ATS.  This essentially ensures continuity of operation in Brooklyn among legacy Cablevision Outside Plant Technicians.

52.     At all relevant times, all the Altice-Cablevision Defendants have met the definition of an "employer" of Plaintiffs and the Putative Collective and Class under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

53.     Upon information and belief, Defendants maintain control, oversight, and direction over their operations and employment practices, including commonly managed human resources, benefits, and labor functions.

54.     Defendants have operated together as a single common enterprise in conducting business, including the business practices described in this Complaint.

55.     Defendants are interrelated companies that have common ownership, officers, managers, products and corporate purpose.

56.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

57.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## JURISDICTION AND VENUE

58.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

59.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

60.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

61.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this action, including but not limited to the wage violations which give rise to Plaintiffs' claims, occurred in this district.

## **FACTUAL ALLEGATIONS**

62.     Altice-Cablevision is a telecommunications service provider with operations in the New York metropolitan area.

63.     Altice-Cablevision provides residential and commercial cable, phone and internet services to over 3 million subscribers residing in New York, New Jersey, Connecticut and parts of Pennsylvania.

64.     Altice-Cablevision utilizes both in-house and contractor technicians to provide in-home technical support for their cable subscribers, including installation and troubleshooting support.

65.     Altice-Cablevision's contractor technicians have been the subject of numerous prior wage and hour class action lawsuits alleging similar violations as those alleged herein.[1]

66.     Defendants have facilities in the Bronx, New York and Brooklyn, New York, through which Altice-Cablevision provides customer service support to subscribers in the Bronx, Brooklyn and other locations in the New York Metropolitan area.  Altice-Cablevision also has facilities in Long Island, New York, Westchester County, New York, Connecticut and New Jersey.

67.     Altice-Cablevision collectively refers to these New York Metropolitan area facilities as the "footprint," which also includes other affiliated businesses that do not include cable facilities, for example Newsday, News 12 and Lightpath.

68.     Altice-Cablevision employs over 17,000 employees at its various facilities throughout the footprint.

---

[1]     The Lead Plaintiffs are, and were at all times, employees of Defendants and not independent contractors.  The Putative Collective and/or Class do not include Defendants' independent contractor workforce.

69.     Upon information and belief, there are three Altice-Cablevision support facilities, or depots, in Brooklyn: (i) 45th Street and Avenue H (45th Street facility); (ii) East 92nd Street and Avenue D (92nd Street facility); and (iii) East 96th Street and Avenue D (96th Street facility) (collectively referred to as the "Brooklyn Facilities").

70.     Outside Plant Technicians assigned to the Brooklyn Facilities are required to abide by the terms and conditions of Altice-Cablevision's Employee Handbook (the "Handbook") which is applicable to all employees throughout the footprint.

71.     The Brooklyn Facilities service a significantly higher volume of customers than their counterparts in suburban New York, New Jersey and Connecticut.

72.     Barry Monopoli, Altice-Cablevision Regional Vice President of the New York City Market, was formerly employed by the Cablevision Defendants as the Vice President of Field Operations for the New York City footprint, including the Brooklyn Facilities.

73.     Following the merger, upon information and belief, Monopoli continues to share responsibilities between Altice entities and those entities that now comprise Altice-Cablevision (*i.e.*, those former Cablevision entities that remain in existence under the Altice umbrella).

74.     Upon information and belief, Monopoli was appointed as the managing head of ATS in or around late 2016.

75.     Upon information and belief, Monopoli will remain affiliated with Altice USA for the sake of managing those who do not transition to ATS.

76.     In this position, he will be responsible for all Field Service Operations in Brooklyn and the Bronx under both Altice Technical Services and Altice-Cablevision, and will essentially continue in the same functional role he is in now.

77.     Kent Strahan ("Strahan"), Altice-Cablevision Director of Operations, shares responsibility with Monopoli over the Brooklyn Facilities.

78.     Upon information and belief, Strahan supervises at least four supervisors.

79.     Strahan and Monopoli oversee and enforce all operational policies and practices which relate to the services provided by Outside Plant Technicians in the Brooklyn Facilities.

80.     Upon information and belief, Defendants directly employ hundreds of in-house technicians at any given time in the Brooklyn Facilities, including approximately one hundred fifteen (115) Outside Plant Technicians within the past six (6) years.

81.     Those Outside Plant Technicians provide installation and troubleshooting service to Altice-Cablevision customers.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work During Unpaid Lunch Breaks**

82.     As part of Altice-Cablevision's telecommunications and cable services, Outside Plant Technicians are responsible for field operations duties entirely outside the customer's home or business.

83.     OSPs perform work including, *inter alia*, running wires above- or underground, locating underground utilities, climbing telephone poles, and performing other manual work to troubleshoot, remove or install telecommunications, cable and internet infrastructure located outside.

84.     Pursuant to Altice-Cablevision's common policies, OSPs are required to report to their assigned facility before the start of their shift in order to receive their daily assignments, which includes between 3 and 4 different jobs.

85.     On average, each job takes, at a minimum, 4 hours to complete.

86.     However, in practice OSPs are able to complete between 1 and 4 of those jobs because of, *e.g.*, problems with access or other unforeseeable issues that prevent them from completing the job.

87.     Furthermore, OSPs are responsible for repairing service outages, during which multiple Altice-Cablevision customers are without service.  These outages take priority over more routine troubleshooting, installation or removal jobs, and it is common that dispatch or supervisors call OSPs mid-job and tell the Technician to drop what he/she is working on and respond to an outage.

88.     Outages can occur as often as five times per week.

89.     The intensity of the work, the length of the jobs and the unpredictability ensures that OSPs frequently cannot stop for an uninterrupted, 30-minute lunch break.

90.     By way of example only, Plaintiff Jurtreau Villegas is unable to take a full, uninterrupted lunch break at least four times per week, resulting in a minimum of 2 hours of unpaid overtime per week.

91.     On average, Plaintiff Villegas must completely skip lunch at least once per week in order to complete her assigned jobs.  She is interrupted during her lunch break with calls for supervisors or dispatch at least once a week, and eats her lunch while driving between jobs or driving back to the depot at least three times per week.

92.      In short, throughout the relevant time periods, Plaintiff Villegas worked through lunch without pay nearly every day.

93.     By way of further example, Opt-in Plaintiff Dion Pemberton is unable to take lunch at least four times per week.

94.     By way of further example, Opt-in Plaintiff Jamal Howell was unable to take lunch approximately four times per week from 2013 through 2016.

95.     In order to provide Altice-Cablevision customers with adequate service, Defendants require non-exempt hourly Outside Plant Technicians to meet demanding productivity requirements each workday, forcing Plaintiffs to work in excess of 40 hours per week in order to avoid disciplinary action.  As a result, Plaintiffs regularly worked "off-the-clock" through their unpaid half-hour meal breaks.

96.     Outside Plant Technicians are assigned to weekly shifts that consist of five consecutive 8.5-hour days, or 42.5 hours a week, with a half-hour unpaid meal period automatically deducted from each daily shift.

97.     According to the Handbook, Outside Plant Technicians may also perform overtime-eligible labor that is pre-approved and scheduled in advance by a supervisor or manager, and are paid at one and one-half their hourly rate of pay for this time.[2]

98.     According to the Handbook, "incidental overtime" (*i.e.*, approved but unscheduled overtime-eligible labor) may be needed to "ensure a high degree of service to our customers and guests, to address business needs, breaking news or unplanned events."  Outside Plant Technicians are paid one and one-half their hourly rate of pay for all recognized overtime.

99.     According to the Handbook, supervisors must approve overtime labor in advance and "failure to obtain advance approval may result in corrective action, up to and including suspension or termination of employment."

---

[2]     Additionally, Outside Plant Technicians may be eligible for "standby" scheduling, whereby "employees are scheduled to be available to perform work outside their regular work schedule, as required by their supervisor/ manager to meet the Company's business needs." While on standby, employees receive a lump sum incentive pay of approximately $100 to $200, in addition to their hourly rate of pay for hours worked, or their overtime rate of pay for all standby hours worked over forty hours in a given work week.

100.     Further, according to the Handbook, "[i]t is Altice-Cablevision's policy that employees be paid for all overtime worked and [employees] must report all overtime hours worked, even if [they] did not receive advance approval."

101.     According to Altice-Cablevision's commonly enforceable policies and practices, working unapproved "incidental overtime" hours, while compensable, is prohibited.

102.     During the early years of the Collective and Class Period(s), Outside Plant Technicians received their daily assignments on a printout "work order" provided by their supervisors.

103.     Outside Plant Technicians were required to provide start and finish times for each job on "Field Service Daily Logs."

104.     Field Service Daily Logs were used to track a Tech's route, including arrival and departure times for jobs.  These logs were stapled or attached to the Tech's work orders for that day and handed in to a supervisor at the depot.

105.     More recently, Plaintiffs were provided with electronic tablet devices, equipped with "Tech Track" performance- and route-tracking software ("Altice-Cablevision Software" or the "Software"), through which Outside Plant Technicians receive their daily route assignments.

106.     Outside Plant Technicians are required to use the Altice-Cablevision Software to access their assigned jobs, daily schedule, and other information necessary to perform their jobs. Further, Outside Plant Technicians are required to indicate in Altice-Cablevision Software when they start and finish each job.

107.     Plaintiffs are forced to work through their thirty-minute unpaid lunch break on an almost daily basis.  Rather than take the thirty-minute break, Plaintiffs often eat lunch on the go as they drive between jobs or back to the depot, or Plaintiffs simply skip lunch entirely.

108.     Supervisors and Altice-Cablevision dispatchers have access to Outside Plant Technicians' individual Altice-Cablevision Software platform and monitor their productivity throughout the day by tracking their location, timeliness to each job, length of time to complete each job and determine which jobs may be likely to begin behind schedule.

109.     At some point during the Collective and/or Class Period(s), the Altice-Cablevision Software workflow application became available on an iPad, allowing OSPs to access the Software remotely.

110.     Initially, although the Software provided a list of daily jobs and multiple other "activities," the Software did not include a code or "activity" for a lunch break.

111.     Therefore, Plaintiffs could not electronically activate the lunch break to indicate whether they took the thirty-minute break.

112.     In or around 2016, after numerous complaints from OSPs, the Company created a code for lunch that allowed OSPs to register whether they had taken lunch.

113.     Nonetheless, the Company at no time held a meeting, circulated a memo or otherwise informed OSPs how to utilize the Software's lunch activity or made clear to OSPs that they were required to take a full half-hour uninterrupted meal break.

114.     Furthermore, and by way of example only, on one occasion in or around summer 2016, Opt-in Plaintiff Howell was near completion of his shift when he was contacted by dispatch regarding an outage.

115.     Opt-in Plaintiff Howell informed dispatch that he had not yet taken lunch and was extremely hungry, and asked dispatch to assign the outage to someone else.  Dispatch connected him to his supervisor, who told Opt-in Plaintiff Howell that because it was an outage, he must go there immediately.

116.    Opt-in Plaintiff Howell took his lunch and then headed to the outage.

117.    The following day, Kent Strahan called Opt-in Plaintiff Howell into his office and reprimanded him for "showing a lack of commitment" by taking his lunch and informing him that "outages take precedent over everything."  Mr. Strahan went on to reprimand Opt-in Plaintiff Howell that when there is an outage, he must skip lunch and could "take an hour the next shift."

**Defendants' Unlawful Timekeeping Policy**

118.    The Altice-Cablevision Software monitors Technicians' schedules on a daily basis, and is used by supervisors and upper management to manage Technicians' schedules, efficiency and productivity.

119.    The Altice-Cablevision Software uses a minute-by-minute timer to record when a Tech has arrived at their job, when they begin working, and when they complete a job.

120.    The Altice-Cablevision Software also allows, and in some instances, requires, the Technicians to record comments regarding why an activity took longer or shorter, or why the activity could not be completed.

121.    Unlike other similar software, the Altice-Cablevision Software for OSPs does not allow for lunch to be "cancelled" – instead, if lunch is not activated on the Software, the activity simply moves to the bottom of the queue for the day.

122.    By way of example only, prior to the creation of the "Lunch" activity in 2016 Opt-in Plaintiff Jamal Howell would activate an activity called "Special Event" to record the rare occasions when he was able to take a bona fide lunch break.

123.    More commonly – approximately every day from 2013 through 2016 – Opt-in Plaintiff Howell worked through his lunch.  When Opt-in Plaintiff Howell worked through his

lunch prior to 2016 he was unable to record such worked lunch anywhere on the Altice-Cablevision Software.

124.    After 2016 when Opt-in Plaintiff Howell worked through his lunch he was similarly unable to record such worked lunch anywhere on the Altice-Cablevision Software.

125.    Despite monitoring OSPs' activities in real time, the Company did not and does not have a policy in place to prompt or remind OSPs to take their lunch if they have not done so.

126.    Using the Altice-Cablevision Software, Defendants keep meticulous records of the Technicians' whereabouts, productivity and efficiency throughout the day.

127.    Defendants also receive written comments, and some instances (*i.e.* cancelled activities) actually required such comments, from the Technicians through the Altice-Cablevision Software.

128.    Despite the Altice-Cablevision Software being the most accurate real-time indicator of time worked by Plaintiffs, Defendants nonetheless choose to ignore such for payroll purposes.

129.    Rather, according to Altice-Cablevision policy applicable to the entire Putative Collective and Class, both before and after Altice-Cablevision implemented this software, Defendants track Outside Plant Technicians' working time ***solely*** via paper sign in/out time logs ("sign in/out sheet").

130.     At the end of every shift, Plaintiffs are required to manually record their start and end time on a weekly sign in/out sheet maintained by their supervisor.

131.    Each sign in/out sheet has a row for each Outside Plant Technician assigned to the supervisor's team, as well as a column for each day of the week.

132.    The sign in/out sheets do not have a space for Plaintiffs to record when they started and stopped their lunch break or that they worked through a lunch break,[3] nor did Defendants, at any time during the Class or Collective Periods, inform Outside Plant Technicians that they could, or should, record a worked lunch on the sign in/out sheet.

133.    Plaintiffs were never told by any supervisor or member of upper management that writing "no lunch," or otherwise recording a worked lunch on the sign in/out sheet, would result in payment for that time.

134.    Plaintiffs were never told that they could or should record a worked lunch in that fashion.

135.    In fact, Plaintiffs were never given *any* instruction of *any kind* regarding how they should record a worked lunch, either on paper or through the Altice-Cablevision Software.

136.    Plaintiffs' supervisors were responsible for inputting each Outside Plant Technician's time into Altice-Cablevision's payroll system.

137.    Throughout the entire Collective and Class Period(s), the payroll system has automatically deducted a thirty-minute meal break from each day worked, regardless of whether the employee actually took the meal break.

138.    Therefore, on days when Plaintiffs worked through their lunch break, the automatic thirty-minute meal break was deducted from their worked time and they were not paid for the time worked.

139.    Plaintiffs worked at least 30 minutes of unpaid overtime and up to 2.5 hours of unpaid overtime per week for worked lunch breaks.

---

[3]    The sign in/out sheets were maintained by each supervisor, and vary slightly in layout between supervisors and over time.  Nonetheless, each sign in/out time log has the same basic format, with columns divided into small squares for Techs to record the time they arrived at the depot at the beginning and ending of their shift.

140.    Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means, method or procedure, for recording actual hours worked during unpaid lunch breaks that was to be used for payroll purposes, despite Altice-Cablevision's own mandate that employees must record all hours worked.

141.    This failure violates the NYLL and FLSA requirements that employers maintain accurate payroll records.

142.    Even when Technicians attempted to record a missed lunch on the sign in/out sheets and/or Altice-Cablevision Software, and/or made verbal reports to their supervisors that they worked through lunch, they were not guaranteed payment for this time worked.

143.    This occurred despite the awareness and knowledge of Altice-Cablevision's management, and in direct violation of Defendants' own policy that "employees be paid for all overtime worked."

144.    As a result of Defendants' failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Putative Collective and Class with accurate and/or complete wage statements on each payday, including the total hours worked each week and the full amount of wages earned during the pay period.

**Defendants Have Knowledge of The Widespread "Off-The-Clock" Practices in the Brooklyn Facilities**

145.    Upon information and belief, Defendants' knowledge of the pervasive and widespread nature of the off-the-clock violations alleged herein is well documented, and implicates all levels of management, in willful violation of the FLSA and NYLL.

146.     Throughout the Collective and Class Periods, Plaintiffs frequently reported through Altice-Cablevision Software, constantly monitored by Plaintiffs' Supervisors, that they were forced to work through their unpaid lunch without compensation.

147.     Alternatively, Defendants knew or should have known that Plaintiffs were working through lunch based on the fact that, for example, Opt-in Plaintiff Howell created "Special Events" in his Tech Track software to record when he was able to take lunch – indicating that on all other occasions when he did not create a "Special Event" for his lunch that he was thus unable to take it.

148.     Furthermore, Defendants were well aware of unpredictable nature and extreme demands of Plaintiffs' jobs as Outside Plant Technicians, and had knowledge of the numerous daily events in an OSP's schedule that made it impossible to take lunch (*e.g.*, because a single job took all day, because of an outage, or because of a high volume of jobs assigned that day).

149.     Additionally, Plaintiffs complained about working through lunch to their Supervisors on numerous occasions throughout the Collective and Class Period(s).

150.     As such, Outside Plant Technicians' collective frustration with working through their unpaid lunch on an almost daily basis was well known by Altice-Cablevision management in the Brooklyn Facilities.

151.     Indeed, upon information and belief, working though lunch was a common subject of team meetings attended by Outside Plant Technicians and their supervisors.

152.     Over the course of four years, a large volume of often-repeated verbal complaints from Outside Plant Technicians to supervisors and management throughout Brooklyn regarding the same unlawful practice, and voluminous written records documenting the fact that Outside

Plant Technicians were working through lunches without pay, Defendants knowingly failed to correct their illegal over time policies, and off-the-clock violations continue to this day.

**Defendants' Unlawful Calculation of Plaintiffs' Regular Rate of Pay in Determining Overtime Premiums**

153. Plaintiffs and all members of the Putative Collective and Class were eligible for and received annual bonuses paid by Defendants.

154. All Altice-Cablevision Outside Plant Technicians in the Brooklyn Facilities were eligible for this bonus.

155. The bonuses were computed based on a predetermined and nondiscretionary formula that was dependent on the success of the facility as a whole.

156. The bonuses were thus awarded based on the success of the Defendant's employees as a group and not based on any particular Plaintiffs' personal productivity.

157. The annual bonuses were awarded to employees to induce them to work more steadily, rapidly, and efficiently and are thus required to be included within the Plaintiffs' regular rate of pay. Despite this, they were not included within the regular rate of pay for the purposes of calculating overtime wages at any point during the Collective and/or Class Period(s).

## FLSA COLLECTIVE ACTION ALLEGATIONS

158. Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

159. Defendants employed Plaintiffs during the Collective Period.

160. Defendants classified Plaintiffs and Members of the Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

161.    Upon information and belief, there are approximately more than 100 current and former Outside Plant Technicians who are similarly situated to Plaintiffs and who were denied overtime compensation.

162.    The Lead Plaintiffs represent other Outside Plant Technicians, and are acting on behalf of Defendants' current and former Outside Plant Technicians' interests as well as their own interests in bringing this action.

163.    Defendants unlawfully required Plaintiffs and all individuals employed as Outside Plant Technicians to work through their unpaid half-hour meal breaks.

164.    At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

165.    Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**   All individuals employed by Defendants as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn, New York facilities at any point during the Collective Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week and/or the applicable federal statutory minimum wage for hours worked under 40 in a workweek during the Collective Period based on the practices alleged herein.

166.    Specifically, Plaintiffs' Collective Class is further defined as involving (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; and (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work

"off the clock" and without compensation during unpaid meal breaks which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

167.    As such, the Named Plaintiffs and the Collective suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Period.

168.    Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

169.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective.

170.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective, and as such, notice should be sent to the Collective.

171.    There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

172.    Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

**FEDERAL RULES OF CIVIL PROCEDURE
RULE 23 NEW YORK CLASS ALLEGATIONS**

173.    Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

174.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined Class:

**Proposed Class:**          All individuals employed by Defendants during the Class Period as
Outside Plant Technicians, or similar titles, including Lead Outside
Plant Technicians, in Defendants' Brooklyn, New York Facilities,
who earned but were not paid lawful NYLL overtime premiums
for hours worked over 40 in a work week and/or the New York
minimum wage for hours worked under 40 in a workweek during
the Class Period, based on the practices alleged herein.

175.    Specifically, Plaintiffs' Class is further defined as involving: (i) claims for unpaid

overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay"

for the purposes of determining overtime pay entitlement; (ii) claims for unpaid overtime and

minimum wage compensation for Defendants' practice of knowingly suffering and permitting

the Class to work "off the clock" and without compensation during unpaid meal breaks, (iii)

claims for unpaid overtime and minimum wage compensation for Defendants' commonly

enforced timekeeping and recordkeeping practices which did not allow the Class to record their

time accurately and resulted in unpaid wages; and (iv) claims for wage statement violations for

Defendants' failure to provide the Class with accurate wage statements on each payday that

include the information required by NYLL §195(3), including the correct  number of hours

worked during the pay period.

176.    Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to

pay Plaintiffs and the Putative Class at least one and one-half times the New York state

minimum wage for all hours worked over 40 during the class period pursuant to the same illegal

practices and policies alleged above.

177.    Numerosity:   The Proposed Class is so numerous that joinder of all members is

impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class

Period, Defendants employed over 100 individuals who satisfy the definition of the Proposed Class.

178.    Typicality:    Plaintiffs are members of the class they seek to represent, and their claims are typical of the claims of the Putative Class. The Plaintiffs are informed and believe, and on that basis allege, that, like other Outside Plant Technicians, Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

179.    Plaintiffs' interests are co-extensive with those of the Putative Class that they seek to represent.  Plaintiffs are willing and able to fairly represent the Putative Class and to vigorously pursue their similar individual claims in this action.

180.    The relief Plaintiffs seek for the unlawful policies and practices complained of herein is also typical of the relief which is sought on behalf of the Putative Class.

181.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and there will be no difficulty in administering this action as a class action.

182.    Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Putative Class, and have retained counsel who are qualified and experienced in complex labor and employment class and collective action litigation, who are able to meet the demands necessary to litigate a class action of this size and complexity.  The combined interests, experience and resources of Plaintiffs and counsel to litigate the individual and class claims at issue in this case satisfy the adequacy of representation requirement of FRCP 23(a)(4).

183.    The claims of the Putative Class interrelate such that the interests of the members will be fairly and adequately protected in their absence.

184.    Commonality:     Common questions of law and fact exist to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a.      Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

b.      Whether those violations were pursuant to a common policy or practice applicable to all class members;

c.      Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Putative Class in violation of the NYLL;

d.      Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

e.      Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Putative Class;

f.      Whether those violations were pursuant to a common policy or practice applicable to all class members;

g.      Whether Defendants employed Plaintiffs and the Putative Class within the meaning of New York law;

h.      The proper measure of damages sustained by the Putative Class; and

i.      Whether Defendants' violations of the NYLL and/or its regulations were "willful."

185.    These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

186.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

187.     Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

188.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3)because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Putative Class the wages to which they are entitled. The damages suffered by the individual Putative Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

189.     Plaintiffs intend to send notice to all members of the Putative Class to the extent required by Rule 23.  The names and addresses of the Putative Class are available from Defendants.

190.     During the Class Period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful minimum wage under either the NYLL or the FLSA and more than 1 hour of overtime-eligible work during the class period for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation in Violation of the FLSA)**

191.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

192.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. §
216(b).  Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case
proceeds, other individuals will sign consent forms and join as plaintiffs.

193.     At all relevant times, Defendants have been an "employer" engaged in interstate
commerce and/or in the production of goods for commerce, within the meaning of 29 U.S.C. §
203.  At all relevant times, Defendants have employed and continue to employ employees,
including Plaintiffs and the Putative Collective.

194.     At all relevant times, upon information and belief, Defendants have gross
operating revenues in excess of $500,000.00.

195.     The FLSA requires each covered employer to compensate all non-exempt
employees at a rate of not less than one and one-half times the regular rate of pay for work
performed in excess of 40 hours per work week.

196.     During their employment with Defendants, within the applicable statute of
limitations, Plaintiffs and the Putative Collective worked in excess of forty hours per workweek
without lawful overtime compensation.

197.     Despite the hours worked by Plaintiffs and the Putative Collective, Defendants
willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay proper
overtime compensation.

198.     Based on the policies and practices articulated above, Plaintiffs were uniformly
denied FLSA mandated overtime premiums.

199.     By failing to accurately record, report, and/or preserve records of hours worked
by Plaintiffs and the Putative Collective, Defendants have failed to make, keep, and preserve

records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

200.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Putative Collective.

201.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C §§ 216(b) and 255(a).

202.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitation applies.  29 U.S.C. § 255.

203.     Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Minimum Wage Compensation in Violation of the FLSA)**

204.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

205.     At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

206.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

207.     Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

208.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Plaintiffs and other similarly situated employees a lawful minimum wage for all hours worked.

209.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations.  None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees.

210.    Plaintiffs and all similarly situated employees are victims of a uniform and employer-based compensation policy.  Upon information and belief, this uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Outside Plant Technicians in Defendants' Brooklyn Facilities.

211.    Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees, in addition to payment of back minimum wages, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages described pursuant to 29 U.S.C. § 216(b).

212.    Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

213.    Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

214.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

215.     At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

216.     The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

217.     Defendants have failed to pay Plaintiffs and the Putative Class the overtime wages to which they are entitled under the NYLL.

218.     By Defendants' failure to pay Plaintiffs and the Putative Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

219.     Furthermore, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

220.     Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Pay Lawful Minimum Wages and "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)

221.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

222.    The minimum wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

223.    Defendants have failed to pay Plaintiffs and the Putative Class the minimum wages to which they were entitled under the NYLL.

224.    By Defendants' failure to pay Plaintiffs and the Class Members minimum wages, they have willfully violated the NYLL Article 19, §§ 652 et seq., and the supporting New York State Department of Labor regulations.

225.    Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

226.    Furthermore, Defendants have failed to pay Plaintiffs and the Putative Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants for all hours worked in a workweek.

227.    Defendants' failure to pay these wages – known as "gap time" wages – is prohibited by NYLL Section 193 as an unauthorized deduction from wages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))

228.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

229.    The recordkeeping provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

230.    Defendants did not provide Plaintiffs and the Putative Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

231.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information.

232.    As a result of Defendants' unlawful conduct, Plaintiffs and the Putative Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by NYLL § 663.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the Putative Collective and Putative Class, respectfully requests that this Court:

A.    Declare that this action may proceed as a collective action pursuant to 29 U.S.C. 216;

B.    Declare that this action may proceed as a class action pursuant to Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure and/or Section 901 of the New York Civil Practice Law and Rules;

C.    Designate Plaintiffs' counsel and Plaintiffs Patrick Schiano, William Gilbert Garvin and Jurtreau Villegas as class counsel and class representatives, respectively.

D.    Declare that Defendants have violated the provisions of the Fair Labor Standards Act as to Plaintiffs and the Putative Collective;

E.    Declare that Defendants have violated the provisions of the New York Labor Law as to Plaintiffs and the Putative Class;

F.      Declare that Defendants' violations as described above are willful;

G.      Award Plaintiffs and the Putative Collective and Class the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

H.      Award reasonable attorneys' fees and costs pursuant to the FLSA, NYLL and/or other applicable law;

I.      Enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and NYLL; and

J.      Grant Plaintiffs and the Putative Collective and Class such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs on behalf of themselves and all other similarly-situated persons demand a trial by jury as to all issues so triable.

DATED:  October 4, 2017
        New York, New York

_____
Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
Rita M. Lenane, Esq.
The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, New York 10007
Tel.: 646-430-7930 (main)

*Counsel for Plaintiffs and the Putative Collective and Class*