UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- X

JURTREAU VILLEGAS, PATRICK
SCHIANO and WILLIAM GILBERT
GARVIN, individually and on behalf of all
others similarly situated,

                  Plaintiffs,

     -against-

CABLEVISION SYSTEMS NEW YORK
CITY CORPORATION, CABLEVISION
SYSTEMS CORPORATION, CSC
HOLDINGS, LLC, ALTICE USA, INC., and
ALTICE TECHNICAL SERVICES US
CORP.,

                  Defendants.

------------------------------------------------------

Civil Action No. 17-cv-05824-DLI-VMS

**ANSWER TO CLASS AND
COLLECTIVE ACTION COMPLAINT
FOR DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF**

        Defendants Cablevision Systems New York City Corporation, Cablevision Systems

Corporation, CSC Holdings, LLC (collectively referred to herein as "Cablevision"), Altice USA,

Inc. (incorrectly referred to herein as "Altice USA"), and Altice Technical Services US Corp.

(collectively referred to herein as "Defendants"), for their Answer to Plaintiffs' Amended Class

and Collective Action Complaint for Damages, Restitution and Injunctive Relief ("Complaint"),

state as follows:[1]

---

[1] Throughout the Complaint, Plaintiffs refer to Defendants collectively as "Altice-Cablevision." There is no entity by that name. Defendants deny the Complaint to the extent it uses that name and/or states that such entity is or was the employer of the named Plaintiffs or any member of the putative class or collective. Defendants answer in a single document and refer to the named entities collectively as "Defendants" for convenience, but only Defendant Cablevision Systems New York City Corporation was the employer of Outside Plant Technicians. By answering as set forth herein, Defendants do not waive any defenses as to whether any other Defendant is properly named as a party.

## NATURE OF THE ACTION

**COMPLAINT ¶1:**

This is a class action brought by Lead and Putative Class Representative Plaintiffs Jurtreau Villegas, Patrick Schiano, and William G. Garvin (together, the "Representative Plaintiffs" or "Lead Plaintiffs") and all Opt-in Plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the Putative Collective and Class identified below.  Lead Plaintiffs and the Putative Collective and Class members were or are employed by Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, (the "Cablevision Defendants"), Altice USA Inc., and Altice Technical Services US Corp., (the "Altice Defendants," together with the Cablevision Defendants, the "Altice-Cablevision Defendants" or "Defendants") as non-exempt hourly Outside Plant Technicians and/or Network Technicians (hereinafter "Outside Plant Technicians," "OSP" or "Technicians") and were denied "gap time" compensation and overtime premium compensation by requiring Outside Plant Technicians to work "off-the-clock" during their unpaid half-hour meal breaks and failing to properly calculate their regular rate of pay. Defendants also failed to provide Plaintiffs and the Putative Collective and Class with accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).

**ANSWER:**

Paragraph 1 contains a summary of the action, to which no response is required, but to

the extent a response is deemed required, Defendants deny that they violated any laws and deny

that Plaintiffs are entitled to any relief.

**COMPLAINT ¶2:**

The Putative Collective and Class of employees are similarly situated to the Lead Plaintiffs under Federal Rule of Civil Procedure ("FRCP") 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

**ANSWER:**

Defendants deny the allegations in paragraph 2.

**COMPLAINT ¶3:**

Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all others similarly situated who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' facilities or depots ("Facilities") located in Brooklyn at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay overtime premiums for all hours worked over 40 in a given workweek, and failing to keep accurate

records of hours Plaintiffs' actually worked. Plaintiffs and all such other similarly-situated persons are jointly referred to herein as the "Collective" or the "Putative Collective."

**ANSWER:**

Paragraph 3 contains a summary of Plaintiffs' FLSA claims, to which no response is

required, but to the extent a response is deemed required, Defendants deny that Plaintiffs' FLSA

claims are suitable for treatment on a collective basis and deny that Defendants acted unlawfully

toward Plaintiffs or any members of the "Collective" or "Putative Collective."

**COMPLAINT ¶4:**

Plaintiffs' claims under the NYLL are brought as a class action pursuant to FRCP 23 on behalf of themselves and all other similarly-situated persons who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' Facilities located in Brooklyn within the period of six years prior to the filing date of this Complaint (the "Class Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay Plaintiffs gap time compensation and overtime premiums for all hours worked over 40 in a given workweek, Defendants' unlawful practice of failing to keep accurate records of hours Plaintiffs actually worked, and Defendants' unlawful practice of failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime hours worked. Plaintiffs and all other such similarly-situated persons are jointly referred to herein as the "Class" or the "Putative Class."

**ANSWER:**

Paragraph 4 contains a summary of Plaintiffs' NYLL claims, to which no response is

required, but to the extent a response is deemed required, Defendants deny that Plaintiffs' NYLL

claims are suitable for treatment on a class basis and deny that Defendants acted unlawfully

toward Plaintiffs or any members of the "Class" or "Putative Class."

**COMPLAINT ¶5:**

Plaintiffs seek relief for the Putative Collective and Putative Class pursuant to the applicable provisions of the FLSA and NYLL to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

**ANSWER:**

Paragraph 5 contains a summary of Plaintiffs' claims, to which no response is required,

but to the extent a response is deemed required, Defendants deny the allegations in paragraph 5.

# PARTIES

**COMPLAINT ¶6:**

Lead and Representative Plaintiff Jurtreau Villegas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. She began working at Defendants' Brooklyn facilities as an Outside Plant Technician in 2000, and has been with the Company since 1999. At all relevant times, Ms. Villegas was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Ms. Villegas will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Villegas is an Outside Plant Technician,

but are without information and knowledge sufficient to admit or deny the allegation concerning

her residence. As to the second sentence, Defendants admit that Villegas began working for

Cablevision in 1999, except aver that she was assigned a reporting location in Brooklyn in 2003

and began working as an Outside Plant Technician in or about 2001. As to the third sentence,

Defendants aver that Villegas was an "employee" under the FLSA and NYLL. As to the fourth

sentence, Defendants admit that Villegas has filed with the Court a Consent to Participate as an

Opt-In Party Plaintiff in this action (ECF No. 30).

**COMPLAINT ¶7:**

Lead and Representative Plaintiff Patrick Schiano is an Outside Plant Technician, and presently and at all relevant times residing in Bethpage, Nassau County, New York. He began his employment with Defendants in 1993, in the Defendants' Brooklyn facilities as an audit tech. He became a Field Service Technician in the early 2000s and became an Outside Plant Technician over ten years ago. At all relevant times, Mr. Schiano was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Schiano will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Schiano is an Outside Plant Technician,

but are without information and knowledge sufficient to admit or deny the allegation concerning

his residence. As to the second and third sentences, Defendants aver that Schiano began working

for Cablevision in 1993 as an Audit Technician, had an assigned reporting location in Brooklyn, began working as a Field Service Technician in 1996, and began working as an Outside Plant Technician in approximately 2000.  As to the fourth sentence, Defendants aver that Schiano was an "employee" under the FLSA and NYLL.  As to the fifth sentence, Defendants admit that Schiano has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 26).

## COMPLAINT ¶8:

Lead and Representative Plaintiff William Gilbert Garvin is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, New York.  He began his employment with Defendants in 2002, in the Defendants' Brooklyn facilities as Field Service Technician.  He became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities, in 2014.  At all relevant times, Mr. Garvin was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Garvin will be filed with the Court.

## ANSWER:

As to the first sentence, Defendants admit that Garvin is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second and third sentences, Defendants admit that Garvin began working for Cablevision in 2002 as a Field Service Technician, had an assigned reporting location in Brooklyn, and began working as an Outside Plant Technician in 2014.  As to the fourth sentence, Defendants aver that Garvin was an "employee" under the FLSA and NYLL.  As to the fifth sentence, Defendants admit that Garvin has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 15).

## COMPLAINT ¶9:

Opt-in Plaintiff Dion Pemberton is an Outside Plant Technician for Defendants and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He began his employment with Defendants in 1999, in Defendants' Brooklyn facilities as a Field Service Technician, and in 2011 became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities.  At all relevant times, Mr. Pemberton was an "employee" within

5

the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Pemberton will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Pemberton is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants admit that Pemberton began working for Cablevision in 1999 as a Field Service Technician and had an assigned reporting location in Brooklyn, and aver that Pemberton began working as an Outside Plant Technician in 2013.  As to the third sentence, Defendants aver that Pemberton was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that Pemberton has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 24).

**COMPLAINT ¶10:**

Opt-in Plaintiff Jamal Howell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2013, and has been with the Company since in or around 2009.  At all relevant times, Mr. Howell was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Howell will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Howell is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that Howell began working for Cablevision in 2005, had an assigned reporting location in Brooklyn, and began working as an Outside Plant Technician in 2013.  As to the third sentence, Defendants aver that Howell was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that Howell has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (EC No. 18).

6

<u>**COMPLAINT ¶11:**</u>

Opt-in Plaintiff Paul Hickson is an Outside Plant Technician, and presently and at all relevant times residing in Delaware County, Pennsylvania. He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997. At all relevant times, Mr. Hickson was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Hickson will be filed with the Court.

<u>**ANSWER:**</u>

As to the first sentence, Defendants admit that Hickson is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants admit that Hickson began working for Cablevision in 1997, had an assigned reporting location in Brooklyn, and aver that Hickson began working as an Outside Plant Technician in 2001. As to the third sentence, Defendants aver that Hickson was an "employee" under the FLSA and NYLL. As to the fourth sentence, Defendants admit that Hickson has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 17).

<u>**COMPLAINT ¶12:**</u>

Opt-in Plaintiff Errol Campbell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997. At all relevant times, Mr. Campbell was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Campbell will be filed with the Court.

<u>**ANSWER:**</u>

As to the first sentence, Defendants admit that Campbell is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants aver that Campbell began working for Cablevision in 1998, had an assigned reporting location in Brooklyn, and began working as an Outside Plant Technician in 2001. As to the third sentence, Defendants aver that Campbell was

42886004v.2

an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that

Campbell has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this

action (ECF No. 9).

**COMPLAINT ¶13:**

Opt-in Plaintiff Dexter Charter is an Outside Plant Technician, and presently and at all relevant times residing in Lehigh County, Pennsylvania.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Dexter Charter is an Outside Plant

Technician, but are without information and knowledge sufficient to admit or deny the allegation

concerning his residence.  As to the second sentence, Defendants aver that Dexter Charter began

working for Cablevision in 2005, had an assigned reporting location in Brooklyn, and currently

works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Dexter

Charter was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants

admit that Dexter Charter has filed with the Court a Consent to Participate as an Opt-In Party

Plaintiff in this action (ECF No. 11).

**COMPLAINT ¶14:**

Opt-in Plaintiff Kester Charter is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Kester Charter is an Outside Plant

Technician, but are without information and knowledge sufficient to admit or deny the allegation

concerning his residence.  As to the second sentence, Defendants aver that Kester Charter began

working for Cablevision in 1997, had an assigned reporting location in Brooklyn, and currently

works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Kester

Charter was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants

admit that Kester Charter has filed with the Court a Consent to Participate as an Opt-In Party

Plaintiff in this action (ECF No. 20).

**COMPLAINT ¶15:**

       Opt-in Plaintiff Rohan Drysdale is an Outside Plant Technician, and presently and at all
relevant times residing in Brooklyn, Kings County, New York.  He presently works at
Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the
Company during the Collective and Class Period.  At all relevant times, Mr. Drysdale was an
"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff
in this action executed by Mr. Drysdale will be filed with the Court.

**ANSWER:**

       As to the first sentence, Defendants admit that Drysdale is an Outside Plant Technician,

but are without information and knowledge sufficient to admit or deny the allegation concerning

his residence.  As to the second sentence, Defendants aver that Drysdale began working for

Cablevision in 1998, had an assigned reporting location in Brooklyn, and currently works as an

Outside Plant Technician.  As to the third sentence, Defendants aver that Drysdale was an

"employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that

Drysdale has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this

action (ECF No. 12).

**COMPLAINT ¶16:**

       Opt-in Plaintiff Darryl De Freitas is an Outside Plant Technician, and presently and at all
relevant times residing in Brooklyn, Kings County, New York.  He presently works at
Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the
Company during the Collective and Class Period.  At all relevant times, Mr. De Freitas was an
"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff
in this action executed by Mr. De Freitas will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that De Freitas was an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that De Freitas began working for Cablevision in 2005 and had an assigned reporting location in Brooklyn, but deny that he currently works as an Outside Plant Technician.  As to the third sentence, Defendants aver that De Freitas was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that De Freitas has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 10).

**COMPLAINT ¶17:**

Opt-in Plaintiff Wayne Fairclough is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Fairclough was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Fairclough will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Fairclough is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that Fairclough began working for Cablevision in 1997, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Fairclough was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that Fairclough has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 13).

**COMPLAINT ¶18:**

Opt-in Plaintiff Earl Jonas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Jonas was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Jonas will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Jonas is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that Jonas began working for Cablevision in 2000, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Jonas was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that Jonas has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 19).

**COMPLAINT ¶19:**

Opt-in Plaintiff Paul Murray is an Outside Plant Technician, and presently and at all relevant times residing in Bridgeport, Fairfield County, Connecticut.  He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around the year 2000.  At all relevant times, Mr. Murray was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Murray will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Murray is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that Murray began working for Cablevision in 1993 and began working as an Outside Plant Technician in 2000, but deny that he worked out of "Defendants' Brooklyn facilities."  As to the third sentence, Defendants aver that Murray was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants

11

admit that Murray has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 22).

**COMPLAINT ¶20:**

Opt-in Plaintiff Bernard Paez is an Outside Plant Technician, and presently and at all relevant times residing in New Haven, New Haven County, Connecticut. He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2005. At all relevant times, Mr. Paez was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Paez will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Paez is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants aver that Paez began working for Cablevision in 1995 and began working as an Outside Plant Technician in approximately 1999, but deny that he worked out of "Defendants' Brooklyn facilities." As to the third sentence, Defendants aver that Paez was an "employee" under the FLSA and NYLL. As to the fourth sentence, Defendants admit that Paez has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 23).

**COMPLAINT ¶21:**

Opt-in Plaintiff Dwayne Scarlett is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He began working at Defendants' Brooklyn facilities as an Outside Plant Technician in or around 2010. At all relevant times, Mr. Scarlett was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Scarlett will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Scarlett is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants aver that Scarlett began working for

42886004v.2

Cablevision in 2005, had an assigned reporting location in Brooklyn, and currently works as an

Outside Plant Technician.  As to the third sentence, Defendants aver that Scarlett was an

"employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that

Scarlett has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this

action (ECF No. 25).

### COMPLAINT ¶22:

Opt-in Plaintiff Guy O. St. Jean is an Outside Plant Technician, and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. St. Jean was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. St. Jean will be filed with the Court.

### ANSWER:

As to the first sentence, Defendants admit that St. Jean is an Outside Plant Technician,

but are without information and knowledge sufficient to admit or deny the allegation concerning

his residence.  As to the second sentence, Defendants aver that St. Jean began working for

Cablevision in 1995, had an assigned reporting location in Brooklyn, and currently works as an

Outside Plant Technician.  As to the third sentence, Defendants aver that St. Jean was an

"employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that St.

Jean has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action

(ECF No. 27).

### COMPLAINT ¶23:

Opt-in Plaintiff Juan Valdez is an Outside Plant Technician, and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Valdez was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Valdez will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Valdez is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants aver that Valdez began working for Cablevision in 2003, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician. As to the third sentence, Defendants aver that Valdez was an "employee" under the FLSA and NYLL. As to the fourth sentence, Defendants admit that Valdez has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 29).

**COMPLAINT ¶24:**

Opt-in Plaintiff Luis Aruz is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period. At all relevant times, Mr. Aruz was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Aruz will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Luis Arzu (incorrectly identified as "Luis Aruz") is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence. As to the second sentence, Defendants aver that Arzu began working for Cablevision in 1990, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician. As to the third sentence, Defendants aver that Arzu was an "employee" under the FLSA and NYLL. As to the fourth sentence, Defendants aver that Arzu has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 7).

**COMPLAINT ¶25:**

Opt-in Plaintiff Ian Blackman is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Blackman was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Blackman will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Blackman is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.   As to the second sentence, Defendants aver that Blackman began working for Cablevision in 1997, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Blackman was an "employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that Blackman has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 8).

**COMPLAINT ¶26:**

Opt-in Plaintiff Felipe Fong is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Fong was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Fong will be filed with the Court.

**ANSWER:**

As to the first sentence, Defendants admit that Fong is an Outside Plant Technician, but are without information and knowledge sufficient to admit or deny the allegation concerning his residence.  As to the second sentence, Defendants aver that Fong began working for Cablevision in 1998, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant Technician.  As to the third sentence, Defendants aver that Fong was an "employee" under the

42886004v.2

FLSA and NYLL.  As to the fourth sentence, Defendants admit that Fong has filed with the

Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 14).

## COMPLAINT ¶27:

Opt-in Plaintiff Kevin Halls is an Outside Plant Technician, and presently and at all relevant times residing in Rosedale, Queens County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Halls was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Halls will be filed with the Court.

## ANSWER:

As to the first sentence, Defendants admit that Halls is an Outside Plant Technician, but

are without information and knowledge sufficient to admit or deny the allegation concerning his

residence.  As to the second sentence, Defendants aver that Halls began working for Cablevision

in 1995, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant

Technician.  As to the third sentence, Defendants aver that Halls was an "employee" under the

FLSA and NYLL.  As to the fourth sentence, Defendants admit that Halls has filed with the

Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 16).

## COMPLAINT ¶28:

Opt-in Plaintiff Jorge Minguela is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Minguela was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Minguela will be filed with the Court.

## ANSWER:

As to the first sentence, Defendants admit that Minguela is an Outside Plant Technician,

but are without information and knowledge sufficient to admit or deny the allegation concerning

his residence.   As to the second sentence, Defendants aver that Minguela began working for

Cablevision in 1995, had an assigned reporting location in Brooklyn, and currently works as an

Outside Plant Technician.  As to the third sentence, Defendants aver that Minguela was an

"employee" under the FLSA and NYLL.  As to the fourth sentence, Defendants admit that

Minguela has filed with the Court a Consent to Participate as an Opt-In Party Plaintiff in this

action (ECF No. 21).

## COMPLAINT ¶29:

Opt-in Plaintiff Jermaine Titus is an Outside Plant Technician, and presently and at all
relevant times residing in Brooklyn, Kings County, New York.  He presently works at
Defendants' Brooklyn facilities as an Outside Plant Technician, and has worked for the
Company during the Collective and  Class Period.  At all relevant times, Mr. Titus was an
"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff
in this action executed by Mr. Titus will be filed with the Court.

## ANSWER:

As to the first sentence, Defendants admit that Titus is an Outside Plant Technician, but

are without information and knowledge sufficient to admit or deny the allegation concerning his

residence.  As to the second sentence, Defendants aver that Titus began working for Cablevision

in 1997, had an assigned reporting location in Brooklyn, and currently works as an Outside Plant

Technician.  As to the third sentence, Defendants aver that Titus was an "employee" under the

FLSA and NYLL.  As to the fourth sentence, Defendants admit that Titus has filed with the

Court a Consent to Participate as an Opt-In Party Plaintiff in this action (ECF No. 28).

## COMPLAINT ¶30:

Lead and Representative Plaintiffs, Opt-in Plaintiffs and the Putative Collective and
Putative Class are currently, or were previously, employed by all Defendants as a single
employer.

## ANSWER:

Defendants deny the allegations in paragraph 30.

42886004v.2

**Corporate Defendants**

**COMPLAINT ¶31:**

Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation and CSC Holdings, LLC are Delaware corporations with principal places of business at 111 Stewart Avenue, Bethpage, Nassau County, New York.  At all relevant times herein, the Cablevision Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

**ANSWER:**

Defendants admit that Cablevision Systems New York City Corporation and Cablevision Systems Corporation are corporations organized and existing under the laws of the State of Delaware, and that CSC Holdings, LLC is a domestic limited liability company organized and existing under the laws of the State of Delaware.  Defendants deny the remaining allegations of paragraph 31.

**COMPLAINT ¶32:**

Defendant Altice USA, Inc. and Defendant Altice Technical Services US Corp. are both subsidiaries of Altice N.V., an Amsterdam-based telecommunications company.  Defendant Altice USA and Defendant Altice Technical Services USA are Delaware corporations registered to conduct business in New York.  At all relevant times herein, the Altice Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

**ANSWER:**

Defendants admit that Defendants Altice USA, Inc. and Altice Technical Services US Corp. (incorrectly referred to above as "Altice USA" and "Altice Technical Services USA" respectively) are registered to conduct business in New York. Defendants deny the remaining allegations in paragraph 32.  Answering further, Defendants aver that Neptune Holdings US Corp. d/b/a Altice USA purchased Cablevision on or about June 2016.

18

**Continuity of Operations Between the Cablevision Defendants and the Altice Defendants**

**COMPLAINT ¶33:**

Altice N.V. acquired Defendant Cablevision Systems Corporation following a merger which was completed in June 2016 and set up various domestic subsidiaries to conduct Altice N.V.'s business in the United States, including Defendant Altice USA and Defendant Altice Technical Services.

**ANSWER:**

Defendants deny the allegations in paragraph 33.  Answering further, Defendants aver

that Neptune Holdings US Corp. d/b/a Altice USA purchased Cablevision on or about June 2016.

**COMPLAINT ¶34:**

Following the acquisition, as set forth below, Defendants have maintained a substantial continuity of business operations – Defendants Altice USA and/or Altice Technical Services utilize the same facilities in Brooklyn as the Cablevision Defendants, utilize substantially the same work force, substantially the same supervisory personnel, the same machinery, equipment, and methods of production and provide the same product/service.

**ANSWER:**

Defendants deny the allegations in paragraph 34.

**COMPLAINT ¶35:**

Following the acquisition, Defendants maintained an intentional unity of operations with respect to technical services provided to customers, including outside plant services, and centralized control of labor relations, common management, and common ownership and/or financial control.

**ANSWER:**

Defendants deny the allegations in paragraph 35.

**COMPLAINT ¶36:**

Immediately following the acquisition, Altice N.V. merged its newly acquired Cablevision operations with its pre-existing Suddenlink and Optimum branded markets and operations, and retired the Cablevision name.

**ANSWER:**

Defendants deny the allegations in paragraph 36.

**COMPLAINT ¶37:**

Defendant Altice USA was formed on or around June 21, 2016 from the operational merger of these markets.

**ANSWER:**

Defendants deny the allegations in paragraph 37.

**COMPLAINT ¶38:**

The creation of Defendant Altice USA was "effective immediately" according to a press release that named Defendant Altice USA's Executive Leadership Team.

**ANSWER:**

Defendants deny the allegations in paragraph 38 and respectfully refer the Court to the

cited document for a full and accurate statement of its contents.

**COMPLAINT ¶39:**

The Altice USA Executive Leadership Team includes Dexter Goei, named Chairman and Executive Officer of Defendant Altice USA.

**ANSWER:**

Defendants deny the allegations in paragraph 39, except aver that Mr. Goei was named

the Chairman and Chief Executive Officer of Defendant Altice USA, Inc. (incorrectly referred to

above as "Altice USA").

**COMPLAINT ¶40:**

The Altice USA Executive Leadership Team also includes Hakim Boubazine ("Boubazine"), Co-President and Chief Operating Officer of Defendant Altice USA, who is also on the Altice Technical Services Transition Team.

**ANSWER:**

Defendants deny the allegations in paragraph 40, except admit that Mr. Boubazine is on

the Altice Technical Services Transition Team. Defendants further aver that Mr. Boubazine's

title is Co-President and Chief Operating Officer of Defendant Altice USA, Inc. (incorrectly

referred to above as "Altice USA").

20

**COMPLAINT ¶41:**

The Lead Plaintiffs and the Putative Collective and Class have been informed that they are affiliated with Defendant Altice USA by Altice USA corporate representatives, and they received information regarding their status under the merger in or around late 2016.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 41.

**COMPLAINT ¶42:**

Lead Plaintiffs and the Putative Collective and Class's health and other insurance benefits and 401K plans were transferred over to Defendant Altice USA in the month of December 2016.

**ANSWER:**

Defendants deny the allegations in paragraph 42.

**COMPLAINT ¶43:**

In the month of December 2016, the Lead Plaintiffs received notice from Defendant Altice USA that administration of their health insurance plans, 401k plan and other benefits was being transferred to Altice USA.

**ANSWER:**

Defendants deny the allegations in paragraph 43.

**COMPLAINT ¶44:**

Defendant Altice Technical Services US Corp. ("ATS") was formed as a subsidiary of Defendant Altice USA and will house all the US-based field service, construction & fiber, design, outside plant maintenance, inside plant and field-based employees serving commercial accounts.

**ANSWER:**

Defendants deny the allegations in paragraph 44 .

**COMPLAINT ¶45:**

Defendant Altice USA's executives have made public statements indicating that Defendant ATS through an offer of cash incentives, plans to begin migrating the Altice USA/Cablevision Outside Plant Technician workforce who accept such cash incentives, to ATS.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 45.

**COMPLAINT ¶46:**

Altice USA/Cablevision Outside Plant Technicians who make the switch to ATS will
retain the same Altice USA health and welfare benefits, seniority and vacation time once they
switch to ATS.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 46.

**COMPLAINT ¶47:**

However, the Outside Plant Technicians' decision on whether to migrate will be the
product of collective bargaining unit, and thus they remain with Defendant Altice USA for the
time being.

**ANSWER:**

Defendants deny the allegations in paragraph 47.

**COMPLAINT ¶48:**

In December 2016, a video presentation was made to all Altice USA/Cablevision Outside
Plant Technicians regarding the offer to migrate to ATS.  The presentation was done by
Boubazine, among other presenters.

**ANSWER:**

Defendants deny the allegations in paragraph 48 and respectfully refer the Court to the

cited video for a full and accurate statement of its contents.

**COMPLAINT ¶49:**

The presentation explained that if an employee decided not to transition from ATS, they
would remain an Altice USA employee.

**ANSWER:**

Defendants deny the allegations in paragraph 49 and respectfully refer the Court to the

cited video for a full and accurate statement of its contents.

**COMPLAINT ¶50:**

In the video presentation, it was announced that Barry Monopoli ("Monopoli") would be the head of operations for the new ATS organization. Monopoli was previously the Regional Vice President of the New York City Market under the legacy Cablevision operation immediately prior to the merger, and formerly the business operations at the Brooklyn Facilities while the Lead Plaintiffs and the Putative Collective and Class Members were employed during the Collective and Class Period(s).

**ANSWER:**

Defendants deny the allegations in paragraph 50 and respectfully refer the Court to the

cited video for a full and accurate statement of its contents.

**COMPLAINT ¶51:**

As announced in the video, many of the former managers employed under the legacy Cablevision operation immediately prior to the merger, who previously had managerial or supervisory authority over the Putative Collective and Class Members during the Collective and Class Period(s), are now or will be, employed by Defendant ATS. This essentially ensures continuity of operation in Brooklyn among legacy Cablevision Outside Plant Technicians.

**ANSWER:**

Defendants deny the allegations in paragraph 51 and respectfully refer the Court to the

cited video for a full and accurate statement of its contents.

**COMPLAINT ¶52:**

At all relevant times, all the Altice-Cablevision Defendants have met the definition of an "employer" of Plaintiffs and the Putative Collective and Class under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

**ANSWER:**

Defendants deny the allegations in paragraph 52.

**COMPLAINT ¶53:**

Upon information and belief, Defendants maintain control, oversight, and direction over their operations and employment practices, including commonly managed human resources, benefits, and labor functions.

**ANSWER:**

Defendants deny the allegations in paragraph 53.

**COMPLAINT ¶54:**

Defendants have operated together as a single common enterprise in conducting business, including the business practices described in this Complaint.

**ANSWER:**

Defendants deny the allegations in paragraph 54.

**COMPLAINT ¶55:**

Defendants are interrelated companies that have common ownership, officers, managers, products and corporate purpose.

**ANSWER:**

Defendants deny the allegations in paragraph 55.

**COMPLAINT ¶56:**

At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

**ANSWER:**

Defendants deny the allegations in paragraph 56.

**COMPLAINT ¶57:**

Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

**ANSWER:**

Defendants admit that Cablevision's gross volume of business is not less than $500,000

per annum, and otherwise deny the allegations in paragraph 57.

**JURISDICTION AND VENUE**

**COMPLAINT ¶58:**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and
supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**

Defendants admit the allegations in paragraph 58.

**COMPLAINT ¶59:**

In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to
29 U.S.C. § 207 *et seq*.

**ANSWER:**

Defendants admit that the Court has subject matter jurisdiction over Plaintiffs' FLSA

claims.

**COMPLAINT ¶60:**

This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201
and 2202.

**ANSWER:**

Defendants admit that the Court is empowered to issue a declaratory judgment but deny

that such relief is appropriate here.

**COMPLAINT ¶61:**

Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of
the events or omissions giving rise to this action, including but not limited to the wage violations
which give rise to Plaintiffs' claims, occurred in this district.

**ANSWER:**

Defendants admit that venue in this District is proper but deny that any of the alleged

violations of law took place.

## FACTUAL ALLEGATIONS

**COMPLAINT ¶62:**

Altice-Cablevision is a telecommunications service provider with operations in the New
York metropolitan area.

**ANSWER:**

Defendants admit that "Altice-Cablevision" is a telecommunications and media company

that provides services in areas including the New York metropolitan area.

**COMPLAINT ¶63:**

Altice-Cablevision provides residential and commercial cable, phone and internet
services to over 3 million subscribers residing in New York, New Jersey, Connecticut and parts
of Pennsylvania.

**ANSWER:**

Defendants admit that "Altice-Cablevision" provides television, internet, and phone

services to more than 3 million customers residing in New York, New Jersey, Connecticut, and

Pennsylvania.

**COMPLAINT ¶64:**

Altice-Cablevision utilizes both in-house and contractor technicians to provide in-home
technical support for their cable subscribers, including installation and troubleshooting support.

**ANSWER:**

Defendants deny the allegations in paragraph 64, except aver that "Altice-Cablevision"

employs technicians and engages contractors to provide various services.

**COMPLAINT ¶65:**

Altice-Cablevision's contractor technicians have been the subject of numerous prior wage and hour class action lawsuits alleging similar violations as those alleged herein.[2]

**ANSWER:**

Defendants deny the allegations in paragraph 65, including footnote 1 thereto (which is

reproduced herein as footnote 2).

**COMPLAINT ¶66:**

Defendants have facilities in the Bronx, New York and Brooklyn, New York, through which Altice-Cablevision provides customer service support to subscribers in the Bronx, Brooklyn and other locations in the New York Metropolitan area.  Altice-Cablevision also has facilities in Long Island, New York, Westchester County, New York, Connecticut and New Jersey.

**ANSWER:**

Defendants aver that "Altice-Cablevision" operates facilities in Brooklyn, New York,

through which it provides the delivery and repair of television, internet, and phone services to

"Altice-Cablevision's" customers in New York City and its surrounding areas.  Defendants

further admit that "Altice-Cablevision" has facilities in the Bronx, New York, Long Island, New

York, Westchester County, New York, Connecticut, and New Jersey, but deny that those

facilities are relevant to Plaintiffs' claims as pleaded in this Complaint.

**COMPLAINT ¶67:**

Altice-Cablevision collectively refers to these New York Metropolitan area facilities as the "footprint," which also includes other affiliated businesses that do not include cable facilities, for example Newsday, News 12 and Lightpath.

**ANSWER:**

Defendants deny the allegations in paragraph 67.

---

[2] The Lead Plaintiffs are, and were at all times, employees of Defendants and not independent contractors. The Putative Collective and/or Class do not include Defendants' independent contractor workforce.

**COMPLAINT ¶68:**

Altice-Cablevision employs over 17,000 employees at its various facilities throughout the footprint.

**ANSWER:**

Defendants deny the allegations in paragraph 68.

**COMPLAINT ¶69:**

Upon information and belief, there are three Altice-Cablevision support facilities, or depots, in Brooklyn:  (i) 45th Street and Avenue H (45th Street facility); (ii) East 92nd Street and Avenue D (92nd Street facility); and (iii) East 96th Street and Avenue D (96th Street facility) (collectively referred to as the "Brooklyn Facilities").

**ANSWER:**

Defendants admit the allegations in paragraph 69.

**COMPLAINT ¶70:**

Outside Plant Technicians assigned to the Brooklyn Facilities are required to abide by the terms and conditions of Altice-Cablevision's Employee Handbook (the "Handbook") which is applicable to all employees throughout the footprint.

**ANSWER:**

Defendants aver that Altice-Cablevision issues employee handbooks to its Outside Plant

Technicians and that those employee handbooks describe some of the Altice-Cablevision

policies, procedures, and benefits related to their employment with Altice-Cablevision.

Defendants deny the remaining allegations in paragraph 70, including that there is one

"Employee Handbook" that applies to all putative members of the class and collective over the

entire relevant time period as alleged in the Complaint.

**COMPLAINT ¶71:**

The Brooklyn Facilities service a significantly higher volume of customers than their counterparts in suburban New York, New Jersey and Connecticut.

**ANSWER:**

Defendants deny the allegations in paragraph 71.

42886004v.2

**COMPLAINT ¶72:**

Barry Monopoli, Altice-Cablevision Regional Vice President of the New York City Market, was formerly employed by the Cablevision Defendants as the Vice President of Field Operations for the New York City footprint, including the Brooklyn Facilities.

**ANSWER:**

Defendants deny the allegations in paragraph 72, except admit that Barry Monopoli was

the former Regional Vice President of the New York City market for Cablevision and oversaw

the Brooklyn Facilities.

**COMPLAINT ¶73:**

Following the merger, upon information and belief, Monopoli continues to share responsibilities between Altice entities and those entities that now comprise Altice-Cablevision (*i.e.*, those former Cablevision entities that remain in existence under the Altice umbrella).

**ANSWER:**

Defendants deny the allegations in paragraph 73.

**COMPLAINT ¶74:**

Upon information and belief, Monopoli was appointed as the managing head of ATS in or around late 2016.

**ANSWER:**

Defendants deny the allegations in paragraph 74.

**COMPLAINT ¶75:**

Upon information and belief, Monopoli will remain affiliated with Altice USA for the sake of managing those who do not transition to ATS.

**ANSWER:**

Defendants deny the allegations in paragraph 75.

**COMPLAINT ¶76:**

In this position, he will be responsible for all Field Service Operations in Brooklyn and the Bronx under both Altice Technical Services and Altice-Cablevision, and will essentially continue in the same functional role he is in now.

**ANSWER:**

Defendants deny the allegations in paragraph 76.

**COMPLAINT ¶77:**

Kent Strahan ("Strahan"), Altice-Cablevision Director of Operations, shares responsibility with Monopoli over the Brooklyn Facilities.

**ANSWER:**

Defendants admit that Kent Strachan's (incorrectly identified as "Kent Strahan") position

is Director of Operations and otherwise deny the allegations in paragraph 77.

**COMPLAINT ¶78:**

Upon information and belief, Strahan supervises at least four supervisors.

**ANSWER:**

Defendants admit the allegations in paragraph 78.

**COMPLAINT ¶79:**

Strahan and Monopoli oversee and enforce all operational policies and practices which relate to the services provided by Outside Plant Technicians in the Brooklyn Facilities.

**ANSWER:**

Defendants deny the allegations in paragraph 79.

**COMPLAINT ¶80:**

Upon information and belief, Defendants directly employ hundreds of in-house technicians at any given time in the Brooklyn Facilities, including approximately one hundred fifteen (115) Outside Plant Technicians within the past six (6) years.

**ANSWER:**

Defendants admit that more than 40 Outside Plant Technicians currently work out of

Altice-Cablevision's facilities located in Brooklyn.  Defendants deny the remaining allegations

in paragraph 80.

**COMPLAINT ¶81:**

Those Outside Plant Technicians provide installation and troubleshooting service to Altice-Cablevision customers.

**ANSWER:**

Defendants deny the allegations in paragraph 81, except aver that Outside Plant

Technicians provide various services to Altice-Cablevision's customers.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work During Unpaid Lunch Breaks**

**COMPLAINT ¶82:**

As part of Altice-Cablevision's telecommunications and cable services, Outside Plant Technicians are responsible for field operations duties entirely outside the customer's home or business.

**ANSWER:**

Defendants aver Outside Plant Technicians are responsible for field operations duties

primarily outside the customer's home or business.

**COMPLAINT ¶83:**

OSPs perform work including, *inter alia*, running wires above- or underground, locating underground utilities, climbing telephone poles, and performing other manual work to troubleshoot, remove or install telecommunications, cable and internet infrastructure located outside.

**ANSWER:**

Defendants admit the allegations in paragraph 83.

**COMPLAINT ¶84:**

Pursuant to Altice-Cablevision's common policies, OSPs are required to report to their assigned facility before the start of their shift in order to receive their daily assignments, which includes between 3 and 4 different jobs.

**ANSWER:**

Defendants deny the allegations in paragraph 84, except aver that OSPs report to their

assigned facility in order to receive their daily assignments.

31

**COMPLAINT ¶85:**

On average, each job takes, at a minimum, 4 hours to complete.

**ANSWER:**

Defendants deny the allegations in paragraph 85.

**COMPLAINT ¶86:**

However, in practice OSPs are able to complete between 1 and 4 of those jobs because of, *e.g.*, problems with access or other unforeseeable issues that prevent them from completing the job.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 86.

**COMPLAINT ¶87:**

Furthermore, OSPs are responsible for repairing service outages, during which multiple Altice-Cablevision customers are without service.  These outages take priority over more routine troubleshooting, installation or removal jobs, and it is common that dispatch or supervisors call OSPs mid-job and tell the Technician to drop what he/she is working on and respond to an outage.

**ANSWER:**

Defendants deny the allegations in paragraph 87, except admit that OSPs perform work

repairing service outages and aver that such outages generally take priority over certain other

service projects.

**COMPLAINT ¶88:**

Outages can occur as often as five times per week.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 88.

**COMPLAINT ¶89:**

The intensity of the work, the length of the jobs and the unpredictability ensures that OSPs frequently cannot stop for an uninterrupted, 30-minute lunch break.

**ANSWER:**

Defendants deny the allegations in paragraph 89.

**COMPLAINT ¶90:**

By way of example only, Plaintiff Jurtreau Villegas is unable to take a full, uninterrupted lunch break at least four times per week, resulting in a minimum of 2 hours of unpaid overtime per week.

**ANSWER:**

Defendants deny the allegations in paragraph 90.

**COMPLAINT ¶91:**

On average, Plaintiff Villegas must completely skip lunch at least once per week in order to complete her assigned jobs.  She is interrupted during her lunch break with calls for supervisors or dispatch at least once a week, and eats her lunch while driving between jobs or driving back to the depot at least three times per week.

**ANSWER:**

Defendants deny the allegations in paragraph 91.

**COMPLAINT ¶92:**

In short, throughout the relevant time periods, Plaintiff Villegas worked through lunch without pay nearly every day.

**ANSWER:**

Defendants deny the allegations in paragraph 92.

**COMPLAINT ¶93:**

By way of further example, Opt-in Plaintiff Dion Pemberton is unable to take lunch at least four times per week.

**ANSWER:**

Defendants deny the allegations in paragraph 93.

**COMPLAINT ¶94:**

By way of further example, Opt-in Plaintiff Jamal Howell was unable to take lunch approximately four times per week from 2013 through 2016.

**ANSWER:**

Defendants deny the allegations in paragraph 94.

**COMPLAINT ¶95:**

In order to provide Altice-Cablevision customers with adequate service, Defendants require non-exempt hourly Outside Plant Technicians to meet demanding productivity requirements each workday, forcing Plaintiffs to work in excess of 40 hours per week in order to avoid disciplinary action.  As a result, Plaintiffs regularly worked "off-the-clock" through their unpaid half-hour meal breaks.

**ANSWER:**

Defendants deny the allegations in paragraph 95.

**COMPLAINT ¶96:**

Outside Plant Technicians are assigned to weekly shifts that consist of five consecutive 8.5-hour days, or 42.5 hours a week, with a half-hour unpaid meal period automatically deducted from each daily shift.

**ANSWER:**

Defendants state that the allegations of paragraph 96 regarding scheduling and shift times

are too broad to permit an accurate response applicable to all Outside Plant Technicians over the

entire relevant time period, and on that basis lack information and knowledge sufficient to admit

or deny those allegations.

**COMPLAINT ¶97:**

According to the Handbook, Outside Plant Technicians may also perform overtime-eligible labor that is pre-approved and scheduled in advance by a supervisor or manager, and are paid at one and one-half their hourly rate of pay for this time.[3]

---

[3] Additionally, Outside Plant Technicians may be eligible for "standby" scheduling, whereby "employees are scheduled to be available to perform work outside their regular work schedule, as required by their supervisor/ manager to meet the Company's business needs." While on standby, employees receive a lump sum incentive pay of approximately $100 to $200, in addition to their hourly rate of pay for hours worked, or their overtime rate of pay for all standby hours worked over forty hours in a given work week.

**ANSWER:**

Defendants aver that Outside Plant Technicians occasionally perform pre-approved overtime-eligible work for which they receive premium pay.  Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents.  Defendants deny the remaining allegations in paragraph 97, including footnote 2 thereto (which is reproduced herein as footnote 3).

**COMPLAINT ¶98:**

According to the Handbook, "incidental overtime" (*i.e.*, approved but unscheduled overtime-eligible labor) may be needed to "ensure a high degree of service to our customers and guests, to address business needs, breaking news or unplanned events."  Outside Plant Technicians are paid one and one-half their hourly rate of pay for all recognized overtime.

**ANSWER:**

Defendants admit that incidental overtime worked by Outside Plant Technicians is paid at one and one-half times their regular rate of pay.  Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents and otherwise deny the allegations in paragraph 98.

**COMPLAINT ¶99:**

According to the Handbook, supervisors must approve overtime labor in advance and "failure to obtain advance approval may result in corrective action, up to and including suspension or termination of employment."

**ANSWER:**

Defendants admit that employees are required to receive supervisory approval before performing overtime work and aver that employees are paid for such time even if they did not receive advance approval.  Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents and otherwise deny the allegations in paragraph 99.

**COMPLAINT ¶100:**

Further, according to the Handbook, "[i]t is Altice-Cablevision's policy that employees be paid for all overtime worked and [employees] must report all overtime hours worked, even if [they] did not receive advance approval."

**ANSWER:**

Defendants deny that there is one "Employee Handbook" that applies to all putative members of the class and collective.  Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents and otherwise deny the allegations in paragraph 100.

**COMPLAINT ¶101:**

According to Altice-Cablevision's commonly enforceable policies and practices, working unapproved "incidental overtime" hours, while compensable, is prohibited.

**ANSWER:**

Defendants deny the allegations in paragraph 101.

**COMPLAINT ¶102:**

During the early years of the Collective and Class Period(s), Outside Plant Technicians received their daily assignments on a printout "work order" provided by their supervisors.

**ANSWER:**

Defendants admit the allegations in paragraph 102.

**COMPLAINT ¶103:**

Outside Plant Technicians were required to provide start and finish times for each job on "Field Service Daily Logs."

**ANSWER:**

Defendants deny the allegations in paragraph 103.

**COMPLAINT ¶104:**

Field Service Daily Logs were used to track a Tech's route, including arrival and departure times for jobs.  These logs were stapled or attached to the Tech's work orders for that day and handed in to a supervisor at the depot.

36

**ANSWER:**

Defendants deny the allegations in paragraph 104.

**COMPLAINT ¶105:**

More recently, Plaintiffs were provided with electronic tablet devices, equipped with "Tech Track" performance- and route-tracking software ("Altice-Cablevision Software" or the "Software"), through which Outside Plant Technicians receive their daily route assignments.

**ANSWER:**

Defendants admit that Tech Track is a workload management software system used to

plan, issue, and access Outside Plant Technicians' daily assignments and customer work orders.

Defendants deny the remaining allegations in paragraph 105.

**COMPLAINT ¶106:**

Outside Plant Technicians are required to use the Altice-Cablevision Software to access their assigned jobs, daily schedule, and other information necessary to perform their jobs. Further, Outside Plant Technicians are required to indicate in Altice-Cablevision Software when they start and finish each job.

**ANSWER:**

Defendants deny the allegations in paragraph 106, except admit that Tech Track is a

workload management software system used to plan, issue, and access Outside Plant

Technicians' daily assignments and customer work orders.

**COMPLAINT ¶107:**

Plaintiffs are forced to work through their thirty-minute unpaid lunch break on an almost daily basis.  Rather than take the thirty-minute break, Plaintiffs often eat lunch on the go as they drive between jobs or back to the depot, or Plaintiffs simply skip lunch entirely.

**ANSWER:**

Defendants deny the allegations in paragraph 107.

**COMPLAINT ¶108:**

Supervisors and Altice-Cablevision dispatchers have access to Outside Plant Technicians' individual Altice-Cablevision Software platform and monitor their productivity

throughout the day by tracking their location, timeliness to each job, length of time to complete each job and determine which jobs may be likely to begin behind schedule.

**ANSWER:**

Defendants deny the allegations in paragraph 108, except aver that supervisors review

Outside Plant Technicians' Tech Track records as needed at various points during a given

workday.

**COMPLAINT ¶109:**

At some point during the Collective and/or Class Period(s), the Altice-Cablevision Software workflow application became available on an iPad, allowing OSPs to access the Software remotely.

**ANSWER:**

Defendants admit the allegations in paragraph 109.

**COMPLAINT ¶110:**

Initially, although the Software provided a list of daily jobs and multiple other "activities," the Software did not include a code or "activity" for a lunch break.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 110.

**COMPLAINT ¶111:**

Therefore, Plaintiffs could not electronically activate the lunch break to indicate whether they took the thirty-minute break.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 111.

**COMPLAINT ¶112:**

In or around 2016, after numerous complaints from OSPs, the Company created a code for lunch that allowed OSPs to register whether they had taken lunch.

**ANSWER:**

Defendants deny the allegations in paragraph 112, except aver that in 2016 a "lunch"

code was in place in Tech Track.

**COMPLAINT ¶113:**

Nonetheless, the Company at no time held a meeting, circulated a memo or otherwise informed OSPs how to utilize the Software's lunch activity or made clear to OSPs that they were required to take a full half-hour uninterrupted meal break.

**ANSWER:**

Defendants deny the allegations in paragraph 113.

**COMPLAINT ¶114:**

Furthermore, and by way of example only, on one occasion in or around summer 2016, Opt-in Plaintiff Howell was near completion of his shift when he was contacted by dispatch regarding an outage.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 114.

**COMPLAINT ¶115:**

Opt-in Plaintiff Howell informed dispatch that he had not yet taken lunch and was extremely hungry, and asked dispatch to assign the outage to someone else.  Dispatch connected him to his supervisor, who told Opt-in Plaintiff Howell that because it was an outage, he must go there immediately.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 115.

**COMPLAINT ¶116:**

Opt-in Plaintiff Howell took his lunch and then headed to the outage.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 116.

**COMPLAINT ¶117:**

The following day, Kent Strahan called Opt-in Plaintiff Howell into his office and reprimanded him for "showing a lack of commitment" by taking his lunch and informing him that "outages take precedent over everything."  Mr. Strahan went on to reprimand Opt-in Plaintiff Howell that when there is an outage, he must skip lunch and could "take an hour the next shift."

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 117.

**Defendants' Unlawful Timekeeping Policy**

**COMPLAINT ¶118:**

The Altice-Cablevision Software monitors Technicians' schedules on a daily basis, and is used by supervisors and upper management to manage Technicians' schedules, efficiency and productivity.

**ANSWER:**

Defendants admit the allegations in paragraph 118.

**COMPLAINT ¶119:**

The Altice-Cablevision Software uses a minute-by-minute timer to record when a Tech has arrived at their job, when they begin working, and when they complete a job.

**ANSWER:**

Defendants deny the allegations in paragraph 119.

**COMPLAINT ¶120:**

The Altice-Cablevision Software also allows, and in some instances, requires, the Technicians to record comments regarding why an activity took longer or shorter, or why the activity could not be completed.

**ANSWER:**

Defendants admit that the Altice-Cablevision Software allows Technicians to record

comments, and otherwise deny the allegations in paragraph 120.

**COMPLAINT ¶121:**

Unlike other similar software, the Altice-Cablevision Software for OSPs does not allow
for lunch to be "cancelled" – instead, if lunch is not activated on the Software, the activity
simply moves to the bottom of the queue for the day.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 121.

**COMPLAINT ¶122:**

By way of example only, prior to the creation of the "Lunch" activity in 2016 Opt-in
Plaintiff Jamal Howell would activate an activity called "Special Event" to record the rare
occasions when he was able to take a bona fide lunch break.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 122.

**COMPLAINT ¶123:**

More commonly – approximately every day from 2013 through 2016 – Opt-in Plaintiff
Howell worked through his lunch.  When Opt-in Plaintiff Howell worked through his lunch prior
to 2016 he was unable to record such worked lunch anywhere on the Altice-Cablevision
Software.

**ANSWER:**

Defendants deny the allegations in paragraph 123.

**COMPLAINT ¶124:**

After 2016 when Opt-in Plaintiff Howell worked through his lunch he was similarly
unable to record such worked lunch anywhere on the Altice-Cablevision Software.

42886004v.2

**ANSWER:**

Defendants deny the allegations in paragraph 124.

**COMPLAINT ¶125:**

Despite monitoring OSPs' activities in real time, the Company did not and does not have a policy in place to prompt or remind OSPs to take their lunch if they have not done so.

**ANSWER:**

Defendants deny the allegations in paragraph 125.

**COMPLAINT ¶126:**

Using the Altice-Cablevision Software, Defendants keep meticulous records of the Technicians' whereabouts, productivity and efficiency throughout the day.

**ANSWER:**

Defendants deny the allegations in paragraph 126.

**COMPLAINT ¶127:**

Defendants also receive written comments, and some instances (*i.e.* cancelled activities) actually required such comments, from the Technicians through the Altice-Cablevision Software.

**ANSWER:**

Defendants deny the allegations in paragraph 127, except aver that Outside Plant

Technicians are able to enter comments in the Altice-Cablevision Software.

**COMPLAINT ¶128:**

Despite the Altice-Cablevision Software being the most accurate real-time indicator of time worked by Plaintiffs, Defendants nonetheless choose to ignore such for payroll purposes.

**ANSWER:**

Defendants deny the allegations in paragraph 128.

**COMPLAINT ¶129:**

Rather, according to Altice-Cablevision policy applicable to the entire Putative Collective and Class, both before and after Altice-Cablevision implemented this software, Defendants track Outside Plant Technicians' working time ***solely*** via paper sign in/out time logs ("sign in/out sheet").

**ANSWER:**

Defendants deny the allegations in paragraph 129.

**COMPLAINT ¶130:**

At the end of every shift, Plaintiffs are required to manually record their start and end time on a weekly sign in/out sheet maintained by their supervisor.

**ANSWER:**

Defendants state that the allegations of paragraph 130 are too broad to permit an accurate response applicable to all Outside Plant Technicians over the entire relevant time period and therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶131:**

Each sign in/out sheet has a row for each Outside Plant Technician assigned to the supervisor's team, as well as a column for each day of the week.

**ANSWER:**

Defendants state that the allegations of paragraph 131 are too broad to permit an accurate response applicable to all Outside Plant Technicians over the entire relevant time period and therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶132:**

The sign in/out sheets do not have a space for Plaintiffs to record when they started and stopped their lunch break or that they worked through a lunch break,[4] nor did Defendants, at any time during the Class or Collective Periods, inform Outside Plant Technicians that they could, or should, record a worked lunch on the sign in/out sheet.

**ANSWER:**

Defendants state that the allegations of paragraph 132, including footnote 3 thereto (which is reproduced herein as footnote 4), are too broad to permit an accurate response

---

[4] The sign in/out sheets were maintained by each supervisor, and vary slightly in layout between supervisors and over time. Nonetheless, each sign in/out time log has the same basic format, with columns divided into small squares for Techs to record the time they arrived at the depot at the beginning and ending of their shift.

applicable to all Outside Plant Technicians over the entire relevant time period and therefore lack

information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶133:**

Plaintiffs were never told by any supervisor or member of upper management that writing "no lunch," or otherwise recording a worked lunch on the sign in/out sheet, would result in payment for that time.

**ANSWER:**

Defendants deny the allegations in paragraph 133.

**COMPLAINT ¶134:**

Plaintiffs were never told that they could or should record a worked lunch in that fashion.

**ANSWER:**

Defendants deny the allegations in paragraph 134.

**COMPLAINT ¶135:**

In fact, Plaintiffs were never given ***any*** instruction of ***any kind*** regarding how they should record a worked lunch, either on paper or through the Altice-Cablevision Software.

**ANSWER:**

Defendants deny the allegations in paragraph 135.

**COMPLAINT ¶136:**

Plaintiffs' supervisors were responsible for inputting each Outside Plant Technician's time into Altice-Cablevision's payroll system.

**ANSWER:**

Defendants state that the allegations of paragraph 136 are too broad to permit an accurate

response applicable to all Outside Plant Technicians over the entire relevant time period and

therefore lack information and knowledge sufficient to admit or deny the allegations.

42886004v.2

**COMPLAINT ¶137:**

Throughout the entire Collective and Class Period(s), the payroll system has automatically deducted a thirty-minute meal break from each day worked, regardless of whether the employee actually took the meal break.

**ANSWER:**

Defendants deny the allegations in paragraph 137.

**COMPLAINT ¶138:**

Therefore, on days when Plaintiffs worked through their lunch break, the automatic thirty-minute meal break was deducted from their worked time and they were not paid for the time worked.

**ANSWER:**

Defendants deny the allegations in paragraph 138.

**COMPLAINT ¶139:**

Plaintiffs worked at least 30 minutes of unpaid overtime and up to 2.5 hours of unpaid overtime per week for worked lunch breaks.

**ANSWER:**

Defendants deny the allegations in paragraph 139.

**COMPLAINT ¶140:**

Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means, method or procedure, for recording actual hours worked during unpaid lunch breaks that was to be used for payroll purposes, despite Altice-Cablevision's own mandate that employees must record all hours worked.

**ANSWER:**

Defendants deny the allegations in paragraph 140.

**COMPLAINT ¶141:**

This failure violates the NYLL and FLSA requirements that employers maintain accurate payroll records.

**ANSWER:**

Defendants deny the allegations in paragraph 141.

**COMPLAINT ¶142:**

Even when Technicians attempted to record a missed lunch on the sign in/out sheets and/or Altice-Cablevision Software, and/or made verbal reports to their supervisors that they worked through lunch, they were not guaranteed payment for this time worked.

**ANSWER:**

Defendants deny the allegations in paragraph 142.

**COMPLAINT ¶143:**

This occurred despite the awareness and knowledge of Altice-Cablevision's management, and in direct violation of Defendants' own policy that "employees be paid for all overtime worked."

**ANSWER:**

Defendants deny the allegations in paragraph 143.

**COMPLAINT ¶144:**

As a result of Defendants' failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Putative Collective and Class with accurate and/or complete wage statements on each payday, including the total hours worked each week and the full amount of wages earned during the pay period.

**ANSWER:**

Defendants deny the allegations in paragraph 144.

**Defendants Have Knowledge of The Widespread "Off-The-Clock" Practices in the Brooklyn Facilities**

**COMPLAINT ¶145:**

Upon information and belief, Defendants' knowledge of the pervasive and widespread nature of the off-the-clock violations alleged herein is well documented, and implicates all levels of management, in willful violation of the FLSA and NYLL.

**ANSWER:**

Defendants deny the allegations in paragraph 145.

**COMPLAINT ¶146:**

Throughout the Collective and Class Periods, Plaintiffs frequently reported through Altice-Cablevision Software, constantly monitored by Plaintiffs' Supervisors, that they were forced to work through their unpaid lunch without compensation.

**ANSWER:**

Defendants deny the allegations in paragraph 146.

**COMPLAINT ¶147:**

Alternatively, Defendants knew or should have known that Plaintiffs were working through lunch based on the fact that, for example, Opt-in Plaintiff Howell created "Special Events" in his Tech Track software to record when he was able to take lunch – indicating that on all other occasions when he did not create a "Special Event" for his lunch that he was thus unable to take it.

**ANSWER:**

Defendants deny the allegations in paragraph 147.

**COMPLAINT ¶148:**

Furthermore, Defendants were well aware of unpredictable nature and extreme demands of Plaintiffs' jobs as Outside Plant Technicians, and had knowledge of the numerous daily events in an OSP's schedule that made it impossible to take lunch (*e.g.*, because a single job took all day, because of an outage, or because of a high volume of jobs assigned that day).

**ANSWER:**

Defendants deny the allegations in paragraph 148.

**COMPLAINT ¶149:**

Additionally, Plaintiffs complained about working through lunch to their Supervisors on numerous occasions throughout the Collective and Class Period(s).

**ANSWER:**

Defendants deny the allegations in paragraph 149.

**COMPLAINT ¶150:**

As such, Outside Plant Technicians' collective frustration with working through their unpaid lunch on an almost daily basis was well known by Altice-Cablevision management in the Brooklyn Facilities.

**ANSWER:**

Defendants deny the allegations in paragraph 150.

**COMPLAINT ¶151:**

Indeed, upon information and belief, working though lunch was a common subject of team meetings attended by Outside Plant Technicians and their supervisors.

**ANSWER:**

Defendants deny the allegations in paragraph 151.

**COMPLAINT ¶152:**

Over the course of four years, a large volume of often-repeated verbal complaints from Outside Plant Technicians to supervisors and management throughout Brooklyn regarding the same unlawful practice, and voluminous written records documenting the fact that Outside Plant Technicians were working through lunches without pay, Defendants knowingly failed to correct their illegal over time policies, and off-the-clock violations continue to this day.

**ANSWER:**

Defendants deny the allegations in paragraph 152.

**Defendants' Unlawful Calculation of Plaintiffs' Regular Rate of Pay in Determining Overtime Premiums**

**COMPLAINT ¶153:**

Plaintiffs and all members of the Putative Collective and Class were eligible for and received annual bonuses paid by Defendants.

**ANSWER:**

Defendants state that the allegations in paragraph 153 are too broad to permit an accurate

response applicable to all Outside Plant Technicians over the entire relevant time period, and

therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶154:**

All Altice-Cablevision Outside Plant Technicians in the Brooklyn Facilities were eligible for this bonus.

**ANSWER:**

Defendants state that the allegations in paragraph 154 are too broad to permit an accurate response applicable to all Outside Plant Technicians over the entire relevant time period, and therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶155:**

The bonuses were computed based on a predetermined and nondiscretionary formula that was dependent on the success of the facility as a whole.

**ANSWER:**

Defendants state that the allegations in paragraph 155 are too broad to permit an accurate response applicable to all Outside Plant Technicians over the entire relevant time period, and therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶156:**

The bonuses were thus awarded based on the success of the Defendant's employees as a group and not based on any particular Plaintiffs' personal productivity.

**ANSWER:**

Defendants deny the allegations in paragraph 156 are too broad to permit an accurate response applicable to all Outside Plant Technicians over the entire relevant time period, and therefore lack information and knowledge sufficient to admit or deny the allegations.

**COMPLAINT ¶157:**

The annual bonuses were awarded to employees to induce them to work more steadily, rapidly, and efficiently and are thus required to be included within the Plaintiffs' regular rate of pay.  Despite this, they were not included within the regular rate of pay for the purposes of calculating overtime wages at any point during the Collective and/or Class Period(s).

**ANSWER:**

Defendants deny the allegations in paragraph 157.

## FLSA COLLECTIVE ACTION ALLEGATIONS

**COMPLAINT ¶158:**

Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as though fully set forth herein.

**COMPLAINT ¶159:**

Defendants employed Plaintiffs during the Collective Period.

**ANSWER:**

Defendants deny the allegations in paragraph 159, except aver that Cablevision Systems New York City Corporation employed Plaintiffs during the alleged Collective Period.

**COMPLAINT ¶160:**

Defendants classified Plaintiffs and Members of the Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

**ANSWER:**

Defendants admit that Plaintiffs and other Outside Plant Technicians were classified as nonexempt for purposes of the FLSA and paid an hourly wage rather than a salary, and otherwise deny the allegations in paragraph 160.

**COMPLAINT ¶161:**

Upon information and belief, there are approximately more than 100 current and former Outside Plant Technicians who are similarly situated to Plaintiffs and who were denied overtime compensation.

**ANSWER:**

Defendants deny the allegations in paragraph 161.

42886004v.2

**COMPLAINT ¶162:**

The Lead Plaintiffs represent other Outside Plant Technicians, and are acting on behalf of Defendants' current and former Outside Plant Technicians' interests as well as their own interests in bringing this action.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 162.

**COMPLAINT ¶163:**

Defendants unlawfully required Plaintiffs and all individuals employed as Outside Plant Technicians to work through their unpaid half-hour meal breaks.

**ANSWER:**

Defendants deny the allegations in paragraph 163.

**COMPLAINT ¶164:**

At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

**ANSWER:**

Defendants deny the allegations in paragraph 164.

**COMPLAINT ¶165:**

Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

| | |
|---|---|
| **Collective Class:** | All individuals employed by Defendants as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn, New York facilities at any point during the Collective Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week and/or the applicable federal statutory minimum wage for hours worked under 40 in a workweek during the Collective Period based on the practices alleged herein. |

**ANSWER:**

Defendants admit that Plaintiffs seek to bring this action under the FLSA but deny that

they violated the FLSA or that certification of any FLSA collective is appropriate and otherwise

deny the allegations in paragraph 165.

**COMPLAINT ¶166:**

Specifically, Plaintiffs' Collective Class is further defined as involving (i) claims for
unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate
of pay" for the purposes of determining overtime pay entitlement; and (ii) claims for unpaid
overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work
"off the clock" and without compensation during unpaid meal breaks which they knowingly
suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations
which resulted in unpaid wages.

**ANSWER:**

Defendants admit that Plaintiffs seek to bring this action under the FLSA but deny that

they violated the FLSA or that certification of any FLSA collective is appropriate and otherwise

deny the allegations in paragraph 166.

**COMPLAINT ¶167:**

As such, the Named Plaintiffs and the Collective suffered damages for unpaid earned
overtime wages under the FLSA in each of the weeks they worked during the Collective Period.

**ANSWER:**

Defendants deny the allegations in paragraph 167.

**COMPLAINT ¶168:**

Defendants were aware or should have been aware that the law required it to pay non-
exempt employees, including Plaintiffs and the Collective, an overtime premium of 1 and $^1/_2$
times their regular rate of pay for all work-hours Defendants suffered or permitted them to work
in excess of 40 per workweek.

**ANSWER:**

Defendants admit that the FLSA requires employers to pay employees an overtime

premium for all work employees perform in excess of 40 hours per week but deny that they

violated the FLSA or that certification of any FLSA collective is appropriate.

**COMPLAINT ¶169:**

Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has
caused significant damages to Plaintiffs and the Collective.

**ANSWER:**

Defendants deny the allegations in paragraph 169.

**COMPLAINT ¶170:**

Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and
the Collective, and as such, notice should be sent to the Collective.

**ANSWER:**

Defendants deny the allegations in paragraph 170.

**COMPLAINT ¶171:**

There are numerous similarly situated current and former employees of Defendants who
were subject to the aforementioned policies in violation of the FLSA who would benefit from the
issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the
present lawsuit.

**ANSWER:**

Defendants deny the allegations in paragraph 171.

**COMPLAINT ¶172:**

Those similarly situated employees are known to the Defendants and are readily
identifiable through Defendants' records.

**ANSWER:**

Defendants deny the allegations in paragraph 172.

## FEDERAL RULES OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

**COMPLAINT ¶173:**

Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as

though fully set forth herein.

**COMPLAINT ¶174:**

Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed Class:**     All individuals employed by Defendants during the Class Period as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn, New York Facilities, who earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week and/or the New York minimum wage for hours worked under 40 in a workweek during the Class Period, based on the practices alleged herein.

**ANSWER:**

Defendants admit that Plaintiffs seek to bring this action under the NYLL and Federal

Rule of Civil Procedure ("FRCP") 23 but deny that they violated the NYLL or that certification

of any FRCP 23 class is appropriate and otherwise deny the allegations in paragraph 174.

**COMPLAINT ¶175:**

Specifically, Plaintiffs' Class is further defined as involving:  (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of knowingly suffering and permitting the Class to work "off the clock" and without compensation during unpaid meal breaks, (iii) claims for unpaid overtime and minimum wage compensation for Defendants' commonly enforced timekeeping and recordkeeping practices which did not allow the Class to record their time accurately and resulted in unpaid wages; and (iv) claims for wage statement violations for Defendants' failure to provide the Class with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period.

**ANSWER:**

Defendants admit that Plaintiffs seek to bring this action under NYLL and FRCP 23 but

deny that they violated NYLL or that certification of any FRCP 23 class is appropriate and

otherwise deny the allegations in paragraph 175.

**COMPLAINT ¶176:**

Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay
Plaintiffs and the Putative Class at least one and one-half times the New York state minimum
wage for all hours worked over 40 during the class period pursuant to the same illegal practices
and policies alleged above.

**ANSWER:**

Defendants deny the allegations in paragraph 176.

**COMPLAINT ¶177:**

Numerosity:  The Proposed Class is so numerous that joinder of all members is
impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class
Period, Defendants employed over 100 individuals who satisfy the definition of the Proposed
Class.

**ANSWER:**

Defendants deny the allegations in paragraph 177.

**COMPLAINT ¶178:**

Typicality:  Plaintiffs are members of the class they seek to represent, and their claims are
typical of the claims of the Putative Class.  The Plaintiffs are informed and believe, and on that
basis allege, that, like other Outside Plant Technicians, Class members were subjected to
Defendants' policies, practices, programs, procedures, protocols and plans alleged herein
concerning the failure to pay proper wages, failure to keep adequate records and failure to
furnish accurate wage statements.

**ANSWER:**

Defendants deny the allegations in paragraph 178.

**COMPLAINT ¶179:**

Plaintiffs' interests are co-extensive with those of the Putative Class that they seek to
represent.  Plaintiffs are willing and able to fairly represent the Putative Class and to vigorously
pursue their similar individual claims in this action.

**ANSWER:**

Defendants deny the allegations in paragraph 179.

**COMPLAINT ¶180:**

The relief Plaintiffs seek for the unlawful policies and practices complained of herein is also typical of the relief which is sought on behalf of the Putative Class.

**ANSWER:**

Defendants deny the allegations in paragraph 180.

**COMPLAINT ¶181:**

Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and there will be no difficulty in administering this action as a class action.

**ANSWER:**

Defendants deny the allegations in paragraph 181.

**COMPLAINT ¶182:**

Adequacy:  Plaintiffs will fairly and adequately protect the interests of the Putative Class, and have retained counsel who are qualified and experienced in complex labor and employment class and collective action litigation, who are able to meet the demands necessary to litigate a class action of this size and complexity.  The combined interests, experience and resources of Plaintiffs and counsel to litigate the individual and class claims at issue in this case satisfy the adequacy of representation requirement of FRCP 23(a)(4).

**ANSWER:**

Defendants deny the allegations in paragraph 182.

**COMPLAINT ¶183:**

The claims of the Putative Class interrelate such that the interests of the members will be fairly and adequately protected in their absence.

**ANSWER:**

Defendants deny the allegations in paragraph 183.

42886004v.2

## COMPLAINT ¶184:

Commonality:  Common questions of law and fact exist to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

    a.    Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

    b.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

    c.    Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Putative Class in violation of the NYLL;

    d.    Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

    e.    Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Putative Class;

    f.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

    g.    Whether Defendants employed Plaintiffs and the Putative Class within the meaning of New York law;

    h.    The proper measure of damages sustained by the Putative Class; and

    i.    Whether Defendants' violations of the NYLL and/or its regulations were "willful."

## ANSWER:

Defendants deny the allegations in paragraph 184.

## COMPLAINT ¶185:

These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

## ANSWER:

Defendants deny the allegations in paragraph 185.

**COMPLAINT ¶186:**

The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

**ANSWER:**

Defendants deny the allegations in paragraph 186.

**COMPLAINT ¶187:**

Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

**ANSWER:**

Defendants deny the allegations in paragraph 187.

**COMPLAINT ¶188:**

Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3)because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Putative Class the wages to which they are entitled. The damages suffered by the individual Putative Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**ANSWER:**

Defendants deny the allegations in paragraph 188.

**COMPLAINT ¶189:**

Plaintiffs intend to send notice to all members of the Putative Class to the extent required by Rule 23.  The names and addresses of the Putative Class are available from Defendants.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in

paragraph 189.

**COMPLAINT ¶190:**

During the Class Period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful minimum wage under either the NYLL or the FLSA and more than 1 hour of overtime-eligible work during the class period for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

**ANSWER:**

Defendants deny the allegations in paragraph 190.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation in Violation of the FLSA)**

**COMPLAINT ¶191:**

Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as though fully set forth herein.

**COMPLAINT ¶192:**

Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

**ANSWER:**

Defendants lack information and knowledge sufficient to admit or deny the allegations in paragraph 192.

**COMPLAINT ¶193:**

At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of 29 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs and the Putative Collective.

42886004v.2

**ANSWER:**

Defendants deny the allegations in paragraph 193 except as expressly admitted in its

responses above.

**COMPLAINT ¶194:**

At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

**ANSWER:**

Defendants deny the allegations in paragraph 194 except as expressly admitted in its

responses above.

**COMPLAINT ¶195:**

The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per work week.

**ANSWER:**

Paragraph 195 purports to summarize the FLSA, to which no response is required.

**COMPLAINT ¶196:**

During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the Putative Collective worked in excess of forty hours per workweek without lawful overtime compensation.

**ANSWER:**

Defendants deny the allegations in paragraph 196.

**COMPLAINT ¶197:**

Despite the hours worked by Plaintiffs and the Putative Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay proper overtime compensation.

**ANSWER:**

Defendants deny the allegations in paragraph 197.

42886004v.2

**COMPLAINT ¶198:**

Based on the policies and practices articulated above, Plaintiffs were uniformly denied FLSA mandated overtime premiums.

**ANSWER:**

Defendants deny the allegations in paragraph 198.

**COMPLAINT ¶199:**

By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Putative Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

**ANSWER:**

Defendants deny the allegations in paragraph 199.

**COMPLAINT ¶200:**

Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Putative Collective.

**ANSWER:**

Defendants deny the allegations in paragraph 200.

**COMPLAINT ¶201:**

The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C §§ 216(b) and 255(a).

**ANSWER:**

Defendants deny the allegations in paragraph 201.

**COMPLAINT ¶202:**

Because Defendants' violations of the FLSA were willful, a three-year statute of limitation applies.  29 U.S.C. § 255.

**ANSWER:**

Defendants deny the allegations in paragraph 202.

**COMPLAINT ¶203:**

Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**ANSWER:**

Defendants deny that Plaintiffs are entitled to an award of attorneys' fees or costs and

otherwise deny the allegations in paragraph 203.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Failure to Pay Minimum Wage Compensation in Violation of the FLSA)**

**COMPLAINT ¶204:**

Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as

though fully set forth herein.

**COMPLAINT ¶205:**

At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

**ANSWER:**

Defendants admit the allegations in paragraph 205 but deny engaging in any violations of

the FLSA.

**COMPLAINT ¶206:**

The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

**ANSWER:**

Paragraph 206 purports to summarize the FLSA, to which no response is required.

**COMPLAINT ¶207:**

Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

**ANSWER:**

Defendants admit the allegations in paragraph 207 but deny engaging in any violations of

the FLSA.

**COMPLAINT ¶208:**

Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Plaintiffs and other similarly situated employees a lawful minimum wage for all hours worked.

**ANSWER:**

Defendants deny the allegations in paragraph 208.

**COMPLAINT ¶209:**

Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations.  None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees.

**ANSWER:**

Defendants admit the allegations in paragraph 209 but deny engaging in any violations of

the FLSA.

**COMPLAINT ¶210:**

Plaintiffs and all similarly situated employees are victims of a uniform and employer-based compensation policy.  Upon information and belief, this uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Outside Plant Technicians in Defendants' Brooklyn Facilities.

**ANSWER:**

Defendants deny the allegations in paragraph 210.

42886004v.2

**COMPLAINT ¶211:**

Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees, in addition to payment of back minimum wages, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages described pursuant to 29 U.S.C. § 216(b).

**ANSWER:**

Defendants deny the allegations in paragraph 211.

**COMPLAINT ¶212:**

Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

**ANSWER:**

Defendants deny the allegations in paragraph 212.

**COMPLAINT ¶213:**

Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**ANSWER:**

Defendants deny that Plaintiffs are entitled to an award of attorneys' fees or costs and

otherwise deny the allegations in paragraph 213.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

**COMPLAINT ¶214:**

Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as

though fully set forth herein.

42886004v.2

**COMPLAINT ¶215:**

At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

**ANSWER:**

Defendants admit the allegations in paragraph 215 but deny engaging in any violations of

the NYLL.

**COMPLAINT ¶216:**

The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

**ANSWER:**

Defendants admit the allegations in paragraph 216 but deny engaging in any violations of

the NYLL.

**COMPLAINT ¶217:**

Defendants have failed to pay Plaintiffs and the Putative Class the overtime wages to which they are entitled under the NYLL.

**ANSWER:**

Defendants deny the allegations in paragraph 217.

**COMPLAINT ¶218:**

By Defendants' failure to pay Plaintiffs and the Putative Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

**ANSWER:**

Defendants deny the allegations in paragraph 218.

**COMPLAINT ¶219:**

Furthermore, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

**ANSWER:**

Defendants deny the allegations in paragraph 219.

**COMPLAINT ¶220:**

Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**ANSWER:**

Defendants deny the allegations in paragraph 220.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Failure to Pay Lawful Minimum Wages and "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)**

**COMPLAINT ¶221:**

Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as though fully set forth herein.

**COMPLAINT ¶222:**

The minimum wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

**ANSWER:**

Defendants admit the allegations in paragraph 222 but deny engaging in any violations of the NYLL.

**COMPLAINT ¶223:**

Defendants have failed to pay Plaintiffs and the Putative Class the minimum wages to which they were entitled under the NYLL.

**ANSWER:**

Defendants deny the allegations in paragraph 223.

42886004v.2

**COMPLAINT ¶224:**

By Defendants' failure to pay Plaintiffs and the Class Members minimum wages, they have willfully violated the NYLL Article 19, §§ 652 et seq., and the supporting New York State Department of Labor regulations.

**ANSWER:**

Defendants deny the allegations in paragraph 224.

**COMPLAINT ¶225:**

Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**ANSWER:**

Defendants deny the allegations in paragraph 225.

**COMPLAINT ¶226:**

Furthermore, Defendants have failed to pay Plaintiffs and the Putative Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants for all hours worked in a workweek.

**ANSWER:**

Defendants deny the allegations in paragraph 226.

**COMPLAINT ¶227:**

Defendants' failure to pay these wages – known as "gap time" wages – is prohibited by NYLL Section 193 as an unauthorized deduction from wages.

**ANSWER:**

Paragraph 227 contains a legal conclusion to which no response is required.  To the

extent a response is required, Defendants deny the allegations.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

**COMPLAINT ¶228:**

Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**

Defendants repeat and re-allege their answers and responses to the previous paragraphs as though fully set forth herein.

**COMPLAINT ¶229:**

The recordkeeping provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

**ANSWER:**

Defendants admit the allegations in paragraph 229 but deny engaging in any violations of the NYLL.

**COMPLAINT ¶230:**

Defendants did not provide Plaintiffs and the Putative Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

**ANSWER:**

Defendants deny the allegations in paragraph 230.

**COMPLAINT ¶231:**

NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information.

**ANSWER:**

Paragraph 231 contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

**COMPLAINT ¶232:**

As a result of Defendants' unlawful conduct, Plaintiffs and the Putative Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by NYLL § 663.

**ANSWER:**

Paragraph 232 contains a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the Putative Collective and Putative

Class, respectfully requests that this Court:

A.      Declare that this action may proceed as a collective action pursuant to 29 U.S.C. 216;

B.      Declare that this action may proceed as a class action pursuant to Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure and/or Section 901 of the New York Civil Practice Law and Rules;

C.      Designate Plaintiffs' counsel and Plaintiffs Patrick Schiano, William Gilbert Garvin and Jurtreau Villegas as class counsel and class representatives, respectively.

D.      Declare that Defendants have violated the provisions of the Fair Labor Standards Act as to Plaintiffs and the Putative Collective;

E.      Declare that Defendants have violated the provisions of the New York Labor Law as to Plaintiffs and the Putative Class;

F.      Declare that Defendants' violations as described above are willful;

G.      Award Plaintiffs and the Putative Collective and Class the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

H.      Award reasonable attorneys' fees and costs pursuant to the FLSA, NYLL and/or other applicable law;

I.      Enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and NYLL; and

J.      Grant Plaintiffs and the Putative Collective and Class such other and further relief, in law or equity, as this Court may deem appropriate and just.

## ANSWER:

Defendants deny that Plaintiffs are entitled to the relief set forth in their Prayer for Relief

and each sub-paragraph thereof, either individually or on a class, collective, or other

representative basis.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

## ANSWER:

Defendants deny the Plaintiffs' right to a trial by jury on all issues, and specifically object to the extent that the Plaintiffs, or any of them, are not entitled to a trial by jury on any claims for equitable relief and/or on any other issues as to which a jury trial is not permitted as of right.

## OTHER DEFENSES

Defendants assert the following additional defenses without assuming any burden of production or persuasion that they would not otherwise bear.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claims for relief are or may be barred, in whole or in part, by the equitable doctrines of waiver, estoppel, and/or unclean hands, including where Plaintiffs and/or the individuals they seek to represent did not record their time properly, accurately, and/or completely.

## THIRD DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred to the extent they were not filed within the applicable statutes of limitations, including under 29 U.S.C. § 255(a) and NYLL § 198.

## FOURTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred, in whole or in part, to the extent the acts or omissions complained of in the Complaint were

taken in good faith, in conformity with, and/or in reliance on a written administrative regulation, order, ruling, approval, or interpretation of the United States Department of Labor, and/or an administrative practice or enforcement policy of such agency.

## FIFTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred to the extent the time periods for which they are claiming entitlement to compensation is not compensable pursuant to the provisions of the Portal-to-Portal Act of 1947.

## SIXTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred to the extent the time periods for which they are claiming entitlement to compensation fall within the *de minimis* exception to the applicable laws.

## SEVENTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred to the extent covered by a prior compromise or release of claims.

## EIGHTH DEFENSE

To the extent that Plaintiffs, or the individuals they seek to represent, failed to inform Defendants of any alleged inaccuracies in their time or meal break records, those individuals ratified the conduct of which Plaintiffs now complain.

## NINTH DEFENSE

ALTICE TECHNICAL SERVICES US CORP., ALTICE USA, INC., CSC HOLDINGS, LLC, and CABLEVISION SYSTEMS CORPORATION are not proper Defendants as they are not and were never the employer of any of the Plaintiffs or the members of the putative class or collective.

## TENTH DEFENSE

To the extent Plaintiffs, or the individuals they seek to represent, have no valid claims under the FLSA, Plaintiffs' state law claims should be dismissed for lack of supplemental jurisdiction.

## ELEVENTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred, in whole or in part, because Plaintiffs have suffered no damages, have failed to mitigate their damages, and/or are barred from recovering damages by after-acquired evidence.

## TWELFTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred, in whole or in part, as to hours allegedly worked to which Defendants lacked actual or constructive knowledge and did not permit or suffer them to work.

## THIRTEENTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred, in whole or in part, because Defendants did not willfully and with intent deprive Plaintiffs of any wages or pay to which Plaintiffs were entitled under the FLSA or New York State law.

## FOURTEENTH DEFENSE

The claims of Plaintiffs and other members of the putative class or collective are barred, in whole or in part, because the relief sought by Plaintiffs is improper, inappropriate and/or otherwise not available under the law upon which their claims rest including, but not limited to, that there is no basis for liquated damages as Defendants have acted in good faith as reasonably prudent entities would have acted under the circumstances and in reasonable belief of compliance with the applicable law.

## FIFTEENTH DEFENSE

The FLSA claims of Plaintiffs and other members of the putative class or collective are barred to the extent that Plaintiffs seek compensation for hours worked at or below 40 hours per week.

## SIXTEENTH DEFENSE

The damages of Plaintiffs and other members of the putative class or collective must be reduced by the amount of any premium/bonus payments made to Plaintiffs, including but not limited to bonus pay, incentive pay and/or overtime pay.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert such other additional defenses that may become known through discovery.

WHEREFORE, Defendants respectfully request that this Court issue judgment:

(1)     Dismissing the Complaint, and Plaintiffs' claims therein, with prejudice and in their entirety;

(2)     Denying collective action or class action status;

(3)     Denying each and every request for relief of the Complaint;

(4)     Against Plaintiffs and in favor of Defendants on every count;

(5)     Awarding Defendants their costs, including reasonable attorneys' fees, and expenses, in the amount and manner permitted by applicable law; and

(6)     Granting Defendants such other and further relief as the Court deems just and proper.

42886004v.2

Dated: New York, New York
       December 4, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By: s/ *Robert S. Whitman*
    Robert S. Whitman, Esq.
    Joshua D. Seidman, Esq.
    Needhy Shah, Esq.
    rwhitman@seyfarth.com
    jseidman@seyfarth.com
    neshah@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

*Attorneys for Defendants*
Cablevision Systems New York City
Corporation, Cablevision Systems Corporation,
CSC Holdings, LLC, Altice USA, Inc., and
Altice Technical Services US Corp.

42886004v.2