**Exhibit 1_Settlement Agreement**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JURTREAU VILLEGAS, PATRICK SCHIANO
and WILLIAM GILBERT GARVIN, individually
and on behalf of all others similarly situated,

               Plaintiffs,

    -against-

CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION, CABLEVISION SYSTEMS
CORPORATION, CSC HOLDINGS, LLC,
ALTICE USA, INC., and ALTICE TECHNICAL
SERVICES US CORP.,

               Defendants.

-----------------------------------------------------------------

Case No.: 17-cv-05824-DLI-VMS

## SETTLEMENT AGREEMENT

      This Settlement Agreement is made and entered into by the Parties, as defined below, arising out of the above-captioned lawsuit.

## SECTION 1 – DEFINITIONS AND BACKGROUND

### A.    Definitions

**1.1.**    The term "Administrator" shall refer to RG/2 Claims Administration LLC.

**1.2.**    The term "Class Counsel" or "Plaintiffs' Counsel" means The Law Office of Christopher Q. Davis, PLLC.

**1.3.**    The term "Class Period" shall refer to (a) with respect to claims under the Fair Labor Standards Act ("FLSA"), the time period beginning three years before the filing with the Court of the Named Plaintiffs' or Opt-In Plaintiffs' respective consents to join the Litigation and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the Preliminary Approval motion, whichever is shorter; and (b) with respect to claims under the New York Labor Law ("NYLL"), the time period beginning on October 4, 2011 and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the Preliminary Approval motion, whichever is shorter.

**1.4.**    The term "Complaint" shall refer to the Class and Collective Action Complaint for Damages, Restitution and Injunctive Relief filed by Class Counsel with the Court in the Litigation on October 4, 2017.  The term "Complaint" shall include the Amended Complaint, filed pursuant to Section 2.4 below.

**1.5.**    The term "Counsel" shall refer to Class Counsel and Defendants' Counsel, collectively.

**1.6.**     The term "Court" shall refer to the United States District Court for the Eastern District of New York.

**1.7.**     The term "Defendants" shall refer collectively to Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, Altice USA, Inc., and Altice Technical Services US Corp.

**1.8.**     The term "Defendants' Counsel" shall refer to Seyfarth Shaw LLP.

**1.9.**     The term "Effective Date" shall refer to the later of: (i) if an appeal has been filed from the order of the Court granting Final Approval, the date on which the appeal and any subsequent proceedings are fully and finally disposed of; or (ii) if no appeal is filed, thirty-five (35) calendar days following the date of Final Approval.

**1.10.**     The term "Fairness Hearing" shall refer to a hearing to be scheduled by the Court to consider whether the terms of this Settlement Agreement are fair, reasonable and adequate.

**1.11.**     The term "Final Approval" shall refer to the issuance of an order by the Court granting final approval to this Settlement Agreement, holding that it is a fair, reasonable and adequate settlement of the claims that were asserted or could have been asserted in the Litigation, and directing a final judgment to that effect, and dismissing the Litigation with prejudice.

**1.12.**     The term "FLSA" shall refer to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* and all regulations issued pursuant thereto.

**1.13.**     The term "Gross Settlement Amount" shall refer to Eight Hundred Thousand Dollars and Zero Cents ($800,000.00). Under no circumstances shall any Defendants be obligated to make any payments pursuant to this Settlement Agreement (other than payments to their own respective counsel) that would increase the Gross Settlement Amount above this amount, including without limitation payments for employer-side tax obligations.

**1.14.**     The term "Litigation" shall refer to the civil action filed with the Court on or around October 4, 2017 by Class Counsel entitled *Villegas, et al. v. Cablevision Systems New York City Corporation, et al.*, 17-cv-05824 (DLI) (VMS) (E.D.N.Y.).

**1.15.**     The term "Named Plaintiffs" shall refer to Jurtreau Villegas, Patrick Schiano, and William Gilbert Garvin.

**1.16.**     The term "Net Settlement Fund" shall refer to the Gross Settlement Amount less (a) attorneys' fees and costs awarded to Class Counsel by the Court pursuant to Section 3.2; (b) Service Payments pursuant to Section 3.3 as approved by the Court; and (c) employer-side payroll tax obligations pursuant to Section 3.5.

**1.17.**     The term "NYLL" shall refer to the New York Labor Law and all regulations and wage orders issued pursuant thereto.

**1.18.**     The term "Notice" shall refer to the form attached as Exhibit D hereto, to be provided respectively to each Plaintiff.

**1.19.** The term "Notice Response Deadline" shall refer to a date sixty (60) calendar days from the Administrator's mailing of the Notice (as indicated by the postmark thereupon) in accordance with Section 2.7.A. herein. If a Notice is returned undeliverable, the Notice Response Deadline for such Class Member shall be sixty (60) calendar days from the date of the second mailing, but no more than ninety (90) calendar days from first mailing.

**1.20.** The term "Opt-In Plaintiffs" shall refer to Luis Arzu, Ian Blackman, Errol Campbell, Darryl De Freitas, Dexter Charter, Kester Charter, Rohan Drysdale, Wayne Fairclough, Felipe Fong, Kevin Halls, Paul Hickson, Jamal Howell, Earl Jonas, Jorge Minguela, Paul Murray, Bernard Paez, Dion Pemberton, Dwayne Scarlett, Guy O. St. Jean, Jermaine Titus, and Juan Valdez.

**1.21.** The term "Opt-Out Statement" shall refer to the form set forth as Exhibit E to this Settlement Agreement by which Other Class Members, as defined below, may request exclusion from the provisions of this Settlement Agreement.

**1.22.** The term "Other Class Members" shall refer to all persons, other than the Named Plaintiffs and Opt-In Plaintiffs, who, for any duration of time during the Class Period, were employed by any of the Defendants as an Outside Plant Technician and were assigned to a depot in Brooklyn or the Bronx.

**1.23.** The term "Parties" shall refer to Plaintiffs and Defendants collectively.

**1.24.** The term "Participating Class Members" shall refer to all Named Plaintiffs, Opt-in Plaintiffs, and any Other Class Member that does not file an Opt-Out Statement by the Notice Response Deadline.

**1.25.** The term "Plaintiffs" shall refer to the Named Plaintiffs, Opt-In Plaintiffs and Other Class Members.

**1.26.** The term "Preliminary Approval" shall refer to the issuance of an order by the Court, substantially in the form attached as Exhibit C to this Settlement Agreement, holding preliminarily that it is a fair and reasonable settlement of the claims that were asserted or could have been asserted in the Litigation.

**1.27.** The term "Pro Rata Share" shall refer to an amount allocated to each Participating Class Member from the Net Settlement Fund. The Pro Rata Share shall be calculated as described in Paragraph 3.4.B. below.

**1.28.** The term "QSF" shall refer to a Qualified Settlement Fund to be created by the Administrator to distribute settlement funds to Participating Class Members and pay all other amounts contemplated by this Settlement Agreement.

**1.29.** The term "Released Parties" shall refer to Defendants, plus all of their respective past, present and future parents, subsidiaries, affiliates, predecessors, successors, directors, officers, members, employees, and anyone else acting for any of them.

**1.30.**    The term "Service Payments" shall refer to payments to William Gilbert Garvin and Dion Pemberton in recognition of their efforts on behalf of the Plaintiffs in the Litigation.  Service Payments shall not exceed $15,000.00 and shall be paid from the Gross Settlement Amount.

**1.31.**    The term "Settlement Agreement" shall refer to this Agreement entered into between Plaintiffs and Defendants.

**1.32.**    The term "Settlement Distribution Check" shall refer to a check issued by the Administrator to a Participating Class Member pursuant to Section 3 of this Settlement Agreement.

**1.33.**    The term "Weeks Worked" shall refer to those workweeks during the Class Period for which a Plaintiff received pay for actual work performed and shall not include workweeks during which a Plaintiff performed no work, even if the Plaintiff was paid for such workweeks.

## B.   Background

**1.34.**    In the Litigation, the Plaintiffs allege that Defendants violated the FLSA and the NYLL by expecting or requiring Plaintiffs to perform work "off the clock," primarily by working through their unpaid 30-minute lunch breaks and also by uncompensated pre-shift and post-shift activities.  Plaintiffs also allege that Defendants violated the NYLL by failing to provide Plaintiffs with accurate wage statements.

**1.35.**    Defendants deny the allegations of wrongdoing in the Litigation and specifically deny that Plaintiffs were denied payments to which they were entitled, including without limitation overtime pay, "gap pay," and other wages, and that Defendants failed to furnish accurate wage statements. Defendants, by entering into this Settlement Agreement, expressly deny any liability or wrongdoing toward any Plaintiffs.

**1.36.**    The Parties desire to fully and finally settle, resolve, and discharge any and all actual and potential claims and disputes that were asserted or could have been asserted by Plaintiffs in the Litigation. Accordingly, the Parties intend that this Settlement Agreement shall constitute a full and complete settlement and release of claims against Defendants pursuant to the terms described herein.

**1.37.**    This Settlement Agreement was reached after extensive private arms-length negotiations between Counsel, including two full days of mediation with the assistance of mediator Martin Scheinman, Esq. The Parties and Counsel believe that this Settlement Agreement provides a fair and reasonable settlement for all of the claims of the Plaintiffs.

**1.38.**    The terms of the Settlement Agreement are based on a thorough evaluation by Class Counsel of facts obtained through investigation and discovery. Class Counsel represent that they have conducted a thorough investigation into the facts of the Litigation and have diligently pursued an investigation of Plaintiffs' claims against Defendants. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Plaintiffs in light of all known facts and circumstances, including the defenses asserted by Defendants and the delay and uncertainty of future litigation, trials, and appeals.

## <u>SECTION 2 – SETTLEMENT APPROVAL</u>

**2.1.**   <u>Stay Of Litigation.</u> The Parties hereby agree to a stay of all discovery, deadlines, and other activity in or related to the Litigation other than in furtherance of this Settlement Agreement unless and until the Court enters an order rejecting the Settlement Agreement.

**2.2.**   <u>Mutual Full Cooperation.</u> As soon as practicable after execution of this Settlement Agreement, the Parties shall take all necessary steps to secure the Court's Final Approval of this Settlement Agreement and to effectuate all aspects of this Settlement Agreement. The Parties and Counsel agree to cooperate fully with each other to obtain approval of and to accomplish the terms of this Settlement Agreement.

**2.3.**   <u>Approval Procedure.</u>  The Settlement Agreement requires the occurrence of all of the following events:  (a) execution of the Settlement Agreement by the Parties; (b) submission of the Stipulation and Amended Complaint pursuant to Section 2.4.A.; (c) submission of the Settlement Agreement to the Court together with Plaintiffs' Unopposed Motion for Preliminary Approval; (d) entry of an Order by the Court granting Preliminary Approval of the Settlement; (e) Court approval of the method of distribution and the form and content of the Notice; (f) distribution of the Notice to Other Class Members as described in Section 2.7.A.; (g) submission to the Court of Plaintiffs' Unopposed Motion for Final Approval and Motion for Attorneys' Fees and Costs; (h) a Court order granting Final Approval; (i) occurrence of the Effective Date; (j) distribution of Settlement Distribution Checks within twenty-one (21) calendar days of the Effective Date; and (k) filing by Class Counsel of a written declaration by the Administrator that the Settlement Distribution Checks have been mailed to Plaintiffs within twenty-five (25) calendar days of the Effective Date.

**2.4.**   <u>Duties Of The Parties Before Preliminary Approval.</u>

      A.     Amendment of Complaint

           (1)     Together with a fully executed original of this Settlement Agreement, Class Counsel shall deliver to Defendants' Counsel a signed original of the Stipulation attached hereto as Exhibit A, providing for amendment of the Complaint in the Litigation as set forth in the Amended Complaint attached hereto as Exhibit B.

           (2)     Upon receipt of the documents described in Section 2.4.A., Defendants' Counsel shall countersign the Stipulation attached hereto as Exhibit A and return it to Class Counsel, who shall thereupon cause it to be filed with the Court in the Litigation.

      B.     No later than fifteen (15) calendar days after the filing described in Section 2.4.A(2), Class Counsel shall submit this Settlement Agreement to the Court as part of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement, for determination by the Court as to its fairness, adequacy, and reasonableness, and issuance of an order: (a) preliminarily approving this Settlement Agreement; (b) approving the form and content of the proposed

Notice; (c) directing the mailing of the Notice to the Plaintiffs; and (d) scheduling a Fairness Hearing.

C.     Class Counsel shall engage the Administrator prior to submitting their Motion for Preliminary Approval.

**2.5.**     <u>CAFA Notice.</u> No later than ten (10) business days after Plaintiffs submit their Motion for Preliminary Approval, Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**2.6.**     <u>Duties of the Parties Following Preliminary Approval.</u>

A.     No more than fifteen (15) business days after Preliminary Approval, Defendants shall provide the Administrator and Class Counsel with a class contact list, including names, postal addresses, and, if known, email addresses of the Plaintiffs as reflected in Defendants' personnel records. The class contact list will also include each Plaintiff's Weeks Worked broken down by total Weeks Worked in Brooklyn and total Weeks Worked the Bronx.  These records shall be confidential and shall not be used for any purpose other than effectuation of this Settlement Agreement.

B.     No later than fifteen (15) business days prior to the Fairness Hearing, or pursuant to a schedule set by the Court, Class Counsel shall file a Motion for Final Settlement Approval and a separate Motion for Attorneys' Fees and Costs.

**2.7.**     <u>Notices, Opt Outs and Objections.</u>

A.     <u>Notice to Plaintiffs.</u>

(1)     Within ten (10) calendar days of receiving the information described in Section 2.6.A., the Administrator shall mail the Court-approved Notice (Exhibit D) to the each Plaintiff (a) by First Class United States mail, postage prepaid, to his/her last known residential address as reflected in Defendants' personnel records, and (b) by email to each of the Plaintiff's last known personal email address, to the extent that personal email addresses are included in Defendants' personnel records.  Each Plaintiff will receive the Notice and an opportunity to object pursuant to Section 2.7.C. below; however, only Other Class Members may submit an Opt-Out Statement.

(2)     With respect to Notices sent by email, no follow-up or supplemental distribution shall be performed for any email message returned as undeliverable or as to which receipt or review by the Plaintiff is unconfirmed.  With respect to Notices sent by postal mail, the Administrator shall perform one skip trace to obtain the correct address of any Plaintiff for whom the Notice is returned by the U.S. Postal Service as undeliverable.  The Administrator shall notify Counsel of any such undeliverable post mail Notice.  The Administrator shall send one

remailing to those Plaintiffs whose first postal mailing is returned as undeliverable. The Administrator shall keep accurate records of the dates on which it sends Notices.

B.   Opt-Out by Other Class Members.

(1)   Other Class Members can choose to opt out of the settlement solely to the extent that this Settlement Agreement pertains to such Other Class Members' rights under the NYLL.

(2)   To opt out, an Other Class Member must send an Opt-Out Statement to the Administrator by first-class mail. To be effective, an Opt-Out Statement must be postmarked no later than the applicable Notice Response Deadline and must be signed. Opt-Out Statements that are not submitted on a timely basis shall be deemed null, void and ineffective. Other Class Members may withdraw their Opt-Out Statements at any time provided such withdrawal is in writing and received by the Administrator no less than 24 hours before the Fairness Hearing.

(3)   If an Other Class Member fails to opt out as set forth herein, or withdraws his/her opt out, he/she shall be deemed to be a Participating Class Member in this Settlement Agreement for purposes of the release of claims set forth in Section 4.B.

(4)   The Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall, within one (1) business day of receipt, serve copies of each such Opt-Out Statement on Counsel. Class Counsel shall file copies of each such Opt-Out Statement with the Clerk of the Court within one (1) business day of receipt from the Administrator. The Administrator shall retain the stamped originals of all such Opt-Out Statements, and originals of all envelopes accompanying them, in its files until such time as the Administrator is relieved of its duties and responsibilities under this Settlement Agreement. Within one (1) business day following the expiration of the Notice Response Deadline, the Administrator shall e-mail a final list of all Other Class Members who submitted an Opt-Out Statement to all Counsel.

C.   Objections.

(1)   A Participating Class Member can choose to object to this Settlement Agreement solely to the extent that this Settlement Agreement pertains to such individual's rights under the Settlement Agreement.

(2)   A Participating Class Member who wishes to so object must do so in writing. To be considered, a written objection must be mailed to the Administrator via First-Class United States Mail and be received by the Administrator no later than the applicable Notice Response Deadline. The written objection must be signed and must include the words, "I object to

the Settlement proposed in the *Villegas v. Cablevision* litigation as it relates to my rights under the Settlement Agreement," as well as all of the reasons for the objection. Any reasons not included in the written objection shall not be considered. The written objection must also include the name (and former names, if any), and current address for the Participating Class Member making the objection. The Administrator shall stamp and serve within one (1) business day of receipt, copies of each objection to Counsel as set forth in Section 2.7.B(4). Class Counsel shall file the date-stamped objections with the Court as part of Plaintiffs' Final Approval Motion.

(3)     A Participating Class Member who has submitted timely objections has the right to appear at the Fairness Hearing either in person or through counsel hired at his/her expense.  No Participating Class Member may present or support an objection at the Fairness Hearing unless he or she has filed a timely, valid objection that complies with all procedures provided in this section and the previous section.  No Participating Class Member may present or support an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

(4)     An Other Class Member who has submitted an Opt-Out Statement pursuant to Section 2.7.B of the Settlement Agreement may not submit objections to the Settlement Agreement.

(5)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## SECTION 3 – SETTLEMENT PAYMENTS

**3.1.**     The Gross Settlement Amount and Net Settlement Fund shall be used for the payment of the amounts set forth below.

**3.2.**     Attorneys' Fees And Costs. Class Counsel shall petition the Court for an award of attorneys' fees and costs as part of their Motion for Final Settlement Approval. Class Counsel agree that any award of attorneys' fees shall be twenty-five percent (25%) of the Gross Settlement Amount, i.e., two-hundred thousand dollars ($200,000).  Class Counsel further agrees that any award of costs shall not exceed $15,000.00.  Defendants shall not oppose any request for attorneys' fees or costs by Class Counsel meeting these conditions so long as the Court approves this Settlement Agreement in substantially the form in which it was submitted for approval. To the extent the Court awards a lesser amount in attorneys' fees or costs, this Settlement Agreement shall remain in full force and effect and be binding upon the Parties, with the amount of such reduction to be added to the Net Settlement Fund for distribution to Plaintiffs according to the procedures herein.

**3.3.**     Service Payments. No more than $15,000.00 shall be paid from the Gross Settlement Amount as Service Payments to William Gilbert Garvin and Dion Pemberton.  Defendants shall not oppose any request for Service Payments meeting this condition and shall not oppose Plaintiffs' recommended allocation of the Service Payments. The Service Awards are to be

allocated as follows: Named Plaintiff William Gilbert Garvin shall receive Ten Thousand dollars ($10,000.00); and Opt-in Plaintiff Dion Pemberton shall receive Five Thousand dollars ($5,000.00).  In the event the Court sets the amount of the Service Payments, then Mr. Garvin and Mr. Pemberton shall be bound by such a ruling.  In the event the Court denies approval of the Service Payments, or reduces the amount of the Service Payment to any individual, such individual(s) shall receive only the amount, if any, as the Court has approved, plus their Pro Rata Share pursuant to Section 3.4.

**3.4.**   Distribution of the Net Settlement Fund.

A.    Each Participating Class Member shall be entitled to a payment from the settlement in the amount of his/her Pro Rata Share.

B.    The Pro Rata Share shall be calculated as follows:

(1)    Each Plaintiff will be allotted 1.75 points for a Week Worked in a Brooklyn Depot and 1 point for any Week Worked in the Bronx Depot. The sum of each Plaintiff's total points is referred to herein as their "Individual Allotted Points."

(2)    The sum of all of the Participating Class Members' Individual Allotted Points combined is referred to herein as the "Total Points."

(3)    The Pro Rata Share for each Participating Class Member will then be calculated by dividing the Participating Class Member's Individual Allotted Points (as calculated in 3.4.B(1) above) by the Total Points (as calculated in 3.4.B(2) above) and multiplying the resulting fraction by the Net Settlement Amount.

C.    In the event any amount of the Net Settlement Fund is not paid to the Participating Class Members (whether because of delivery failures, failures by Participating Class Members to timely and properly present Settlement Distribution Checks for payment, or otherwise), such amount shall be refunded to Defendants.  Such refund payment shall be made by the Administrator on or around ninety (90) calendar days following the final deadline for cashing the Settlement Distribution Checks.

**3.5.**   Settlement Administration.

A.    The Administrator shall be responsible for administering the Settlement, including without limitation establishing the QSF, printing and mailing the Notice, calculating each Participating Class Member's Pro Rata Share, distributing the payments called for by this Settlement Agreement, withholding taxes from such payments, issuing IRS Forms W-2 and 1099 in connection with such payments, and paying all employer-side tax obligations arising out of such payments.

B.     The Administrator shall set up a "reverse positive pay system" in which banks send the Administrator images of the front and back of each check cashed by Plaintiffs before transferring funds to the bank where the check was cashed, so that the Administrator can determine whether any such checks have been modified or altered.

C.     The Administrator shall pay standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, from the QSF.

**3.6.**     No more than ten (10) business days after the Effective Date, Defendants shall transfer the Gross Settlement Amount to the QSF.  No more than twenty-one (21) calendar days after the Effective Date, the Administrator shall mail Settlement Distribution Checks to all Participating Class Members, mail and/or wire the attorneys' fees and costs to Class Counsel, and mail service awards to William Garvin and Dion Pemberton.

**3.7.**     Settlement Distribution Checks.

A.     Following the Effective Date, all Participating Class Members shall receive a Settlement Distribution Check containing their allocated portion of the Net Settlement Fund.

B.     The Settlement Distribution Checks issued to the Other Class Members shall contain a Consent to Join and Release of Claims that is substantively identical to the following:

---

**POSITIVE I.D. REQUIRED**

---

THIRD PARTY ENDORSEMENT PROHIBITED

ENDORSEMENT BY NAMED PAYEE IS REQUIRED, WITHOUT ANY ALTERATION OF THE FOLLOWING LANGUAGE

This instrument is void if not cashed before _____, 2018.

1.   CONSENT TO JOIN

I hereby consent to join the lawsuit captioned *Villegas v. Cablevision Systems New York City Corporation,* Civil Action No. 17-CV-5824 (DLI) (VMS) (E.D.N.Y.) ("*Villegas*"), as a party plaintiff for purposes of the claims asserted against the Defendants therein under the Fair Labor Standards Act.  I am or was employed by Cablevision Systems New York City Corporation, Altice Technical Services US Corporation, or other affiliated company, as an Outside Plant Technician assigned to a depot in Brooklyn, NY or Bronx, NY for some or all of the period between October 4, 2011 and **[Enter Date]** (the "Class Period").

2.   RELEASE OF CLAIMS

I accept this payment in full satisfaction of my portion of the settlement in *Villegas* as to the claims that were asserted in this case under the Fair Labor Standards Act, the New York Labor Law, and any other claims concerning hours worked or payment of wages during the Class Period. My endorsement or negotiation of this instrument constitutes full acceptance by me and my

successors and assigns of all the terms and conditions of
the Settlement Agreement in *Villegas*, as approved by
the Court, including but not limited to the Waiver,
Release, and Covenant Not to Sue included in the
Settlement Agreement and reproduced in the Notice.

[NAME OF PAYEE]

X_____

SIGNATURE OF PAYEE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE – RESERVED FOR FINANCIAL
INSTITUTION USE

C.  Each Participating Class Member shall have ninety (90) calendar days from the
check mailing date to endorse the Settlement Distribution Check issued to him/her
and present it for payment. Each Settlement Distribution Check will include a
notice clearly stating that he/she has 90 calendar days from the check mailing date
to endorse and present the Settlement Distribution Check for payment (the
"Acceptance Period").  If a Settlement Distribution Check is not presented for
payment during the Acceptance Period it will be voided.

D.  To be accepted for payment, the Settlement Distribution Check must be endorsed
by the Participating Class Member with no alteration to the language thereupon.
Any alteration of such language by a Participating Class Member shall render the
check null and void, and by making the alteration, the Participating Class Member
shall be deemed to have forfeited his/her right to receive a payment from the Net
Settlement Fund. Each Settlement Distribution Check will include a notice clearly
stating that any alterations to the language thereupon will result in forfeiture of
his/her right to receive payment from the Net Settlement Fund.

E.  If any Participating Class Member deposits a Settlement Distribution Check that
he or she has failed to properly endorse, or has altered the check, the
Administrator shall make best efforts to ensure that this check is not honored.

F.  If a Settlement Distribution Check is paid despite the Administrator's best efforts,
the Participating Class Member shall be deemed to have endorsed the check
properly and shall be bound by all waivers, releases and other provisions of this
Settlement Agreement, including without limitation the release of claims
applicable to such Participating Class Member.

G.  To the maximum extent permitted by law, a Participating Class Member shall be
bound by all provisions of this Settlement Agreement regardless of whether that
person has filed a claim, that person has properly or timely presented for payment
the check issued pursuant to this Settlement Agreement, or the check is honored.

**3.8.**   Tax Reporting.  All payments to the Plaintiffs under this Settlement Agreement shall be
allocated as 50% lost wages, less all applicable withholdings and deductions required by law,
which shall be reported as wage income on a IRS Form W-2 to be issued to Plaintiffs; and 50%
as non-wage income, which will be reported on IRS Form 1099, the former reflecting payments
in settlement of claims for unpaid straight time and overtime wages, and the latter reflecting
payments in settlement of claims for liquidated damages and pre-judgment interest as provided

11

by law.  Plaintiffs shall provide to the Administrator any tax-related documentation (such as an IRS W-4 and/or NY IT 2104) necessary to effectuate payments pursuant to this Agreement. Payments to Class Counsel with respect to attorneys' fees and costs shall be reported on a Form 1099 prepared and issued by the Administrator to Class Counsel.

**3.9.**   Tax Consequences.  The Plaintiffs and Class Counsel acknowledge and agree that Defendants have not made any representations regarding the tax consequences of any monies they may receive pursuant to this Settlement Agreement.  The Plaintiffs and Class Counsel expressly acknowledge and warrant that they shall each be responsible for all federal, state and local tax liabilities that may result from their respective payments described herein and hereby warrant that Defendants shall bear no responsibility for any such tax liabilities.  Plaintiffs and Class Counsel further agree and acknowledge that they shall indemnify Defendants for their respective shares of any possible federal, state or local tax liabilities resulting from such payments and that Plaintiffs and Class Counsel shall reimburse any taxes, interest and/or penalties assessed against Defendants for any such tax liabilities caused by such payments. Plaintiffs and Class Counsel shall each only be responsible for reimbursement of any taxes, interest and/or penalties assessed against Defendants for the specific payments that they received hereunder.  Notwithstanding the foregoing, Defendants acknowledge that this duty to indemnify does not apply to any employer-related taxes paid pursuant to this Settlement Agreement.

## SECTION 4 – RELEASES

### A.   By Named Plaintiffs and Opt-In Plaintiffs

**4.1.**   Upon the Effective Date, the Named Plaintiffs and Opt-In Plaintiffs shall be deemed to have released the Released Parties from any and all liability, damages, expenses, or claims arising under the FLSA, the NYLL, and any other applicable federal, state, or local wage and hour law, including without limitation for attorneys' fees and costs arising therefrom, for the entire Class Period (the "Named/Opt-In Release").

**4.2.**   The Named/Opt-In Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to the Named Plaintiffs and Opt-In Plaintiffs. The Named Plaintiffs and Opt-In Plaintiffs affirm their intention to release not only those claims within the scope of this Named/Opt-In Release against the Released Parties which the Named Plaintiffs and Opt-In Plaintiffs know about, but also those claims within the scope of the Named/Opt-In Release about which the Named Plaintiffs and Opt-In Plaintiffs do not know.

**4.3.**   The Named Plaintiffs and Opt-In Plaintiffs acknowledge that, by entering into this Settlement Agreement, they no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief against any Released Party for alleged acts or injures within the scope of the Named/Opt-In Release.

**4.4.**   Covenant Not To Sue. A "covenant not to sue" is a legal term which means that the Named Plaintiffs and Opt-In Plaintiffs promise not to file any lawsuits against any Released Party.  In addition to waiving and releasing the claims covered by Section 4.1, the Named Plaintiffs and Opt-In Plaintiffs agree never to sue any of the Released Parties in any forum for

claims, laws, or theories covered by the Named/Opt-In Release. The Named Plaintiffs and Opt-In Plaintiffs agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies).

### B.      By Other Class Members

**4.5.**   <u>NYLL and Other State and Local Claims.</u>

A.      Upon the Effective Date, all Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., shall be deemed to have released the Released Parties from any and all liability, damages, expenses, or costs arising under the NYLL and any other applicable state or local wage and hour law, including without limitation claims for attorneys' fees and costs arising therefrom, for the entire Class Period (the "State/Local Release").

B.      The State/Local Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to the Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B.  The Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., affirm their intention to release not only those claims within the scope of the State/Local Release against the Released Parties which they know about, but also those claims about which they do not know.

C.      The Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., acknowledge that, pursuant to the State/Local Release, they shall no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief arising under the NYLL or any other applicable state or local wage and hour law against any Released Party for alleged acts or injures within the scope of the State/Local Release.

D.      <u>Covenant Not To Sue.</u> A "covenant not to sue" is a legal term which means that the Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., promise not to file any lawsuits against any Released Party within the scope of the State/Local Release. In addition to waiving and releasing the claims covered by Section 4.5.A, the Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the State/Local Release. The Other Class Members, except those who have opted out of this Settlement pursuant to Section 2.7.B., agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies).

**4.6.**   <u>FLSA Claims.</u>

A.      By receiving and presenting a Settlement Distribution Check for payment, an Other Class Member shall be deemed (1) to have consented to join the Litigation

for purposes of asserting FLSA claims, and (2) to have released the Released Parties from any and all liability, damages, expenses, or costs arising under the FLSA, including without limitation claims for attorneys' fees and costs arising therefrom, for that portion of the Class Period pertaining to FLSA claims as set forth in Section 1.3(a) of this Settlement Agreement (the "FLSA Release").

B.    The FLSA Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to an Other Class Member who presented a Settlement Distribution Check for payment. The Other Class Members who presented a Settlement Distribution Check for payment affirm their intention to release not only those claims within the scope of the FLSA Release against the Released Parties which they know about, but also those claims within the scope of the FLSA Release about which they do not know.

C.    The Other Class Members who presented Settlement Distribution Checks for payment acknowledge that, pursuant to the FLSA Release, they shall no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief arising under the FLSA against any Released Party for alleged acts or injures within the scope of the FLSA Release.

D.    <u>Covenant Not To Sue.</u> A "covenant not to sue" is a legal term which means that an Other Class Member who presented a Settlement Distribution Check for payment, promises not to file any lawsuits against any Released Party within the scope of the FLSA Release. In addition to waiving and releasing the claims covered by Section 4.6.A., the Other Class Members who presented a Settlement Distribution Check for payment agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the FLSA Release. The Other Class Members who presented a Settlement Distribution Check for payment agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies).

## SECTION 5 – TERMINATION OF THE SETTLEMENT AGREEMENT

**5.1.**    <u>Failure To Approve Or Dismiss.</u> If the Court, for any reason, does not accept or approve the Stipulation or Amended Complaint set forth in Exhibits A and B, grant Preliminary Approval or Final Approval to this Settlement Agreement in substantially the form as signed by the Parties, or fails to enter a judgment and dismissal with prejudice of the Litigation, or if the Court's grant of final judgment and dismissal is reversed, modified, or declared or rendered void, on appeal or otherwise, then this entire Settlement Agreement shall be rendered null and void.

**5.2.**    <u>Effect Of Termination.</u> If the Settlement Agreement is rendered null and void, or otherwise terminated according to the terms set forth herein, then: (a) neither this Settlement Agreement, nor any of the related negotiations or proceedings, shall be of any force or effect, and no Party shall be bound by any of its terms; (b) all Parties shall stand in the same position, without prejudice, as if the Settlement Agreement had not been entered or filed with the Court; (c) nothing in this Settlement Agreement, or any of the related negotiations or proceedings, shall

be admissible for any purpose, including without limitation in connection with Defendants' rights under 29 U.S.C. § 216(b) and/or Fed. R. Civ. P. 23, to contest conditional or class certification in the Litigation or any other legal action asserting substantially the same claims as those asserted in the Litigation; and (d) Defendants shall have no obligation to make any payment to Class Counsel or the Plaintiffs.

**5.3.**    The Settlement Is Non-Admissible. Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever, except to seek enforcement of the terms of the Settlement Agreement.

## SECTION 6 – WARRANTIES

**6.1.**    The signatories to this Settlement Agreement represent and warrant that they have the full power, capacity, and authority to enter into this Settlement Agreement and bind the Parties to its terms. Class Counsel and the Named Plaintiffs specifically represent and warrant that the Named Plaintiffs have authority to bind the Opt-In Plaintiffs to the terms of this Settlement Agreement.

**6.2.**    If the facts upon which the Settlement Agreement is founded upon are different from the facts believed to be true, this Settlement Agreement shall remain binding and effective and the Parties expressly accept and assume the risk of such possible differences and agree that this Settlement Agreement shall remain binding and effective, notwithstanding any such potential differences.

**6.3.**    The Named Plaintiffs and Opt-In Plaintiffs further expressly warrant that no rights, causes of actions, or claims that they have released on an individual basis in this Settlement Agreement have been assigned, transferred or otherwise disposed of to any person or entity, nor have the Named Plaintiffs made any attempt to assign, transfer or otherwise dispose of any of the rights, causes of action or claims asserted in the Litigation.

## SECTION 7 – DENIAL OF LIABILITY

**7.1.**    This Settlement Agreement is a compromise of disputed claims. Defendants deny any and all allegations of wrongdoing or illegal conduct alleged by Plaintiffs in the Litigation. The exchange of consideration contemplated by this Settlement Agreement, and any other acts, omissions, or statements by the Parties, are not to be construed as any admission of liability of any Party for any claims or defenses, with liability being expressly denied. Neither this Settlement Agreement nor anything contained in the Settlement Agreement, the settlement proposals exchanged by the Parties, or any motions or Orders filed or entered pursuant to the Settlement Agreement, shall be interpreted or construed as an admission or concession of liability, culpability, or wrongdoing by Defendants or Plaintiffs.

## SECTION 8 – GENERAL PROVISIONS

**8.1.**    Entire Agreement. This Settlement Agreement constitutes the entire agreement of the Parties hereto with respect to all of the matters addressed herein, and supersedes all prior or

contemporaneous discussions, communications, or agreements, expressed or implied, written or oral, by or between the Parties.

**8.2.**     Governing Law. This Settlement Agreement shall be interpreted and governed according to the law of the State of New York, except to the extent superseded by federal law.

**8.3.**     Retention of Jurisdiction. The Court shall retain jurisdiction over: (a) the interpretation and implementation of this Settlement Agreement; (b) any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and/or the settlement contemplated thereby; and (c) any disputes arising out of this Settlement Agreement, including actions or motions to enforce this Settlement Agreement.

**8.4.**     Binding On Successors. The provisions of the Settlement Agreement and releases shall be binding upon and shall inure to the benefit of the successors, assigns, and administrators of the respective Parties.

**8.5.**     Appeal. In the event of a timely appeal from the Court's judgment and dismissal of the Litigation pursuant to a Final Approval order, the judgment shall be stayed and the actions required by this Settlement Agreement shall not take place until all appeal rights have been exhausted by operation of law.

**8.6.**     No Amendment Without A Writing. The Parties hereto agree that no amendment or modification of this Settlement Agreement shall be binding unless made in writing, signed by the Parties, and approved by the Court.  Any waiver of the breach of any provision of this Settlement Agreement shall not operate or be construed as a waiver of any subsequent breach.

**8.7.**     Defendants' Motion To Enjoin Future Litigation. Plaintiffs and Class Counsel agree not to oppose any motion filed by Defendants under 28 U.S.C. § 1651(a) to enjoin any Plaintiffs from initiating any action in any court based on the same allegations in the Litigation and relating to events occurring up to and through the Final Approval date.

**8.8.**     Notice. Unless otherwise specifically provided, all notices, demands, or other communications in connection with this Settlement Agreement shall be sent via United States mail, with a copy by e-mail addressed as follows:

    To the Plaintiffs:

        Christopher Quincy Davis, Esq.
        Rachel Meredith Haskell, Esq.
        The Law Office of Christopher Q. Davis, PLLC
        225 Broadway, Suite 1803
        New York, NY 11217
        cdavis@workingsolutionsnyc.com
        rhaskell@workingsolutionsnyc.com

> To Defendants:
>
>> Robert Whitman, Esq.
>> Joshua Seidman, Esq.
>> Seyfarth Shaw LLP
>> 620 Eighth Avenue, Suite 3200
>> New York, NY 10018
>> rwhitman@seyfarth.com
>> jseidman@seyfarth.com
>>
>> and
>>
>> Office of the General Counsel
>> Altice USA, Inc.
>> One Court Square, 45th Floor
>> Long Island City, New York 11120

**8.9.** <u>Construction And Interpretation.</u> The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement. Section titles and headings are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

**8.10.** <u>Counterparts.</u> This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties. A facsimile, digital image, or copy of this Settlement Agreement shall have the full force and effect of, and be admissible as, an original.

**8.11.** <u>No Active Public Disclosure.</u> As a material inducement for Defendants to enter into this Settlement Agreement, Class Counsel, on behalf of itself and all of its lawyers, staff, and any other lawyer or law firm with which it is affiliated, hereby represents that it: (i) shall not publicize, either electronically (e.g., through a firm-sponsored Website or on Facebook, Twitter or the like) or by any other means, this Settlement Agreement, the terms of the Settlement Agreement, and/or the Litigation; (ii) has not contacted any representative of the media (e.g., press, TV, radio, Internet), and shall not make any press release, public statement, or statement to any third party, concerning this Settlement Agreement, the terms hereof and/or the Litigation and shall not do so in the future; and (iii) in the event that, at any time in the one year following execution of this Settlement Agreement, it is retained by another employee or former employee of Defendants seeking legal representation in connection with a potential class action or collective action claim or claims similar to those that were asserted in the Litigation, it shall, subject to such individual's approval, notify counsel for Defendants so as to provide Defendants the opportunity to discuss the possible resolution of the matter prior to the filing of any claim or lawsuit.

**8.12.**   IN WITNESS THEREOF, the Parties hereto and their Counsel have executed the Settlement Agreement as of the date specified below.

*[Signature Pages to Follow]*

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Jurtreau Villegas:** _____

Dated: _____ **2018**

**Patrick Schiano:** _____

Dated: _/0 - 9_____ **2018**

**William Gilbert Garvin:** _____

Dated: _____ **2018**

**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____

**Title:** _____

**Print Name:** _____

Dated: _____ **2018**

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Jurtreau Villegas:** _/s/ Villegas_____

**Dated:** _10/9/2018_____ **2018**

**Patrick Schiano:** _____

**Dated:** _____**2018**

**William Gilbert Garvin:** _____

**Dated:** _____**2018**


**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____

**Title:** _____

**Print Name:** _____

**Dated:** _____**2018**

ACCEPTED AND AGREED:

**FOR ALL PLAINTIFFS:**

**Jurtreau Villegas:** _____
**Dated:** _____ 2018

**Patrick Schiano:** _____
**Dated:** _____ 2018

**William Gilbert Garvin:** _William Garvin_
**Dated:** _10-7-18_____ 2018


**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____
**Title:** _____
**Print Name:** _____
**Dated:** _____ 2018

**ACCEPTED AND AGREED:**

**FOR ALL PLAINTIFFS:**

**Jurtreau Villegas:** _____
**Dated:** _____2018

**Patrick Schiano:** _____
**Dated:** _____2018

**William Gilbert Garvin:** _____
**Dated:** _____2018

**FOR DEFENDANTS AND ALL RELEASEES:**

**By:** _____
**Title:** Chairman & CEO_____
**Print Name:** Dexter Goei_____
**Dated:** __October 4,_____2018

19

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JURTREAU VILLEGAS, PATRICK SCHIANO and WILLIAM GILBERT GARVIN, individually and on behalf of all others similarly situated,

                   Plaintiffs,

                 -against-

CABLEVISION SYSTEMS NEW YORK CITY CORPORATION, CABLEVISION SYSTEMS CORPORATION, CSC HOLDINGS, LLC, ALTICE USA, INC., and ALTICE TECHNICAL SERVICES US CORP.,

                 Defendants.

: Case No.: 17-cv-05824-DLI-VMS

-------------------------------------------------------------

**WHEREAS**, the Complaint, Dkt. No. 1, which alleges violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 *et seq.* and §§ 650 *et seq.* ("NYLL"), was filed on October 4, 2017 as a putative collective action under the FLSA pursuant to 29 U.S.C. § 216(b) and as a putative class action under the NYLL pursuant to Federal Rule of Civil Procedure ("FRCP") 23; and

**WHEREAS**, the putative class and putative collective included all individuals employed by Defendants as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn, New York facilities during the relevant limitation periods.

**WHEREAS**, Plaintiffs now seek to file their First Amended Complaint to include all individuals employed by Defendants as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Bronx, New York facilities during the relevant limitation periods to the definition of the putative class and putative collective.

1

**WHEREAS**, a copy of Plaintiffs' proposed First Amended Complaint is attached hereto as **Exhibit "A."**

**IT IS HEREBY STIPULATED**, by and between Plaintiffs and Defendants, by and through their respective counsel, that:

1.      Plaintiffs should be granted leave to amend to file their First Amended Complaint for Damages, a copy of which is attached hereto as **Exhibit "A."**

2.      Defendants' responsive pleading shall only be due if the Settlement Agreement by and between the parties is rendered null and void due to the occurrence of any event set forth in Section 5.1 of the parties' Settlement Agreement.

3.      If the Settlement Agreement is rendered null and void Defendants' responsive pleading shall be due thirty (30) calendar days thereafter.

Dated: October 8, 2018
        New York, New York

THE LAW OFFICE OF CHRISTOPHER Q.            SEYFARTH SHAW, LLP
DAVIS, PLLC

Counsel for Plaintiffs                       Counsel for Defendants

By: _____/s/_____               By: _____/s/_____
        Christopher Q. Davis, Esq.                   Robert Whitman, Esq.
        225 Broadway, Suite 1803                     620 Eighth Avenue, 32nd Fl.
        New York, NY 10007                           New York, NY 10018
        Tel.:(646) 430-7930                          Tel.:(212) 218-5500


SO ORDERED.

_____
The Honorable Vera M. Scanlon

2

**Exhibit B**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JURTREAU VILLEGAS, PATRICK SCHIANO and WILLIAM GILBERT GARVIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CABLEVISION SYSTEMS NEW YORK CITY CORPORATION, CABLEVISION SYSTEMS CORPORATION, CSC HOLDINGS, LLC, ALTICE USA, INC., and ALTICE TECHNICAL SERVICES US CORP.,<br><br>Defendants. | Civil Action No.:  17-cv-5824<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought by Lead and Putative Class Representative Plaintiffs Jurtreau Villegas, Patrick Schiano, and William G. Garvin (together, the "Representative Plaintiffs" or "Lead Plaintiffs") and all Opt-in Plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the Putative Collective and Class identified below.  Lead Plaintiffs and the Putative Collective and Class members were or are employed by Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, (the "Cablevision Defendants"), Altice USA Inc., and Altice Technical Services US Corp.,  (the "Altice Defendants," together with the Cablevision Defendants, the "Altice-Cablevision Defendants" or "Defendants") as non-exempt hourly Outside Plant Technicians and/or Network

Technicians (hereinafter "Outside Plant Technicians," "OSP" or "Technicians") and were denied "gap time" compensation and overtime premium compensation by requiring Outside Plant Technicians to work "off-the-clock" during their unpaid half-hour meal breaks and failing to properly calculate their regular rate of pay.  Defendants also failed to provide Plaintiffs and the Putative Collective and Class with accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).

2.       The Putative Collective and Class of employees are similarly situated to the Lead Plaintiffs under Federal Rule of Civil Procedure ("FRCP") 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

3.       Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all others similarly situated who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' facilities or depots ("Facilities") located in Brooklyn or the Bronx at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay overtime premiums for all hours worked over 40 in a given workweek, and failing to keep accurate records of hours Plaintiffs' actually worked.  Plaintiffs and all such other similarly-situated persons are jointly referred to herein as the "Collective" or the "Putative Collective."

4.       Plaintiffs' claims under the NYLL are brought as a class action pursuant to FRCP 23 on behalf of themselves and all other similarly-situated persons who are or have been employed by Defendants as Outside Plant Technicians assigned to Defendants' Facilities located in Brooklyn or the Bronx within the period of six years prior to the filing date of this Complaint

2

(the "Class Period") and who were subject to Defendants' unlawful policy and/or practice of failing to pay Plaintiffs gap time compensation and overtime premiums for all hours worked over 40 in a given workweek, Defendants' unlawful practice of failing to keep accurate records of hours Plaintiffs actually worked, and Defendants' unlawful practice of failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime hours worked. Plaintiffs and all other such similarly-situated persons are jointly referred to herein as the "Class" or the "Putative Class."

5.      Plaintiffs seek relief for the Putative Collective and Putative Class pursuant to the applicable provisions of the FLSA and NYLL to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

## PARTIES

6.      Lead and Representative Plaintiff Jurtreau Villegas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  She began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in 2000, and has been with the Company since 1999.  At all relevant times, Ms. Villegas was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Ms. Villegas will be filed with the Court.

7.      Lead and Representative Plaintiff Patrick Schiano is an Outside Plant Technician, and presently and at all relevant times residing in Bethpage, Nassau County, New York.  He began his employment with Defendants in 1993, in the Defendants' Brooklyn Facilities as an audit tech. He became a Field Service Technician in the early 2000s and became an Outside Plant Technician over ten years ago.  At all relevant times, Mr. Schiano was an "employee"

3

within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Schiano will be filed with the Court.

8.      Lead and Representative Plaintiff William Gilbert Garvin is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, New York.  He began his employment with Defendants in 2002, in the Defendants' Brooklyn Facilities as Field Service Technician.  He became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities, in 2014.  At all relevant times, Mr. Garvin was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Garvin will be filed with the Court.

9.      Opt-in Plaintiff Dion Pemberton is an Outside Plant Technician for Defendants and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He began his employment with Defendants in 1999, in Defendants' Brooklyn Facilities as a Field Service Technician, and in 2011 became an Outside Plant Technician, also based out of Defendants' Brooklyn facilities.  At all relevant times, Mr. Pemberton was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Pemberton will be filed with the Court.

10.     Opt-in Plaintiff Jamal Howell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around 2013, and has been with the Company since in or around 2009.  At all relevant times, Mr. Howell was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Howell will be filed with the Court.

11.     Opt-in Plaintiff Paul Hickson is an Outside Plant Technician, and presently and at all relevant times residing in Delaware County, Pennsylvania.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997.  At all relevant times, Mr. Hickson was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Hickson will be filed with the Court.

12.     Opt-in Plaintiff Errol Campbell is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around 1999, and has been with the Company since in or around 1997.  At all relevant times, Mr. Campbell was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Campbell will be filed with the Court.

13.     Opt-in Plaintiff Dexter Charter is an Outside Plant Technician, and presently and at all relevant times residing in Lehigh County, Pennsylvania.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

14.     Opt-in Plaintiff Kester Charter is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Charter was an

"employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Charter will be filed with the Court.

15.      Opt-in Plaintiff Rohan Drysdale is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period. At all relevant times, Mr. Drysdale was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Drysdale will be filed with the Court.

16.      Opt-in Plaintiff Darryl De Freitas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period. At all relevant times, Mr. De Freitas was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. De Freitas will be filed with the Court.

17.      Opt-in Plaintiff Wayne Fairclough is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period. At all relevant times, Mr. Fairclough was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Fairclough will be filed with the Court.

18.      Opt-in Plaintiff Earl Jonas is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York. He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the

Company during the Collective and Class Period.  At all relevant times, Mr. Jonas was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Jonas will be filed with the Court.

19.     Opt-in Plaintiff Paul Murray is an Outside Plant Technician, and presently and at all relevant times residing in Bridgeport, Fairfield County, Connecticut.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around the year 2000.  At all relevant times, Mr. Murray was an "employee" within the meaning of all applicable statutes. A Consent to Participate as a Plaintiff in this action executed by Mr. Murray will be filed with the Court.

20.     Opt-in Plaintiff Bernard Paez is an Outside Plant Technician, and presently and at all relevant times residing in New Haven, New Haven County, Connecticut.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around 2005.  At all relevant times, Mr. Paez was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Paez will be filed with the Court.

21.     Opt-in Plaintiff Dwayne Scarlett is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He began working at Defendants' Brooklyn Facilities as an Outside Plant Technician in or around 2010.  At all relevant times, Mr. Scarlett was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Scarlett will be filed with the Court.

22.     Opt-in Plaintiff Guy O. St. Jean is an Outside Plant Technician, and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works

at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. St. Jean was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. St. Jean will be filed with the Court.

23.     Opt-in Plaintiff Juan Valdez is an Outside Plant Technician, and presently and at all relevant times residing in Valley Stream, Nassau County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Valdez was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Valdez will be filed with the Court.

24.     Opt-in Plaintiff Luis Aruz is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Aruz was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Aruz will be filed with the Court.

25.     Opt-in Plaintiff Ian Blackman is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Blackman was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Blackman will be filed with the Court.

26.     Opt-in Plaintiff Felipe Fong is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Fong was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Fong will be filed with the Court.

27.     Opt-in Plaintiff Kevin Halls is an Outside Plant Technician, and presently and at all relevant times residing in Rosedale, Queens County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Halls was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Halls will be filed with the Court.

28.     Opt-in Plaintiff Jorge Minguela is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Minguela was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Minguela will be filed with the Court.

29.     Opt-in Plaintiff Jermaine Titus is an Outside Plant Technician, and presently and at all relevant times residing in Brooklyn, Kings County, New York.  He presently works at Defendants' Brooklyn Facilities as an Outside Plant Technician, and has worked for the Company during the Collective and Class Period.  At all relevant times, Mr. Titus was an

"employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Titus will be filed with the Court.

30.     Lead and Representative Plaintiffs, Opt-in Plaintiffs and the Putative Collective and Putative Class are currently, or were previously, employed by all Defendants as a single employer.

**Corporate Defendants**

31.     Defendants Cablevision Systems New York City Corporation, Cablevision Systems Corporation and CSC Holdings, LLC are Delaware corporations with principal places of business at 111 Stewart Avenue, Bethpage, Nassau County, New York.  At all relevant times herein, the Cablevision Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

32.     Defendant Altice USA, Inc. and Defendant Altice Technical Services US Corp. are both subsidiaries of Altice N.V., an Amsterdam-based telecommunications company. Defendant Altice USA and Defendant Altice Technical Services USA are Delaware corporations registered to conduct business in New York.  At all relevant times herein, the Altice Defendants met the definition of an "employer" of Plaintiffs, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

**Continuity of Operations Between the Cablevision Defendants and the Altice Defendants**

33.     Altice N.V. acquired Defendant Cablevision Systems Corporation following a merger which was completed in June 2016 and set up various domestic subsidiaries to conduct Altice N.V.'s business in the United States, including Defendant Altice USA and Defendant Altice Technical Services.

34.     Following the acquisition, as set forth below, Defendants have maintained a substantial continuity of business operations – Defendants Altice USA and/or Altice Technical Services utilize the same facilities in Brooklyn and the Bronx as the Cablevision Defendants, utilize substantially the same work force, substantially the same supervisory personnel, the same machinery, equipment, and methods of production and provide the same product/service.

35.     Following the acquisition, Defendants maintained an intentional unity of operations with respect to technical services provided to customers, including outside plant services, and centralized control of labor relations, common management, and common ownership and/or financial control.

36.     Immediately following the acquisition, Altice N.V. merged its newly acquired Cablevision operations with its pre-existing Suddenlink and Optimum branded markets and operations, and retired the Cablevision name.

37.     Defendant Altice USA was formed on or around June 21, 2016 from the operational merger of these markets.

38.     The creation of Defendant Altice USA was "effective immediately" according to a press release that named Defendant Altice USA's Executive Leadership Team.

39.     The Altice USA Executive Leadership Team includes Dexter Goei, named Chairman and Executive Officer of Defendant Altice USA.

40.     The Altice USA Executive Leadership Team also includes Hakim Boubazine ("Boubazine"), Co-President and Chief Operating Officer of Defendant Altice USA, who is also on the Altice Technical Services Transition Team.

41.     The Lead Plaintiffs and the Putative Collective and Class have been informed that they are affiliated with Defendant Altice USA by Altice USA corporate representatives, and they received information regarding their status under the merger in or around late 2016.

42.     Lead Plaintiffs and the Putative Collective and Class's health and other insurance benefits and 401K plans were transferred over to Defendant Altice USA in the month of December 2016.

43.     In the month of December 2016, the Lead Plaintiffs received notice from Defendant Altice USA that administration of their health insurance plans, 401k plan and other benefits was being transferred to Altice USA.

44.     Defendant Altice Technical Services US Corp. ("ATS") was formed as a subsidiary of Defendant Altice USA and will house all the US-based field service, construction & fiber, design, outside plant maintenance, inside plant and field-based employees serving commercial accounts.

45.     Defendant Altice USA's executives have made public statements indicating that Defendant ATS through an offer of cash incentives, plans to begin migrating the Altice USA/Cablevision Outside Plant Technician workforce who accept such cash incentives, to ATS.

46.     Altice USA/Cablevision Outside Plant Technicians who make the switch to ATS will retain the same Altice USA health and welfare benefits, seniority and vacation time once they switch to ATS.

47.     However, the Outside Plant Technicians' decision on whether to migrate will be the product of collective bargaining unit, and thus they remain with Defendant Altice USA for the time being.

12

48.     In December 2016, a video presentation was made to all Altice USA/Cablevision Outside Plant Technicians regarding the offer to migrate to ATS.  The presentation was done by Boubazine, among other presenters.

49.     The presentation explained that if an employee decided not to transition from ATS, they would remain an Altice USA employee.

50.     In the video presentation, it was announced that Barry Monopoli ("Monopoli") would be the head of operations for the new ATS organization.  Monopoli was previously the Regional Vice President of the New York City Market under the legacy Cablevision operation immediately prior to the merger, and formerly the business operations at the Brooklyn and Bronx Facilities while the Lead Plaintiffs and the Putative Collective and Class Members were employed during the Collective and Class Period(s).

51.     As announced in the video, many of the former managers employed under the legacy Cablevision operation immediately prior to the merger, who previously had managerial or supervisory authority over the Putative Collective and Class Members during the Collective and Class Period(s), are now or will be, employed by Defendant ATS.  This essentially ensures continuity of operation in Brooklyn and the Bronx Facilities among legacy Cablevision Outside Plant Technicians.

52.     At all relevant times, all the Altice-Cablevision Defendants have met the definition of an "employer" of Plaintiffs and the Putative Collective and Class under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

53.     Upon information and belief, Defendants maintain control, oversight, and direction over their operations and employment practices, including commonly managed human resources, benefits, and labor functions.

54.     Defendants have operated together as a single common enterprise in conducting business, including the business practices described in this Complaint.

55.     Defendants are interrelated companies that have common ownership, officers, managers, products and corporate purpose.

56.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

57.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

**JURISDICTION AND VENUE**

58.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

59.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

60.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

61.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this action, including but not limited to the wage violations which give rise to Plaintiffs' claims, occurred in this district.

## FACTUAL ALLEGATIONS

62.     Altice-Cablevision is a telecommunications service provider with operations in the New York metropolitan area.

63.     Altice-Cablevision provides residential and commercial cable, phone and internet services to over 3 million subscribers residing in New York, New Jersey, Connecticut and parts of Pennsylvania.

64.     Altice-Cablevision utilizes both in-house and contractor technicians to provide in-home technical support for their cable subscribers, including installation and troubleshooting support.

65.     Altice-Cablevision's contractor technicians have been the subject of numerous prior wage and hour class action lawsuits alleging similar violations as those alleged herein.[1]

66.     Defendants have facilities in the Bronx, New York and Brooklyn, New York, through which Altice-Cablevision provides customer service support to subscribers in the Bronx, Brooklyn and other locations in the New York Metropolitan area.  Altice-Cablevision also has facilities in Long Island, New York, Westchester County, New York, Connecticut and New Jersey.

67.     Altice-Cablevision collectively refers to these New York Metropolitan area facilities as the "footprint," which also includes other affiliated businesses that do not include cable facilities, for example Newsday, News 12 and Lightpath.

68.     Altice-Cablevision employs over 17,000 employees at its various facilities throughout the footprint.

---

[1]      The Lead Plaintiffs are, and were at all times, employees of Defendants and not independent contractors.  The Putative Collective and/or Class do not include Defendants' independent contractor workforce.

69.     Upon information and belief, there are three Altice-Cablevision support facilities, or depots, in Brooklyn: (i) 45th Street and Avenue H (45th Street facility); (ii) East 92nd Street and Avenue D (92nd Street facility); and (iii) East 96th Street and Avenue D (96th Street facility), and one facility located in the Bronx, located on Brush Avenue (collectively referred to as the "Brooklyn and Bronx Facilities").

70.     Outside Plant Technicians assigned to the Brooklyn and Bronx Facilities are required to abide by the terms and conditions of Altice-Cablevision's Employee Handbook (the "Handbook") which is applicable to all employees throughout the footprint.

71.     The Brooklyn and Bronx Facilities service a significantly higher volume of customers than their counterparts in suburban New York, New Jersey and Connecticut.

72.     Barry Monopoli, Altice-Cablevision Regional Vice President of the New York City Market, was formerly employed by the Cablevision Defendants as the Vice President of Field Operations for the New York City footprint, including the Brooklyn and Bronx Facilities.

73.     Following the merger, upon information and belief, Monopoli continues to share responsibilities between Altice entities and those entities that now comprise Altice-Cablevision (*i.e.*, those former Cablevision entities that remain in existence under the Altice umbrella).

74.     Upon information and belief, Monopoli was appointed as the managing head of ATS in or around late 2016.

75.     Upon information and belief, Monopoli will remain affiliated with Altice USA for the sake of managing those who do not transition to ATS.

76.     In this position, he will be responsible for all Field Service Operations in Brooklyn and the Bronx under both Altice Technical Services and Altice-Cablevision, and will essentially continue in the same functional role he is in now.

77.     Kent Strahan ("Strahan"), Altice-Cablevision Director of Operations, shares responsibility with Monopoli over the Brooklyn and Bronx Facilities.

78.     Upon information and belief, Strahan supervises at least four supervisors.

79.     Strahan and Monopoli oversee and enforce all operational policies and practices which relate to the services provided by Outside Plant Technicians in the Brooklyn and Bronx Facilities.

80.     Upon information and belief, Defendants directly employ hundreds of in-house technicians at any given time in the Brooklyn and Bronx Facilities, including approximately one hundred fifteen (115) Outside Plant Technicians within the past six (6) years.

81.     Those Outside Plant Technicians provide installation and troubleshooting service to Altice-Cablevision customers.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work During Unpaid Lunch Breaks**

82.     As part of Altice-Cablevision's telecommunications and cable services, Outside Plant Technicians are responsible for field operations duties entirely outside the customer's home or business.

83.     OSPs perform work including, *inter alia*, running wires above- or underground, locating underground utilities, climbing telephone poles, and performing other manual work to troubleshoot, remove or install telecommunications, cable and internet infrastructure located outside.

84.     Pursuant to Altice-Cablevision's common policies, OSPs are required to report to their assigned facility before the start of their shift in order to receive their daily assignments, which includes between 3 and 4 different jobs.

85.     On average, each job takes, at a minimum, 4 hours to complete.

17

86.     However, in practice OSPs are able to complete between 1 and 4 of those jobs because of, *e.g.*, problems with access or other unforeseeable issues that prevent them from completing the job.

87.     Furthermore, OSPs are responsible for repairing service outages, during which multiple Altice-Cablevision customers are without service.  These outages take priority over more routine troubleshooting, installation or removal jobs, and it is common that dispatch or supervisors call OSPs mid-job and tell the Technician to drop what he/she is working on and respond to an outage.

88.     Outages can occur as often as five times per week.

89.     The intensity of the work, the length of the jobs and the unpredictability ensures that OSPs frequently cannot stop for an uninterrupted, 30-minute lunch break.

90.     By way of example only, Plaintiff Jurtreau Villegas is unable to take a full, uninterrupted lunch break at least four times per week, resulting in a minimum of 2 hours of unpaid overtime per week.

91.     On average, Plaintiff Villegas must completely skip lunch at least once per week in order to complete her assigned jobs.  She is interrupted during her lunch break with calls for supervisors or dispatch at least once a week, and eats her lunch while driving between jobs or driving back to the depot at least three times per week.

92.      In short, throughout the relevant time periods, Plaintiff Villegas worked through lunch without pay nearly every day.

93.     By way of further example, Opt-in Plaintiff Dion Pemberton is unable to take lunch at least four times per week.

94.     By way of further example, Opt-in Plaintiff Jamal Howell was unable to take lunch approximately four times per week from 2013 through 2016.

95.     In order to provide Altice-Cablevision customers with adequate service, Defendants require non-exempt hourly Outside Plant Technicians to meet demanding productivity requirements each workday, forcing Plaintiffs to work in excess of 40 hours per week in order to avoid disciplinary action.  As a result, Plaintiffs regularly worked "off-the-clock" through their unpaid half-hour meal breaks.

96.     Outside Plant Technicians are assigned to weekly shifts that consist of five consecutive 8.5-hour days, or 42.5 hours a week, with a half-hour unpaid meal period automatically deducted from each daily shift.

97.     According to the Handbook, Outside Plant Technicians may also perform overtime-eligible labor that is pre-approved and scheduled in advance by a supervisor or manager, and are paid at one and one-half their hourly rate of pay for this time.[2]

98.     According to the Handbook, "incidental overtime" (*i.e.*, approved but unscheduled overtime-eligible labor) may be needed to "ensure a high degree of service to our customers and guests, to address business needs, breaking news or unplanned events."  Outside Plant Technicians are paid one and one-half their hourly rate of pay for all recognized overtime.

99.     According to the Handbook, supervisors must approve overtime labor in advance and "failure to obtain advance approval may result in corrective action, up to and including suspension or termination of employment."

---

[2]     Additionally, Outside Plant Technicians may be eligible for "standby" scheduling, whereby "employees are scheduled to be available to perform work outside their regular work schedule, as required by their supervisor/ manager to meet the Company's business needs." While on standby, employees receive a lump sum incentive pay of approximately $100 to $200, in addition to their hourly rate of pay for hours worked, or their overtime rate of pay for all standby hours worked over forty hours in a given work week.

100.     Further, according to the Handbook, "[i]t is Altice-Cablevision's policy that employees be paid for all overtime worked and [employees] must report all overtime hours worked, even if [they] did not receive advance approval."

101.     According to Altice-Cablevision's commonly enforceable policies and practices, working unapproved "incidental overtime" hours, while compensable, is prohibited.

102.     During the early years of the Collective and Class Period(s), Outside Plant Technicians received their daily assignments on a printout "work order" provided by their supervisors.

103.     Outside Plant Technicians were required to provide start and finish times for each job on "Field Service Daily Logs."

104.     Field Service Daily Logs were used to track a Tech's route, including arrival and departure times for jobs.  These logs were stapled or attached to the Tech's work orders for that day and handed in to a supervisor at the depot.

105.     More recently, Plaintiffs were provided with electronic tablet devices, equipped with "Tech Track" performance- and route-tracking software ("Altice-Cablevision Software" or the "Software"), through which Outside Plant Technicians receive their daily route assignments.

106.     Outside Plant Technicians are required to use the Altice-Cablevision Software to access their assigned jobs, daily schedule, and other information necessary to perform their jobs.  Further, Outside Plant Technicians are required to indicate in Altice-Cablevision Software when they start and finish each job.

107.     Plaintiffs in Brooklyn are forced to work through their thirty-minute unpaid lunch break on an almost daily basis.  Rather than take the thirty-minute break they often eat lunch on the go as they drive between jobs or back to the depot, or simply skip lunch entirely.

108.    Plaintiffs in the Bronx also worked through their lunches; however, the workload for the OSP Techs in the Bronx did not require them to work through their lunches as frequently as the workload for the OSP Techs in Brooklyn.

109.    Supervisors and Altice-Cablevision dispatchers have access to Outside Plant Technicians' individual Altice-Cablevision Software platform and monitor their productivity throughout the day by tracking their location, timeliness to each job, length of time to complete each job and determine which jobs may be likely to begin behind schedule.

110.    At some point during the Collective and/or Class Period(s), the Altice-Cablevision Software workflow application became available on an iPad, allowing OSPs to access the Software remotely.

111.    Initially, although the Software provided a list of daily jobs and multiple other "activities," the Software did not include a code or "activity" for a lunch break.

112.    Therefore, Plaintiffs could not electronically activate the lunch break to indicate whether they took the thirty-minute break.

113.    In or around 2016, after numerous complaints from OSPs, the Company created a code for lunch that allowed OSPs to register whether they had taken lunch.

114.    Nonetheless, the Company at no time held a meeting, circulated a memo or otherwise informed OSPs how to utilize the Software's lunch activity or made clear to OSPs that they were required to take a full half-hour uninterrupted meal break.

115.    Furthermore, and by way of example only, on one occasion in or around summer 2016, Opt-in Plaintiff Howell was near completion of his shift when he was contacted by dispatch regarding an outage.

116.    Opt-in Plaintiff Howell informed dispatch that he had not yet taken lunch and was extremely hungry, and asked dispatch to assign the outage to someone else.  Dispatch connected him to his supervisor, who told Opt-in Plaintiff Howell that because it was an outage, he must go there immediately.

117.    Opt-in Plaintiff Howell took his lunch and then headed to the outage.

118.    The following day, Kent Strahan called Opt-in Plaintiff Howell into his office and reprimanded him for "showing a lack of commitment" by taking his lunch and informing him that "outages take precedent over everything."  Mr. Strahan went on to reprimand Opt-in Plaintiff Howell that when there is an outage, he must skip lunch and could "take an hour the next shift."

**Defendants' Unlawful Timekeeping Policy**

119.    The Altice-Cablevision Software monitors Technicians' schedules on a daily basis, and is used by supervisors and upper management to manage Technicians' schedules, efficiency and productivity.

120.    The Altice-Cablevision Software uses a minute-by-minute timer to record when a Tech has arrived at their job, when they begin working, and when they complete a job.

121.    The Altice-Cablevision Software also allows, and in some instances, requires, the Technicians to record comments regarding why an activity took longer or shorter, or why the activity could not be completed.

122.    Unlike other similar software, the Altice-Cablevision Software for OSPs does not allow for lunch to be "cancelled" – instead, if lunch is not activated on the Software, the activity simply moves to the bottom of the queue for the day.

123.     By way of example only, prior to the creation of the "Lunch" activity in 2016 Opt-in Plaintiff Jamal Howell would activate an activity called "Special Event" to record the rare occasions when he was able to take a bona fide lunch break.

124.     More commonly – approximately every day from 2013 through 2016 – Opt-in Plaintiff Howell worked through his lunch.  When Opt-in Plaintiff Howell worked through his lunch prior to 2016 he was unable to record such worked lunch anywhere on the Altice-Cablevision Software.

125.     After 2016 when Opt-in Plaintiff Howell worked through his lunch he was similarly unable to record such worked lunch anywhere on the Altice-Cablevision Software.

126.     Despite monitoring OSPs' activities in real time, the Company did not and does not have a policy in place to prompt or remind OSPs to take their lunch if they have not done so.

127.     Using the Altice-Cablevision Software, Defendants keep meticulous records of the Technicians' whereabouts, productivity and efficiency throughout the day.

128.     Defendants also receive written comments, and some instances (*i.e.* cancelled activities) actually required such comments, from the Technicians through the Altice-Cablevision Software.

129.     Despite the Altice-Cablevision Software being the most accurate real-time indicator of time worked by Plaintiffs, Defendants nonetheless choose to ignore such for payroll purposes.

130.     Rather, according to Altice-Cablevision policy applicable to the entire Putative Collective and Class, both before and after Altice-Cablevision implemented this software, Defendants track Outside Plant Technicians' working time ***solely*** via paper sign in/out time logs ("sign in/out sheet").

23

131.    At the end of every shift, Plaintiffs are required to manually record their start and end time on a weekly sign in/out sheet maintained by their supervisor.

132.    Each sign in/out sheet has a row for each Outside Plant Technician assigned to the supervisor's team, as well as a column for each day of the week.

133.    The sign in/out sheets do not have a space for Plaintiffs to record when they started and stopped their lunch break or that they worked through a lunch break,[3] nor did Defendants, at any time during the Class or Collective Periods, inform Outside Plant Technicians that they could, or should, record a worked lunch on the sign in/out sheet.

134.    Plaintiffs were never told by any supervisor or member of upper management that writing "no lunch," or otherwise recording a worked lunch on the sign in/out sheet, would result in payment for that time.

135.    Plaintiffs were never told that they could or should record a worked lunch in that fashion.

136.    In fact, Plaintiffs were never given *any* instruction of *any kind* regarding how they should record a worked lunch, either on paper or through the Altice-Cablevision Software.

137.    Plaintiffs' supervisors were responsible for inputting each Outside Plant Technician's time into Altice-Cablevision's payroll system.

138.    Throughout the entire Collective and Class Period(s), the payroll system has automatically deducted a thirty-minute meal break from each day worked, regardless of whether the employee actually took the meal break.

---

[3]     The sign in/out sheets were maintained by each supervisor, and vary slightly in layout between supervisors and over time.  Nonetheless, each sign in/out time log has the same basic format, with columns divided into small squares for Techs to record the time they arrived at the depot at the beginning and ending of their shift.

139.    Therefore, on days when Plaintiffs worked through their lunch break, the automatic thirty-minute meal break was deducted from their worked time and they were not paid for the time worked.

140.    Plaintiffs worked at least 30 minutes of unpaid overtime and up to 2.5 hours of unpaid overtime per week for worked lunch breaks.

141.    Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means, method or procedure, for recording actual hours worked during unpaid lunch breaks that was to be used for payroll purposes, despite Altice-Cablevision's own mandate that employees must record all hours worked.

142.    This failure violates the NYLL and FLSA requirements that employers maintain accurate payroll records.

143.    Even when Technicians attempted to record a missed lunch on the sign in/out sheets and/or Altice-Cablevision Software, and/or made verbal reports to their supervisors that they worked through lunch, they were not guaranteed payment for this time worked.

144.    This occurred despite the awareness and knowledge of Altice-Cablevision's management, and in direct violation of Defendants' own policy that "employees be paid for all overtime worked."

145.    As a result of Defendants' failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Putative Collective and Class with accurate and/or complete wage statements on each payday, including the total hours worked each week and the full amount of wages earned during the pay period.

**Defendants Have Knowledge of The Widespread "Off-The-Clock" Practices in the Brooklyn and Bronx Facilities**

146.     Upon information and belief, Defendants' knowledge of the pervasive and widespread nature of the off-the-clock violations alleged herein is well documented, and implicates all levels of management, in willful violation of the FLSA and NYLL.

147.     Throughout the Collective and Class Periods, Plaintiffs frequently reported through Altice-Cablevision Software, constantly monitored by Plaintiffs' Supervisors, that they were forced to work through their unpaid lunch without compensation.

148.     Alternatively, Defendants knew or should have known that Plaintiffs were working through lunch based on the fact that, for example, Opt-in Plaintiff Howell created "Special Events" in his Tech Track software to record when he was able to take lunch – indicating that on all other occasions when he did not create a "Special Event" for his lunch that he was thus unable to take it.

149.     Furthermore, Defendants were well aware of unpredictable nature and extreme demands of Plaintiffs' jobs as Outside Plant Technicians, and had knowledge of the numerous daily events in an OSP's schedule that made it impossible to take lunch (*e.g.*, because a single job took all day, because of an outage, or because of a high volume of jobs assigned that day).

150.     Additionally, Plaintiffs complained about working through lunch to their Supervisors on numerous occasions throughout the Collective and Class Period(s).

151.     As such, Outside Plant Technicians' collective frustration with working through their unpaid lunch on an almost daily basis was well known by Altice-Cablevision management in the Brooklyn and Bronx Facilities.

152.     Indeed, upon information and belief, working though lunch was a common subject of team meetings attended by Outside Plant Technicians and their supervisors.

153.     Over the course of four years, a large volume of often-repeated verbal complaints from Outside Plant Technicians to supervisors and management throughout Brooklyn and Bronx regarding the same unlawful practice, and voluminous written records documenting the fact that Outside Plant Technicians were working through lunches without pay, Defendants knowingly failed to correct their illegal over time policies, and off-the-clock violations continue to this day.

**Defendants' Unlawful Calculation of Plaintiffs' Regular Rate of Pay in Determining Overtime Premiums**

154.     Plaintiffs and all members of the Putative Collective and Class were eligible for and received annual bonuses paid by Defendants.

155.     All Altice-Cablevision Outside Plant Technicians in the Brooklyn and Bronx Facilities were eligible for this bonus.

156.     The bonuses were computed based on a predetermined and nondiscretionary formula that was dependent on the success of the facility as a whole.

157.     The bonuses were thus awarded based on the success of the Defendant's employees as a group and not based on any particular Plaintiffs' personal productivity.

158.     The annual bonuses were awarded to employees to induce them to work more steadily, rapidly, and efficiently and are thus required to be included within the Plaintiffs' regular rate of pay.  Despite this, they were not included within the regular rate of pay for the purposes of calculating overtime wages at any point during the Collective and/or Class Period(s).

## FLSA COLLECTIVE ACTION ALLEGATIONS

159.     Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

160.     Defendants employed Plaintiffs during the Collective Period.

27

161.    Defendants classified Plaintiffs and Members of the Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

162.    Upon information and belief, there are approximately more than 100 current and former Outside Plant Technicians who are similarly situated to Plaintiffs and who were denied overtime compensation.

163.    The Lead Plaintiffs represent other Outside Plant Technicians, and are acting on behalf of Defendants' current and former Outside Plant Technicians' interests as well as their own interests in bringing this action.

164.    Defendants unlawfully required Plaintiffs and all individuals employed as Outside Plant Technicians to work through their unpaid half-hour meal breaks.

165.    At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week and/or minimum wage compensation for hours worked under 40 in a work week.

166.    Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

> **Collective Class:**    All individuals employed by Defendants as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn and Bronx Facilities at any point during the Collective Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week and/or the applicable federal statutory minimum wage for hours worked under 40 in a workweek during the Collective Period based on the practices alleged herein.

167.    Specifically, Plaintiffs' Collective Class is further defined as involving (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular

rate of pay" for the purposes of determining overtime pay entitlement; and (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off the clock" and without compensation during unpaid meal breaks which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

168.    As such, the Named Plaintiffs and the Collective suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Period.

169.    Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

170.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective.

171.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective, and as such, notice should be sent to the Collective.

172.    There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

173.    Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

## FEDERAL RULES OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

174.    Plaintiffs allege and incorporate by reference all of the factual allegations made in the preceding paragraphs.

175.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

**Proposed Class:**    All individuals employed by Defendants during the Class Period as Outside Plant Technicians, or similar titles, including Lead Outside Plant Technicians, in Defendants' Brooklyn and Bronx Facilities, who earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week and/or the New York minimum wage for hours worked under 40 in a workweek during the Class Period, based on the practices alleged herein.

176.    Specifically, Plaintiffs' Class is further defined as involving: (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; (ii) claims for unpaid overtime and minimum wage compensation for Defendants' practice of knowingly suffering and permitting the Class to work "off the clock" and without compensation during unpaid meal breaks, (iii) claims for unpaid overtime and minimum wage compensation for Defendants' commonly enforced timekeeping and recordkeeping practices which did not allow the Class to record their time accurately and resulted in unpaid wages; and (iv) claims for wage statement violations for Defendants' failure to provide the Class with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period.

177.    Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs and the Putative Class at least one and one-half times the New York state minimum wage for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

178.    Numerosity:    The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 100 individuals who satisfy the definition of the Proposed Class.

179.    Typicality:    Plaintiffs are members of the class they seek to represent, and their claims are typical of the claims of the Putative Class. The Plaintiffs are informed and believe, and on that basis allege, that, like other Outside Plant Technicians, Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

180.    Plaintiffs' interests are co-extensive with those of the Putative Class that they seek to represent.  Plaintiffs are willing and able to fairly represent the Putative Class and to vigorously pursue their similar individual claims in this action.

181.    The relief Plaintiffs seek for the unlawful policies and practices complained of herein is also typical of the relief which is sought on behalf of the Putative Class.

182.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and there will be no difficulty in administering this action as a class action.

183.    Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Putative Class, and have retained counsel who are qualified and experienced in complex labor and employment class and collective action litigation, who are able to meet the demands necessary to litigate a class action of this size and complexity.  The combined interests,

experience and resources of Plaintiffs and counsel to litigate the individual and class claims at issue in this case satisfy the adequacy of representation requirement of FRCP 23(a)(4).

184.    The claims of the Putative Class interrelate such that the interests of the members will be fairly and adequately protected in their absence.

185.    Commonality:    Common questions of law and fact exist to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a.    Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

b.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

c.    Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the Putative Class in violation of the NYLL;

d.    Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

e.    Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Putative Class;

f.    Whether those violations were pursuant to a common policy or practice applicable to all class members;

g.    Whether Defendants employed Plaintiffs and the Putative Class within the meaning of New York law;

h.    The proper measure of damages sustained by the Putative Class; and

i.    Whether Defendants' violations of the NYLL and/or its regulations were "willful."

186.    These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

187.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

188.    Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

189.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3)because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Putative Class the wages to which they are entitled. The damages suffered by the individual Putative Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

190.    Plaintiffs intend to send notice to all members of the Putative Class to the extent required by Rule 23.  The names and addresses of the Putative Class are available from Defendants.

191.    During the Class Period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful minimum wage under either the NYLL or the FLSA and more than 1 hour of overtime-eligible work during the class period for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>
### (Failure to Pay Overtime Compensation in Violation of the FLSA)

192.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

193.    Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

194.    At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of 29 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs and the Putative Collective.

195.    At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

196.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per work week.

197.    During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the Putative Collective worked in excess of forty hours per workweek without lawful overtime compensation.

198.    Despite the hours worked by Plaintiffs and the Putative Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay proper overtime compensation.

199.    Based on the policies and practices articulated above, Plaintiffs were uniformly denied FLSA mandated overtime premiums.

200.     By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Putative Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

201.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Putative Collective.

202.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C §§ 216(b) and 255(a).

203.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitation applies.  29 U.S.C. § 255.

204.     Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**(Failure to Pay Minimum Wage Compensation in Violation of the FLSA)**

205.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

206.     At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

207.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

208.    Defendants are subject to the minimum wage requirements of the FLSA because they acted as an enterprise engaged in interstate commerce and its employees are engaged in commerce.

209.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay Plaintiffs and other similarly situated employees a lawful minimum wage for all hours worked.

210.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from minimum wage obligations.  None of the FLSA exemptions apply to Plaintiffs or other similarly situated employees.

211.    Plaintiffs and all similarly situated employees are victims of a uniform and employer-based compensation policy.  Upon information and belief, this uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Outside Plant Technicians in Defendants' Brooklyn and Bronx Facilities.

212.    Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees, in addition to payment of back minimum wages, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages described pursuant to 29 U.S.C. § 216(b).

213.    Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

214.     Plaintiffs, on behalf of themselves and the Putative Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

215.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

216.     At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the NYLL.

217.     The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

218.     Defendants have failed to pay Plaintiffs and the Putative Class the overtime wages to which they are entitled under the NYLL.

219.     By Defendants' failure to pay Plaintiffs and the Putative Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

220.     Furthermore, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

221.     Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to Pay Lawful Minimum Wages and "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)

222.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

223.    The minimum wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

224.    Defendants have failed to pay Plaintiffs and the Putative Class the minimum wages to which they were entitled under the NYLL.

225.    By Defendants' failure to pay Plaintiffs and the Class Members minimum wages, they have willfully violated the NYLL Article 19, §§ 652 et seq., and the supporting New York State Department of Labor regulations.

226.    Due to Defendants' violations of the NYLL, Plaintiffs and the Putative Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

227.    Furthermore, Defendants have failed to pay Plaintiffs and the Putative Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants for all hours worked in a workweek.

228.    Defendants' failure to pay these wages – known as "gap time" wages – is prohibited by NYLL Section 193 as an unauthorized deduction from wages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))

229.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

230.    The recordkeeping provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

231.    Defendants did not provide Plaintiffs and the Putative Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

232.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information.

233.    As a result of Defendants' unlawful conduct, Plaintiffs and the Putative Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by NYLL § 663.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the Putative Collective and Putative Class, respectfully requests that this Court:

A.    Declare that this action may proceed as a collective action pursuant to 29 U.S.C. 216;

B.    Declare that this action may proceed as a class action pursuant to Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure and/or Section 901 of the New York Civil Practice Law and Rules;

C.    Designate Plaintiffs' counsel and Plaintiffs Patrick Schiano, William Gilbert Garvin and Jurtreau Villegas as class counsel and class representatives, respectively.

D.    Declare that Defendants have violated the provisions of the Fair Labor Standards Act as to Plaintiffs and the Putative Collective;

E.    Declare that Defendants have violated the provisions of the New York Labor Law as to Plaintiffs and the Putative Class;

F.      Declare that Defendants' violations as described above are willful;

G.      Award Plaintiffs and the Putative Collective and Class the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

H.      Award reasonable attorneys' fees and costs pursuant to the FLSA, NYLL and/or other applicable law;

I.      Enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and NYLL; and

J.      Grant Plaintiffs and the Putative Collective and Class such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs on behalf of themselves and all other similarly-situated persons demand a trial by jury as to all issues so triable.

DATED:  October 8, 2018
        New York, New York

_____
Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
Rita M. Lenane, Esq.
The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, New York 10007
Tel.: 646-430-7930 (main)

*Counsel for Plaintiffs and the Putative Collective and Class*

**Exhibit C**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JURTREAU VILLEGAS, PATRICK SCHIANO and WILLIAM GILBERT GARVIN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>     -against-<br><br>CABLEVISION SYSTEMS NEW YORK CITY CORPORATION, CABLEVISION SYSTEMS CORPORATION, CSC HOLDINGS, LLC, ALTICE USA, INC., and ALTICE TECHNICAL SERVICES US CORP.,<br><br>        Defendants. | Case No.: 17-cv-05824-DLI-VMS |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT, SCHEDULING OF A FINAL APPROVAL HEARING, AND RELATED RELIEF**

The Plaintiffs' uncontested motion for an order preliminarily approving a class action settlement and setting a settlement hearing, came on for hearing on _____, 2018.  The Court has considered the Settlement Agreement (and its exhibits), the submissions of counsel, and all other papers filed in this action.  The matter having been submitted and good cause appearing therefore:

The Court finds as follows:

**I.      Background**

1.      All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement executed by the Parties and filed with this Court (the "Settlement" or "Settlement Agreement").

1

2.     The Named Plaintiffs and Defendants (the latter of which is also referred to as Cablevision herein), by and through their Counsel, have reached an agreement to settle all released claims and resolve the above-captioned Litigation (the "Litigation" or "Lawsuit"), which is currently pending before this Court.

3.     The Named Plaintiffs allege that Cablevision purportedly violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for reasons set forth in the Complaint.

**II.     Preliminary Settlement Approval**

4.     Based upon the Court's review of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Settlement; the Declaration of Christopher Q. Davis ("Davis Declaration"); and all corresponding exhibits and papers submitted in connection with the Motion, the Court grants preliminary approval of the Settlement Agreement made and entered into on October __, 2018, by and between by and between the Named Plaintiffs, individually and on behalf of the class members, as defined below, and Defendants.

5.     For purposes of settlement only, there shall be one state law class, defined as follows:

a.  all individuals who were employed by any of the Defendants as an Outside Plant Technician and were assigned to a depot in Brooklyn or the Bronx between October 4, 2011 and the date of the Court's Preliminary Approval order or 60 calendar days from filing the preliminary approval motion, whichever is shorter.

All individuals encompassed within the above definition are eligible to participate in this Settlement.

6.     The Parties agreed to settle this case for a Gross Settlement Amount of up to eight-hundred thousand dollars ($800,000).  The "Net Settlement Fund" means the remainder of

the Gross Settlement Amount after deductions for: (1) Court-approved attorneys' fees for Class

Counsel of two-hundred thousand dollars ($200,000) and actual costs not to exceed fifteen

thousand dollars ($15,000); (2) Court-approved Service Awards of fifteen-thousand dollars

($15,000) to be divided between William Gilbert Garvin and Dion Pemberton, and (3) standard

employer-side tax obligations, including the Employer Federal Insurance Contributions Act

(FICA) amount, as specified in the Settlement Agreement.

7.      Participating Class Members, as defined in the Settlement Agreement, shall

receive a Settlement Distribution Check from the Net Settlement Fund.

8.      A Participating Class Member's Settlement Distribution Check shall be a Pro

Rata Share of the Net Settlement Fund determined by the formula set forth in the Settlement

Agreement. Any amount of the Net Settlement Fund that is not paid to Participating Class

Members (whether because of delivery failures, failures by Participating Class Members to

timely and property present Settlement Distribution Checks for payment, or otherwise) shall be

refunded to Defendants.

9.      The approval of a proposed class action settlement is a matter of discretion for the

trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In

exercising this discretion, courts should give "proper deference to the private consensual

decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

10.     The Court concludes that the Settlement Agreement is within the range of

possible final settlement approval, such that preliminary approval and subsequent notice to the

class is appropriate.  *See Diaz v. Eastern Locating Serv., Inc*., No. 10 Civ. 4082, 2010 WL

2945556, at *1 (S.D.N.Y. July 22, 2010); *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d

Cir. 1980).

11.     The Court finds that the proposed settlement is the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits.

## III.     Conditional Certification of the Proposed Rule 23 Class

12.     For purposes of settlement only, the Court provisionally certifies the class pursuant to Federal Rule of Civil Procedure ("FRCP") 23.  The Named Plaintiffs, Opt-In Plaintiffs, and Other Class Members who do nothing (*i.e.,* do not exclude themselves from the Settlement), will be deemed "Participating Class Members."

13.     Cablevision has agreed not to contest, for purposes of settlement only, that the requirements of FRCP 23(a) and (b)(3) are met.  On that basis, the Court conditionally finds that, for the purposes of approving this settlement only and for no other purpose and with no other effect on the Litigation, including no effect on the Litigation should the Settlement Agreement not ultimately be approved or should the Effective Date not occur (and recognizing the Named Plaintiffs have waived the right to claim any such effect and are estopped from doing so):

  a.  The class here easily satisfies Rule 23(a) numerosity.

  b.  For purposes of settlement only, the Court finds that there is an ascertainable Rule 23 Class.

  c.  For purposes of settlement only, the Court finds that common questions of law and fact exist.

  d.  The common questions are similar to those in other cases in which courts in this District granted class certification for settlement purposes.

  e.  For purposes of settlement only, the Court finds Named Plaintiffs' claims are typical of the claims of the Other Class Members.  Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.  *See, e.g., Perez v. Isabella Geriatric Center, Inc.*, 2016 WL 5719802, at *2 (S.D.N.Y. 2016) (finding that similar questions satisfied commonality in a Rule 23 wage action); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 463 (S.D.N.Y. 2008)

4

(certifying NYLL class where plaintiffs used the same clock-in/clock-out system and were denied overtime wages, and where plaintiffs would be able to adduce generalized proof related to company-wide practices).

f.   Regarding the adequacy of Named Plaintiffs, there is no evidence or indicia that they have interests that are antagonistic or at odds with the Opt-in Plaintiffs and/or Other Class Members.

g.   Christopher Q. Davis, Esq., Owner and Managing Partner of The Law Office of Christopher Q. Davis, PLLC, shall be deemed "Class Counsel" and has and will fairly and adequately protect the interests of the Class Members.  The Davis Declaration supports the conclusion that counsel is qualified and the requirements of 23(a)(4) are met.  Among other things, Plaintiffs' counsel has previously been appointed as Class Counsel and as co-Class Counsel in other matters.

h.   For purposes of settlement only, the Court finds that the prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct.

i.   Consistent with Rule 23(b)(3) and for purposes of settlement only, the Court finds that questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

j.   The assistance of both an experienced mediator, Martin F. Scheinman, reinforces the Court's finding that the proposed settlement is non-collusive.

## IV.   Provisional Approval of FLSA Settlement

14.     As mentioned above, the Settlement was the product of adversarial litigation, extensive exchange of discovery, and arms'-length negotiations by counsel experienced in the prosecution of wage and hour class and collective actions. The Court also provisionally approves the FLSA settlement solely for purposes of effectuating the Settlement, and will further evaluate when the Plaintiffs file their motion for final approval of the settlement.

## V.   Supplemental Jurisdiction Exists Over Plaintiff's and the Class Members' State Law Claims, and Participating Class Members Will Release State Law Claims and FLSA Claims.

15.     The Court may properly oversee a release by Participating Class Members of FLSA and state wage and hour claims.  *See Damassia v. Duane Reade Inc.,*, 250 F.R.D. 152, 163

(S.D.N.Y. 2008) ("It is true that potential class members who do not opt out of the class action could have all claims that could have been brought in that action, including any FLSA claim, resolved by res judicata without opting in to the FLSA action…[h]owever, as in any Rule 23(b)(3) class action, potential class members who want to control their own litigation, and to avoid being bound by the judgment in the class action, are free to opt out of the class.") (internal quotations omitted).

16.    For purposes of settlement only, the Court exercises supplemental jurisdiction over Plaintiffs' and the Other Class Members' New York claims and approves the release of such claims, together with FLSA claims, in the manner described in the Settlement Agreement.

## VI.    Appointment of Plaintiffs' Counsel as Class Counsel

17.    The Court appoints Christopher Q. Davis, Esq., Owner and Managing Partner of the Law Office of Christopher Q. Davis, PLLC, as Class Counsel because he meets all of the requirements of Fed. R. Civ. P. 23(g).

18.    Class Counsel did substantial work identifying, investigating, prosecuting, and settling the FLSA and the Rule 23 claims in this action.

19.    Class Counsel has substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions, and is well-versed in class action and wage-and-hour law.

20.    Other courts have found Class Counsel to be adequate class counsel in employment law class actions.

21.    The work that Class Counsel has performed in litigating and settling this case demonstrates his commitment to the class and to representing the class' interests.

## VII.  Class Notice and Settlement Procedure

22.     The Court approves the Notice of Proposed Settlement of Class Action and

Collective Action Lawsuit and Fairness Hearing (the "Notices") and directs their distribution to

all Plaintiffs.

23.     The content of the proposed Notices fully complies with due process and Fed. R.

Civ. P. 23, including the requirements of Fed. R. Civ. P. 23(c)(2)(B).

24.     For purposes of settlement only, the Court finds that the proposed Notice satisfies

the requirements of the FLSA.  Section 216(b) of the FLSA states in relevant part that:

> (a)n action…may be maintained...in any Federal or State
> court of competent jurisdiction by any one or more
> employees for an on behalf of himself or themselves and
> other employees similarly situated.  No employee shall be a
> participating plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent
> is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

25.     The Court hereby adopts the following settlement approval process:

a.  Within fifteen (15) business days following the Court's entry of the Preliminary
Approval Order, Defendants shall provide the Administrator with a class contact
list, in electronic form, that includes names, postal addresses, and email addresses
of the Plaintiffs as reflected in Defendants' personnel records. The class contact list
will also include each Plaintiff's Weeks Worked broken down by total Weeks
Worked in Brooklyn and total Weeks Worked the Bronx.

b.  Within ten (10) calendar days following its receipt of the list of the Class Members
set forth in 25(a) above, the Administrator will e-mail and mail to Plaintiffs, via
First Class United States Mail, postage prepaid, the Court-approved Notices.

c.  On or before the applicable Notice Response Deadline, as defined in Section 1.19
of the Settlement Agreement, an Other Class Member's Opt-Out Statement must
be completed and postmarked, and/or a Participating Class Member's Objection
must be completed and postmarked.

d.  The Administrator will stamp the receipt date on the original of each Opt-Out
Statement and/or Objection that it receives and shall send copies to Counsel within

one (1) business day of receipt.  The Administrator shall then send to Counsel a final list of all Opt-Out Statements no later than one (1) business day after the expiration of the applicable Notice Response Deadline.

e.  Class Counsel will file with the Clerk of Court stamped copies of any Opt-out Statements within one (1) business day of receipt of such from the Administrator.

f.  A final approval hearing will be held as soon thereafter as is convenient for the Court.

g.  Fifteen (15) calendar days prior to the final fairness hearing, Plaintiffs will submit a Motion for Judgment and Final Approval of the Settlements, together with a motion seeking the payment of attorneys' fees, costs, and the Service Payments.

h.  If the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment for Dismissal.

i.  Each Participating Class Member will have ninety (90) calendar days from the date on which the Settlement Distribution Checks are mailed to negotiate his or her settlement check(s).

j.  The "Effective Date" shall be the later of: (i) if an appeal has been filed from the order of the Court granting Final Approval, the date on which the appeal and any subsequent proceedings are fully and finally disposed of; or (ii) if no appeal is filed, thirty-five (35) calendar days following the date of Final Approval.

k.  Ten (10) business days after the Effective Date, Defendants shall transfer the Gross Settlement Amount to the Qualified Settlement Fund.

l.  No more than twenty-one (21) calendar days after the Effective Date, the Administrator shall mail Settlement Distribution Checks to the Participating Class Members, mail the attorneys' fees and costs to Class Counsel, and mail service awards to William Garvin and Dion Pemberton.

26.     A full timeline of the dates set forth above are attached to the Notice of Motion as Exhibit 1.

27.     The Court preliminarily approves the settlement and finds that it was reached as a result of vigorously contested litigation to resolve bona fide disputes.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353 n.8.

**SO ORDERED**:

_____
Hon. Judge Vera M. Scanlon

Date:_____

**Exhibit D**

<u>**NOTICE OF PROPOSED CLASS ACTION LAWSUIT SETTLEMENT**</u>
<u>**AND FINAL FAIRNESS HEARING**</u>

**TO: ALL PERSONS EMPLOYED BY CABLEVISION AND/OR ALTICE AS AN OUTSIDE PLANT TECHNICIAN ASSIGNED TO A DEPOT IN THE BRONX OR BROOKLYN AT ANY TIME BETWEEN OCTOBER 4, 2011 and _____, 2018.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

Based on information in the records of Cablevision Systems New York City Corporation, Cablevision Systems Corporation, CSC Holdings, LLC, Altice USA, Inc., and Altice Technical Services US Corp. ("Cablevision" or Defendants") you were employed as an Outside Plant Tech ("OSP") assigned to a depot in the Bronx or Brooklyn at some point between October 4, 2011 and _____, 2018 (the "Class Period") and are eligible to participate in the proposed settlement of the case captioned *Villegas et al. v. Cablevision Systems New York City Corp. et al.*, 17-cv-05824-DLI-VMS (U.S. District Court for the Eastern District of New York) (the "Litigation" or the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY.** It contains important information about your rights and options concerning the settlement of the Lawsuit.

- The settlement will create a fund to pay certain current and former OSPs who worked at Cablevisions' depots in the Bronx or Brooklyn between October 4, 2011 and \_\_\_\_\_, 2018 for allegations concerning working "off-the-clock," primarily by working through an unpaid 30-minute lunch break and also performing uncompensated pre-shift and post-shift activities. Before any payments are made to the individuals who decide to participate in this proposed class action settlement, fees and costs for court-appointed lawyers will come out of the fund, as will payments to the individuals who participated in this lawsuit by sitting for depositions and attending the mediation and general employer-side payroll tax obligations.

- This settlement resolves a lawsuit in the Eastern District of New York over whether Cablevision failed to pay certain employees for all hours worked and/or overtime compensation; it avoids the costs and risks to you that are associated with continuing the lawsuit; it pays money to current and/or former OSPs like you; and it releases Cablevision from liability.

- The two parties to this lawsuit disagree as to which party would have won if the case proceeded to trial.

- Your legal rights are affected by whether or not you chose to act per the terms of this Notice.

- According to Cablevision's records you worked at Cablevision as an OSP from: **[DATES OF EMPLOYMENT].**  Please read this notice carefully to understand **all** of your rights and options.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **OBJECT** | If you object to the settlement terms, you must write to the Court about why you don't like the settlement (see below). The Court will consider your objections and may decide to address them at the Fairness Hearing on **[DATE]**. |
| **EXCLUDE YOURSELF** | If you exclude yourself from the settlement, otherwise referred to as "opting-out," you will <u>not</u> receive a payment for the proportionate share of the settlement fund.  You will retain your right to bring or join any other lawsuit against Cablevision concerning legal claims related to overtime wages, unpaid wages for the period October 4, 2011 to _____, 2018. |
| **DO NOTHING** | You remain part of the class and receive your proportionate share of the settlement fund. |

## CRITICAL DATES

**[DATE]:**      The last date to mail an Opt-Out Statement, set forth in Section 14 below.

**[DATE]:**      The last date to mail any written objections to the Settlement.

**[DATE]:**      The date of the Court hearing to determine whether the proposed settlement is fair, reasonable and adequate and should be approved by the Court.

## WHAT THIS NOTICE CONTAINS

| **BASIC INFORMATION** ................................................................................ | **PAGE 3** |
|---|---|
| 1.   Why did I get this notice?<br>2.   What is this case about?<br>3.   Why is this a class action?<br>4.   Why is there a settlement?<br>5.   How do I know if I am part of the settlement? | |
| **THE SETTLEMENT BENEFITS—WHAT YOU GET** ...................................... | **PAGE 5** |
| 6.   What does the settlement provide?<br>7.   How much will my payment be?<br>8.   Tax treatment of settlement | |

| | |
|---|---|
| **HOW TO GET A PAYMENT AND EFFECT OF PAYMENT**.............................................. | **PAGE 6** |
| 9.  How can I get a payment?<br>10. When would I get my payment?<br>11. What am I giving up by staying in the class and getting a payment? | |
| **THE LAWYERS REPRESENTING YOU** ................................................................ | **PAGE 7** |
| 12. Do I have a lawyer in this case?<br>13. How will the lawyers be paid? | |
| **EXCLUDING YOURSELF FROM THE SETTLEMENT**.................................................... | **PAGE 7** |
| 14. How do I get out of the settlement?<br>15. If I don't exclude myself, can I sue Cablevision later?<br>16. If I exclude myself, can I get money from this settlement? | |
| **OBJECTING TO THE SETTLEMENT**.................................................................... | **PAGE 8** |
| 17. How do I tell the Court that I don't like the settlement?<br>18. What's the difference between objecting and excluding? | |
| **THE COURT'S FAIRNESS HEARING**................................................................. | **PAGE 9** |
| 19. When and where will the Court decide whether to approve the settlement?<br>20. Do I have to come to the hearing?<br>21. May I speak at the hearing? | |
| **IF YOU DO NOTHING**............................................................................... | **PAGE 10** |
| 22. What happens if I do nothing at all? | |
| **HOW CAN I GET MORE INFORMATION?** ........................................................ | **PAGE 10** |

---

## BASIC INFORMATION

### 1.   Why did I get this notice?

Cablevision's records show that you currently work, or previously worked, for Cablevision as an OSP in a depot in the Bronx or Brooklyn at some point between October 4, 2011 and _____, 2018, and that you may have worked without receiving overtime wages or compensation for all hours worked, as is required by law.

You are receiving this notice because you have the right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement.  You have the ability to participate in the settlement, or you may decline to do so.

This notice explains the process required for informing the attorneys and the Court of your decision.  The notice also explains the process the Court has put in place for deciding whether to approve the settlement, and for administering the settlement if it is approved.

The Court in charge of this case is the United States District Court for the Eastern District of New York, and the case is known as *Villegas et al. v. Cablevision Systems New York Corp. et al*, Case No. 17-cv-05824-DLI-VMS.  The people who initiated the suit are called Plaintiffs, and the companies they sued, referred to collectively as Cablevision, are called Defendants.

**2.   What is this case about?**

Cablevision employees filed a lawsuit claiming that Cablevision failed to record and pay OSPs for time spent working off-the-clock during an unpaid 30-minute meal break and before and after their shifts and failed to provide accurate wage statements.

Cablevision does not discourage your participation in the settlement, and the law strictly prohibits Cablevision from retaliating against you for participating in the settlement.

**3.   Why is this a class action?**

In a class action, one or more people – the Named Plaintiffs – sued on behalf of people who have similar claims.  All these people are Class or Collective Members.  One court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class by filing an Opt-Out Statement (see below).

**4.   Why is there a settlement?**

The Court did not decide in favor of the Plaintiffs or the Defendants.  Instead, both sides agreed to a settlement before trial.  That way, both sides avoid the cost of a trial, and the people affected will get compensation. The Class Representatives and the attorneys (i.e., "Class Counsel" as described in Section 12 below) think the settlement is the best outcome for all Class Members. Both sides agreed to the settlement to resolve the case, and avoid further disputes, inconvenience, and expense.  By agreeing to settle the case, Cablevision does not admit any liability, culpability, negligence, or wrongdoing.

**5.   How do I know if I am part of the settlement?**

The Court decided that every individual who fits into the following category is a Class Member:

- Individuals who are or were employed by Cablevision as an OSP assigned to a depot in the Bronx or Brooklyn at any point in time from October 4, 2011 through _____, 2018.

| THE SETTLEMENT BENEFITS—WHAT YOU GET |
|---|

| 6.   What does the settlement provide? |
|---|

Cablevision has agreed to pay no more than eight hundred thousand dollars ($800,000.00) to Class Members who choose to participate in the settlement ("Participating Class Members"). Before the Class Members are paid, however, the following amounts may be removed from the settlement fund:

- <u>Attorneys' Fees and Costs</u>:  The attorneys for the Class Members will ask the Court to grant them $200,000 from the settlement fund to pay for their fees in this action.  The attorneys for the Class Members will also ask the Court to grant them the actual amount of any costs expended on behalf of the class, which shall not exceed $15,000.00

- <u>Class Representative Payments</u>:  The Class Representatives will seek special payments for their service in bringing this lawsuit on behalf of the Class Members. The total amount in service payments they seek is $15,000, to be distributed among the Class Representatives as follows: $10,000.00 to William Gilbert Garvin; and $5,000.00 to Dion Pemberton.  The Class Representatives receive these special payments because of their involvement in the Lawsuit, particularly the time they each spent sitting for depositions and/or attending the mediation sessions.

- <u>Defendants' Share of Payroll Taxes.</u> All standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, arising out of payments to the Collective Members.

| 7.   How much will my payment be? |
|---|

If you decide to participate in the settlement, it is estimated that your share of the settlement fund will be: $_____.  This represents your total share of the settlement fund, which includes a share for claims under the Fair Labor Standards Act ("FLSA"), if any, as well as your claims under the New York Labor Law ("NYLL").  **To participate in settlement you do not need to do anything**.

Your share of the settlement fund was calculated based on the number of weeks you worked for Cablevision as an OSP assigned to a depot in either the Bronx or Brooklyn between October 4, 2011 and _____, 2018.  Specifically, you were allotted 1.75 points for any week worked in the Brooklyn and 1 point for any week worked in the Bronx.  Your settlement sum is a pro rata share of the settlement fund based on your total allotted points.  Based on Cablevisions records you worked ___ weeks in the Bronx and ___ weeks in Brooklyn.

The calculation of the number of weeks you worked is based on Cablevision's human resource and payroll records.  In calculating your share of the settlement fund, any partial weeks that you worked in any particular depot were treated as full weeks of work.  A week was only

included in the calculation if you received pay for actual work you performed during that week. This means that any weeks for which you did not perform work, but were paid due to vacation, sick pay, FMLA, or other similar reasons, would not be included in calculating your portion of the settlement fund.

If you would like to dispute the number of weeks that you worked, you should contact the Claims Administrator at ___-___-____. In a dispute as to how many weeks you worked Cablevision's records will be presumed to be correct, but the Parties will evaluate any information and evidence you submit to the Claims Administrator and then reach a final decision.

### 8. Tax treatment of settlement

If you choose to participate in the settlement, 50% of the payment made to you will be (a) deemed taxable, wage income paid under an IRS Form W-2, and (b) subject to ordinary payroll withholdings; and 50% of the payments made to you from the Settlement Fund shall be treated as non-wage income and reported on an IRS Form 1099.

## HOW TO GET A PAYMENT

### 9. How can I get a payment?

To qualify for payment of your share of the settlement fund, **you do not need to do anything**.  You will receive a check in the mail after the court approves the settlement.

### 10. When would I get my payment?

The Court will hold a hearing on **[DATE]** to decide whether to approve the settlement.  If the Court approves the settlement after that hearing, there may still be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who participates in the settlement will be informed of the progress of the settlement.  Please be patient.

### 11. What am I giving up by staying in the class and getting a payment?

If you worked for Cablevision as an OSP assigned to a depot in the Bronx or Brooklyn, and you do not exclude yourself from this settlement by submitting an Opt-Out Statement pursuant to Section 14 below, and the Court grants final approval of the settlement, you will release Cablevision, plus all of their respective past, present and future parents, subsidiaries, affiliates, predecessors, successors, directors, officers, members, employees, and anyone else acting for any of them from liability for all claims under the NYLL and any other applicable state or local wage and hour law, whether know or unknown, between October 4, 2011 and _____, 2018.

If you have not previously filed a consent to join the Litigation with the Court, and you receive and cash your settlement check you will release all claims under the federal Fair Labor Standards Act ("FLSA") between October 5, 2014 and _____, 2018 that you may have for unpaid wages and/or overtime based on your employment with Cablevision, and any claims under federal

law that arise from or are related to the facts alleged in the lawsuit and/or your employment with Cablevision.  You will not release any FLSA claims if you do not cash your settlement check.

In addition to waiving and releasing the claims covered above by participating in the Lawsuit you agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the Release and agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies).  This covenant not to sue is limited only to Released claims (*i.e.* claims arising under the FLSA, the NYLL, and any other applicable federal, state, or local wage and hour law) between October 4, 2011 and \_\_\_\_\_, 2018.

---

### THE LAWYERS REPRESENTING YOU

**12.  Do I have a lawyer in this case?**

If you choose to stay in the class, the Court has decided that the Law Office of Christopher Q. Davis is qualified to represent you and all other Class Members. These attorneys are called "Class Counsel."  You do not need to hire your own attorney because Class Counsel is working on your behalf.  You will not be charged for these lawyers.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

If you have questions or desire additional details, you may call, email or correspond with Class Counsel.  Class Counsel's contact information is:

The Law Office of Christopher Q. Davis, PLLC
225 Broadway, Suite 1803
New York, NY 10007
646-430-7930
paralegal@workingsolutionsnyc.com

**13.  How will the lawyers be paid?**

Class Counsel will ask the Court to approve payment of up to $200,000, plus the actual costs expended in litigating this matter, not to exceed $15,000, to them from the settlement fund for attorneys' fees and expenses.  The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Cablevision has agreed not to oppose Class Counsel's request for these fees and expense reimbursement, but the Court may award less than this amount.

---

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, and you want to keep the right to sue Cablevision or continue with a pending lawsuit you already initiated against Cablevision regarding claims for unpaid wages and overtime under New York law for acts that occurred between October 4, 2011 and \_\_\_\_\_, 2018, then you must take steps to get out.  This is called excluding yourself or opting out of the settlement class.

| 14.   How do I get out of the settlement? |
|---|

If you do **not** wish to be bound by the settlement and **do not wish to receive a settlement payment**, you must mail the enclosed Opt-Out Statement, postmarked no later than **[DATE]**. You must include your name, address, and telephone number in the letter, and sign and date it.  You should send the letter to:

CABLEVISION SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

If you ask to be excluded from the settlement, you will not get any payment for your portion of the settlement, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue Cablevision for claims covered by the release in the future.

| 15.   If I don't exclude myself, can I sue Cablevision later? |
|---|

Unless you exclude yourself, you give up any right to sue Cablevision for claims under the NYLL and any other applicable state or local wage and hour law for the period of October 4, 2011 through \_\_\_\_\_, 2018.  If you have a pending lawsuit against Cablevision covering these matters, speak to your lawyer in that case **immediately**.  You must exclude yourself from this Class to continue your own lawsuit.  Remember, the exclusion deadline is [DATE]. To exclude yourself from the state law claims, you must affirmatively submit the Opt-Out Statement (described above).

| 16.   If I exclude myself, can I get money from this settlement? |
|---|

No.  You will not receive any money if you exclude yourself from this settlement.  If you do not exclude yourself (as explained in Paragraph 14 above), you will remain in the Class.  That means that you cannot sue, continue to sue, or be a party in any other lawsuit against the Defendants pertaining to any released claims.  It also means that all of the Court's orders will apply to you and legally bind you.

| **OBJECTING TO THE SETTLEMENT** |
|---|

If you choose to stay in the class, you can tell the Court that you don't agree with the settlement or some part of it.  This is called objecting to the settlement.  The Court will consider your views.

| 17.   How do I tell the Court that I don't like the settlement? |
|---|

To object, you must submit a letter that says "I object to the Settlement proposed in the *Villegas v. Cablevision* litigation as it relates to my rights under the Settlement Agreement," as well as the reasons that you object to the settlement.  Please note that you can only object to the

terms of the settlement **if you do not opt out of the settlement and file an objection** by the required date.  However, if the Court rejects your objection, you will still be bound by the terms of the settlement.  The letter must include your name (and former names, if any), address, telephone number, and signature.  You may withdraw your objection at any time.

The Court will hold a hearing, called a fairness hearing, to decide whether to approve the settlement.  More information about this hearing can be found below, in Sections 19-21 of this notice.  If you wish to appear at the fairness hearing, you should also state in your letter objecting to the settlement: "I intend to appear at the Fairness Hearing." Your letter must be postmarked no later than **[DATE]**.  You should send the letter to:

CABLEVISION SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

If you do not comply with the procedures and deadlines described in this notice for submitting written comments objecting to the settlement or appearing at the fairness hearing, you will **not** be entitled to be heard at the hearing, or to contest or appeal any approval of the settlement or any award of attorneys' fees or expenses, or to contest or appeal from any other orders or judgments of the Court entered in connection with the settlement.  The Parties may file with the Court written responses to any filed objections.

| 18. | What's the difference between objecting and excluding? |
|---|---|

Objecting is simply telling the Court that you do not like something about the settlement.  **You can only object if you participate in the settlement**.  You cannot object to the settlement and exclude yourself from the settlement by submitting an Opt-Out Statement.

Excluding yourself is telling the Court that you don't want to be part of the class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

**THE COURT'S FAIRNESS HEARING**

The Court will hold a fairness hearing on **[DATE]** to decide whether to approve the settlement.  You may attend and, if you submitted a proper and timely objection, you may ask to speak, but you do not have to.  You may not speak at the hearing if you have excluded yourself from the class.

| 19. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a fairness hearing before Judge Vera M. Scanlon on **[DATE]** in Courtroom 13A-South Wing at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.  The purpose of this hearing will be for the Court to determine whether the settlement is fair, adequate, reasonable and should be approved by

9

the Court.  The Court will take into account any comments or objections that have been filed in accordance with the procedures described above.

| 20.   Do I have to come to the hearing? |
|---|

No.  Class Counsel will answer questions that Judge Scanlon may have.  However, you are welcome to come at your own expense.  If you sent an objection to the settlement, you don't have to come to Court to talk about it.  As long as you mailed in your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but that is not necessary.

| 21.  May I speak at the hearing? |
|---|

If you would like to speak at the hearing, you should follow the process described at Section 17 of this notice.  **You cannot speak at the hearing if you excluded yourself from the class or did not submit an objection**.

| **IF YOU DO NOTHING** |
|---|

| 22.   What happens if I do nothing at all? |
|---|

If you do nothing, you will get money under the settlement representing your share of the Net Settlement Amount.

| **HOW CAN I GET MORE INFORMATION?** |
|---|

This notice does not contain all of the terms of the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by contacting Class Counsel.  If you have any other questions or desire additional details, you may also contact Class Counsel.  Class Counsel's contact information is:

> The Law Office of Christopher Q. Davis, PLLC
> 225 Broadway, Suite 1803
> New York, NY 10007
> 646-430-7930
> paralegal@workingsolutionsnyc.com

**Exhibit E**

## OPT-OUT STATEMENT

CABLEVISION SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

Dear Sir or Madam:

      I want to exclude myself (*print full name*)_____ from

the settlement in *Villegas et al. v. Cablevision Systems New York City Corp. et al.*, 17-cv-05824-

DLI-VMS (U.S. District Court for the Eastern  District of New York).  I understand that by

submitting this Opt-Out Statement I am electing not to be bound by the settlement and not to

receive a payment under the settlement.


My personal information is:

Full Name:              _____

My address:              _____

                                        _____

My phone number:     _____

My email address:     _____


Date:              _____, 20__

Signature:              _____